**VENABLE LLP**
Allyson B. Baker (*Pro Hac Vice To Be Filed*)
Katherine M. Wright (*Pro Hac Vice To Be Filed*)
575 7th Street, NW
Washington, DC 20004
Email: ABBaker@Venable.com
KMWright@Venable.com
Telephone: 202.344.4000
Facsimile: 202.344.8300

Kimberly Culp Cloyd (SBN 238839)
Email: kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone: 415.653.3750
Facsimile: 415.653.3755

Attorneys for Defendant Prime Marketing Holdings, LLC

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Prime Marketing Holdings, LLC, (d.b.a. Park View Credit, National Credit Advisors, and Credit Experts)<br><br>Defendant. | CASE NO.: 2:16-CV-07111-BRO (JEMx)<br><br>**PRIME MARKETING HOLDINGS, LLC'S MOTION TO DISMISS COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**<br><br>**Date:** **November 7, 2016**<br>**Time:** **1:30 p.m.**<br>**Location:** **Courtroom 14**<br>**Officer:** **Hon. Beverly Reid O'Connell**<br><br>Action Filed: September 22, 2016<br>Trial Date: N/A |

**NOTICE OF MOTION**

**TO THIS HONORABLE COURT, PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on November 7, 2016, or as soon thereafter as counsel may be heard in Courtroom 14 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendant Prime Marketing Holdings, LLC will and hereby does move this Court, pursuant to Federal Rules of Civil Procedure Rule 8(a), 9(b), 12(b)(1), and 12(b)(6), to dismiss the Complaint filed September 22, 2016.

Defendant Prime Marketing Holdings, LLC requests dismissal of all of the claims asserted against it in Plaintiff Consumer Financial Protection Bureau's Complaint: (1) "Advance Fees in Violation of the TSR"; (2) "Misrepresentations about Material Aspects of the Efficacy of Its Services in Violation of the TSR"; (3) "Failure to Disclose Limitations on Guarantee in Violation of the TSR"; (4) "Misrepresentations Regarding the Cost of Services in Violation of the TSR"; (5) "Deceptive Acts or Practices in Violation of the CFPA."

This motion is based on the instant notice, the accompanying Memorandum of Points and Authorities and Request for Judicial Notice, the complete court file, including the records and pleadings on file in this matter, and any other oral or documentary evidence that may be presented to the Court at the time of the hearing.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which occurred telephonically on September 30, 2016.

Dated: October 7, 2016

**VENABLE LLP**

By: /s/ Kimberly Culp Cloyd
Kimberly Culp Cloyd (SBN 238839)
Allyson B. Baker (*PHV To Be Filed*)
Katie M. Wright (*PHV To Be Filed*)
*Attorneys for Defendant Prime Marketing Holdings, LLC*

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ....................................................1

STATEMENT OF FACTS ....................................................1

MEET AND CONFER ....................................................2

ARGUMENT ....................................................2

I. PLAINTIFF FAILS TO MEET APPLICABLE PLEADING STANDARDS REQUIRING DISMISSAL OF ALL FIVE CLAIMS ........2

A. Plaintiff Does not Satisfy Rule 8(a) and Dismissal is Proper under Rule 12(b)(6)....................................................3

B. Plaintiff Also Fails to Satisfy Rule 9(b)....................................................5

II. PLAINTIFF LACKS STANDING TO PURSUE ITS CLAIMS ................7

A. Plaintiff's Claims Are Not Redressable....................................................8

B. Plaintiff Is Not Entitled to a Monetary Remedy Because Plaintiff Does Not Allege Actual Consumer Injury ........................10

III. PLAINTIFF'S TELEMARKETING SALES RULE ADVANCE FEE CLAIM (COUNT 1) FAILS AS A MATTER OF LAW............................11

A. A Specific Statute (CROA) Trumps a General Regulation (the Advance Fee Provision)....................................................11

B. The Bureau's Application of the Advance Fee Provision Does Not Accord With The FTC's Interpretation of The TSR, and the FTC Promulgated This Rule ....................................................14

C. The Advance Fee Provision Was Never Meant to and Does Not Apply to a Company like PMH ....................................................16

D. The Bureau's Application of the Advance Fee Provision Unlawfully Conflicts with State Law ....................................................17

E. Even if Applied, Defendant Does Not Violate the Advance Fee Provision ....................................................18

IV. PLAINTIFF'S CLAIMS RELATED TO DECEPTIVE PRACTICES (COUNTS TWO THROUGH FIVE) FAIL AS A MATTER OF LAW....19

A. Defendant Does Not Make Material Misrepresentations (Claims 2 and 5)....................................................20


VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

B. Defendant's Money Back Guarantee Is Not Deceptive (Claim 3) ....21

C. Defendant's Product Fees are not Deceptive (Claims 4 and 5)....22

D. Defendant's Advertising Regarding Removing Negative Information is Accurate (Claim 5)....22

CONCLUSION....23

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 3, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 3

*Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274 (N.D. Cal. Aug. 20, 2012) ........ 8

*CollegeNet, Inc. v. XAP Corp.*, No. CV-03-1229-HU, 2004 WL 2303506 (D. Or. Oct. 12, 2004) ........ 5

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990) ........ 2, 7

*D. Ginsberg & Sons v. Popkin*, 285 U.S. 204 (1932) ........ 12

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ........ 7

*Davis v. Federal Election Commission*, 554 U.S. 724 (2008) ........ 7

*DuCharme v. Heath*, No. C 10-02763 CRB, 2010 WL 5211502 (N.D. Cal. Dec. 16, 2010) ........ 13, 14

*Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006) ........ 9

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ........ 2, 7

*F.T.C. v. ELH Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 WL 4759267 (D. Ariz. Sept. 4, 2013) ........ 5

*F.T.C. v. Evans Prods. Co.*, 775 F.2d 1084 (9th Cir. 1985) ........ 8,9

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

*F.T.C. v. Ivy Capital, Inc.*, No. 2:11CV-283 JCM (GWF), 2011 WL 2118626 (D. Nev. May 25, 2011) ........ 5

*F.T.C. v. Lights of America, Inc.*, 760 F. Supp. 2d 848 (C.D. Cal. Dec. 17, 2010) ........ 5

*F.T.C. v. Merchant Services Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394 (E.D. Wash. Aug. 13, 2013)........ 8

*F.T.C. v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994)........ 10, 19

*F.T.C. v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320 (M.D. Fla. July 21, 2010)........ 10

*F.T.C. v. Zamani*, No. SACV 09-0977-DOC, 2011 U.S. Dist. LEXIS 60913 (C.D. Cal. June 6, 2011)........ 10

*Federal Election Commission v. Akins*, 524 U.S. 11 (1998) ........ 7

*Federal Election Commission v. Furgatch*, 869 F.2d 1256 (9th Cir. 1989)........ 8,9

*Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000 (9th Cir. 2003)........ 19

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003)........ 3

*Illinois v. National Credit Management Group*, No. 96-C-2073, 1996 WL 351196 (N.D. Ill. June 24, 1996) ........ 14, 15

*Kraft, Inc. v. F.T.C.*, 970 F.2d 311 (7th Cir. 1992)........ 21, 22

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)........ 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........ 7

*Meissner v. Simpson Timber Co.*, 421 P.2d 674 (Wash. 1966)........ 18

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
518 F. Supp. 2d 1197 (C.D. Cal. Oct. 16, 2007) ........ 8

*Morton v. Mancari*,
417 U.S. 535 (1974) ........ 12

*In re National Credit Management Group., LLC*,
21 F. Supp. 2d 424 (D. N.J. 1998) ........ 15

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ........ 3

*Richmond Eng'g & Mfg. Corp. v. Loth*,
115 S.E. 774 (Va. 1923) ........ 19

*Robertson v. Dean Witter Reynolds, Inc.*,
749 F.2d 530 (9th Cir. 1984) ........ 2

*Sixth Angel Shepherd Rescue Inc. v. West*,
790 F. Supp. 2d 339 (E.D. Pa. May 3, 2011) ........ 8,9

*Stuart v. Cadbury Adams USA, LLC*, No. 09-6295 AHM (CWx),
2010 WL 1407303 (C.D. Cal. Apr. 5, 2010) ........ 21

*Texas v. E.P.A.*,
726 F.3d 180 (D.C. Cir. 2013) ........ 12, 13

*U.S. v. Cathcart*, No. C 07-4762 PJH,
2008 WL 4279717 (N.D. Cal. Sept. 15, 2008) ........ 5

*United States v. Estate of Romani*,
523 U.S. 517 (1998) ........ 12

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........ 5

*Western Mining Council v. Watt*,
643 F.2d 618 (9th Cir. 1981) ........ 3

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) ........ 4

## STATUTES

12 U.S.C. § 5481(6) ........ 7

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

12 U.S.C. § 5481(14) ........ 9
12 U.S.C. § 5481(15)(A)(viii) and (ix) ........ 7
12 U.S.C. §§ 5531, 5536 ........ 19
12 U.S.C. §5531(a) ........ 7
12 U.S.C. §§ 5565(a)(2)(C), (D) ........ 10
15 U.S.C. § 1679 (CROA effective September 30, 1996) ........ 11
15 U.S.C. § 1679 *et seq* ........ 11
15 U.S.C.§ 1679b(b) ........ 12, 13
15 U.S.C. § 1681i ........ 16
15 U.S.C. § 6102 ........ 12
Cal. Civ. Code § 1789.13 ........ 17

**OTHER AUTHORITIES**

16 C.F.R. §310.2(dd) ........ 18
16 C.F.R. §§ 310.2(ff) and (gg) ........ 5
16 C.F.R. § 310.3(a)(2)(i) ........ 22
16 C.F.R § 310.3(a)(2)(iii) ........ 4
16 C.F.R. § 310.4(a)(2) ........ *passim*
16 C.F.R. § 310.4(a)(2)(ii) ........ 2, 4, 11, 18
16 C.F.R. § 310.4 ¶ 62 ........ 11
60 Fed. Reg. 43842 ........ 11
60 Fed. Reg. 43842-01, 43853 (Aug. 23, 1995) (codified at 16 C.F.R. pt. 310) ........ 16
FRCP Rule 8 ........ 4
FRCP Rule 8(a) ........ 3, 7
FRCP Rule 8(a)(3) ........ 9
FRCP Rule 9(b) ........ 5, 7

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

FRCP Rule 9(b)'s ........................................................................................... 5, 7
FRCP Rule 12(b)(6)........................................................................................... 3

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiff Consumer Financial Protection Bureau ("CFPB," "the Bureau," or "Plaintiff") began investigating the claims it alleges in the Complaint against Defendant Prime Marketing Holdings, LLC ("PMH" or "Defendant") over two years ago, prior to current ownership. Since that time, PMH has diligently responded to the Bureau. Despite all of the good faith submissions and negotiations over the course of two years on PMH's part, the Bureau refused to substantively engage with PMH. To date, the Bureau has never told PMH, and has not told the Court, what conduct the Bureau claims is unlawful about PMH's business. The Bureau has pled legal conclusions, not facts, and the majority of the Complaint is pled in a conditional past tense.

Even more troubling, the Bureau attempts to enforce a provision of the Telemarketing Sales Rule (TSR) that even the agency which promulgated this regulation – the Federal Trade Commission (FTC) – does not apply as the Bureau does here. Moreover, the Bureau's application of this TSR provision directly conflicts with the Credit Repair Organizations Act (CROA), which is the specific statute that regulates PMH's business and all other credit repair businesses.

The Bureau cannot state a claim under any of its five counts and the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

PMH is a state-bonded company that provides credit repair services to its customers. Compl. ¶¶ 7, 20.[1] For some customers, Defendant conducts a consultation during which an analyst reviews and discusses that person's credit

[1] PMH disputes the Bureau's characterization of its business and allegations, but accepts them as true for the limited purposes of this Motion, to the extent not contradicted by facts of which the Court may properly take judicial notice.

report, and are charged an initial fee for that service. *Id.* ¶¶ 33, 40. Some consumers agree to continue working with Defendant after the consultation. *Id.* ¶ 34. Consumers who elect to continue working with Defendant after the initial consultation are charged monthly fees. *Id.* ¶ 36.

Without alleging the specifics of the alleged violative advertising, the Bureau alleges that Defendant has misrepresented its services. Compl. ¶¶ 41-59.

## MEET AND CONFER

On September 30, 2016, counsel for Plaintiff and Defendant telephonically discussed the grounds for Defendant's motion to dismiss. Moreover, because Plaintiff began its investigation in 2014, after which time counsel for Plaintiff and Defendant exchanged numerous substantive communications, Defendant's legal position that 16 C.F.R. section 310.4(a)(2)(ii) does not apply to its business has been communicated to Plaintiff in writing and verbally on multiple occasions. During their meet and confer, Defendant's counsel referenced those correspondences and communicated that Defendant's legal position remains unchanged that 16 C.F.R. section 310.4(a)(2)(ii) is invalid and, in any event, does not apply to Defendant's business.

## ARGUMENT

### I. PLAINTIFF FAILS TO MEET APPLICABLE PLEADING STANDARDS REQUIRING DISMISSAL OF ALL FIVE CLAIMS

A complaint must be dismissed as a matter of law when it (1) "lack[s] a cognizable legal theory" or (2) states "insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Although leave to amend a complaint is generally liberally granted, leave to amend should not be given when a pleading "could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). And prejudice is the "touchstone of the inquiry" when deciding whether to grant leave to amend. *Eminence Cap., LLC v.*

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

*Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing cases).

**A. Plaintiff Does not Satisfy Rule 8(a) and Dismissal is Proper under Rule 12(b)(6)**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), "[a]llegations in the complaint, together with reasonable inferences therefrom, are assumed to be true." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007). The court may not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

At a minimum, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation omitted). Where a complaint only pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotations omitted). Pleadings that are "no more than conclusions" are "not entitled to the assumption of truth." *Id.* at 679; *see also Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) ("we do not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations").

Plaintiff's "factual" allegations are mere formulaic recitations of the elements of the Bureau's causes of action and are rife with legal conclusions. For example, Plaintiff alleges that PMH "requested and received payment for services represented to remove derogatory information from, or to improve, consumers' credit histories, credit records, or credit ratings." Compl. ¶ 25. This allegation is a recitation of 16 C.F.R. § 310.4(a)(2) ("It is an abusive telemarketing act or practice

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

[to engage in] [r]equesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating . . . ."); *see also* Compl. ¶ 30 ("Typically, PMH has charged a fee . . . ."). Another advanced fee allegation is regurgitated almost verbatim from the TSR. *Compare* Compl. ¶ 40, *with* 16 C.F.R. § 310.4(a)(2)(ii) (both stating "with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved").

The examples continue. The Bureau alleges that "PMH misrepresented the efficacy of its services." *Compare* Compl. ¶ 41, *with* 16 C.F.R § 310.3(a)(2)(iii). And not only is this allegation completely conclusory, it is unsupported by any other allegations describing facts that would lead to the conclusion that such misrepresentations were made. *See* Compl. ¶¶ 42-59.

Strikingly, Plaintiff's Complaint is inundated with vague terms such as "often" (*id.*), "some consumers" (*id.* ¶¶ 26, 27), "typically" (*id.* ¶ 30), and "at times" (*id.* ¶¶ 31, 32, 35, 37, 39, 45, 53, 57-58) to obscure the actual facts that Plaintiff contends support the claims. And the Complaint also is written almost entirely with vague past tense verbs that do not identify ongoing activity. *See, e.g.*, *id.*¶¶ 28, 46, 47, 50, 53 ("has represented"), *id.* ¶ 29 ("has marketed"), *id.* ¶¶ 30, 37, 39 ("has charged"), *id.* ¶¶ 42, 43 ("has misrepresented").

Typically, where plaintiffs claim advertising is deceptive, their allegations include a copy of or quotes from the challenged advertising. *See e.g. Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Here, by contrast, Plaintiff does not provide the source of or quotes from the challenged advertising. *See* Compl. ¶¶ 41-51, 53-59, 65-68, 72-74, 78-79, and 82-87.

The Complaint does not inform Defendant of the facts at issue, relies on a recitation of elements and conclusory statements, and fails to satisfy Rule 8.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

Therefore, Plaintiff's claims must be dismissed.[2]

**B. Plaintiff Also Fails to Satisfy Rule 9(b)**

The Bureau purports to allege deceptive conduct, which sounds in fraud; but the Complaint wholly omits specifics of that conduct. When a claim is said to "sound in fraud" as deceptive advertising allegations generally do in this Circuit, then the plaintiff must meet Rule 9(b)'s heightened pleading requirements (*i.e.*, the "who, what, when, where, and how" of the claim). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003); *see also* *F.T.C. v. ELH Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 WL 4759267, at *1 (D. Ariz. Sept. 4, 2013) (finding claims alleging violations of, among others, the TSR, sounded in fraud and must be pled pursuant to Rule 9(b)); *F.T.C. v. Ivy Capital, Inc.*, No. 2:11CV-283 JCM (GWF), 2011 WL 2118626, at *3 (D. Nev. May 25, 2011) (same); *U.S. v. Cathcart*, No. C 07-4762 PJH, 2008 WL 4279717, at *1, 5 (N.D. Cal. Sept. 15, 2008) (dismissing allegations sounding in fraud but not pled with specificity); *CollegeNet, Inc. v. XAP Corp.*, No. CV-03-1229-HU, 2004 WL 2303506, at *2 (D. Or. Oct. 12, 2004) (summarizing cases requiring Rule 9(b) pleading where Lanham Act claims sound in fraud, and requiring same). Where a defendant had an obligation to "represent true, verified facts to consumers, making unsubstantiated representations equates to negligent misrepresentation" and any contention that a defendant has engaged in such misrepresentations must satisfy Rule 9(b). *F.T.C. v. Lights of America, Inc.*, 760 F. Supp. 2d 848, 852 n.4 (C.D. Cal. Dec. 17, 2010).

[2] Plaintiff's Complaint is also inadequate on claims one through four because Plaintiff fails to allege that any telephone calls initiated or received by PMH are interstate phone calls. (*See e.g.* Compl. ¶ 19). The making or receiving of interstate phone calls is a necessary element of whether a person is a "telemarketer" under the Telemarketing Sales Rule. *See* 16 C.F.R. §§ 310.2(ff) and (gg) (telemarketing "involves more than one interstate telephone call").

Plaintiff alleges that "PMH misrepresented the efficacy of its services," but does not say when this alleged misrepresentation occurred, in what form or even what specifically was misrepresented. Compl. ¶ 41. The Bureau also fails to allege how or why the statement is a misrepresentation. Similarly, Plaintiff repeatedly alleges that Defendant "misrepresented" certain vague facts, but does not allege the who, what, when, where, or how of this alleged misrepresentation. *Id.* ¶¶ 42, 43, and 56.

The same deficiency is found throughout the Complaint involving other allegations consistent with fraud–that Defendant "did not have a reasonable basis" (*id.* ¶ 44, 45, 48, 49) for making statements or has "failed to disclose" (*id.* ¶ 51, 57) certain facts, or "failed to explain" (*id.* ¶ 54) certain other facts. However, the Bureau fails to identify the specific facts supporting its fraudulent allegations. For example, the Bureau alleges that "PMH often has called consumers shortly after the consumers have inquired about a loan on a lending website." Compl. ¶ 23. Defendant is left to guess at which customers it allegedly called, when (other than "often") such calls were made, what website the consumers were allegedly interfacing with, and what, if anything it allegedly said to those consumers during the call. Moreover, the Complaint fails to allege why calling "consumers shortly after" they have inquired about a loan is unlawful.

Plaintiff's allegations of deceptive conduct – which sound in fraud under the law of this Circuit – are incorporated into every claim. *See id.* ¶¶ 60, 63, 70, 76, and 81. But the Bureau is unable to specifically plead any of its claims because those facts do not exist. Rather, Plaintiff has advanced a haphazard Complaint, incapable of being redeemed, that has had the practical effect of deterring PMH's business partners and making it nearly impossible for PMH to continue its operations. The prejudice to Defendant is extreme, especially as Plaintiff is without sufficient facts or legal authority to support its claims. Because the CFPB's Complaint is deficient on every count it should be dismissed.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

Plaintiff's Complaint meets neither Rule 8(a) nor Rule 9(b)'s pleading standards and the Court should dismiss all five claims. Defendant has been severely prejudiced by these baseless claims, and Plaintiff will not be able to allege any facts to meet the heightened pleading standard of Rule 9(b), as the Bureau has conducted a lengthy investigation in this matter and would have, presumably, already pled those facts, if they existed. For these reasons alone, the Court should grant this Motion to Dismiss with prejudice and without the opportunity to re-plead. *See Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 247; *Eminence Cap., LLC*, 316 F.3d at 1052; *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (the district court should not grant leave to amend if it "determines that the pleading could not possibly be cured by the allegation of other facts").

## II. PLAINTIFF LACKS STANDING TO PURSUE ITS CLAIMS

"Article III, of course, limits Congress' grant of judicial power to 'cases' or 'controversies.'" *Federal Election Commission v. Akins*, 524 U.S. 11, 20 (1998). Plaintiff must demonstrate standing for each claim and for each form of relief sought. *Davis v. Federal Election Commission*, 554 U.S. 724, 734 (2008); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). To establish standing, Plaintiff must demonstrate (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).[3]

[3] The Court also should dismiss the Complaint because Defendant is not a "covered person," pursuant to 12 U.S.C. § 5481(6). The Complaint avers that Defendant provides credit repair services to consumers and incorrectly alleges that Defendant is a covered person pursuant to 12 U.S.C. § 5481(15)(A)(viii) and (ix). Compl. ¶ 17. But neither of these cited provisions–nor any other statutory definition of consumer financial product or service–includes credit repair. *Id*. Moreover, the Bureau has not alleged any other activity that would render PMH a "covered person" within the meaning of the CFPA. Here, the Bureau seeks equitable and monetary relief through its authority to do so under the CFPA, but this statute provides that authority as to "covered persons," which the Bureau's Complaint acknowledges. Compl. ¶ 89 (*citing* 12 U.S.C. §5536(a)). In addition, the CFPA's prohibitions against deceptive conduct apply only to designated "covered persons," as well. 12 U.S.C. §5531(a). For this reason, too, the Court should dismiss the Bureau's deception claim.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**A. Plaintiff's Claims Are Not Redressable**

"It is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible." *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006); *see also* *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1285 (N.D. Cal. Aug. 20, 2012) (dismissing claim for injunctive relief that was too broad); *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 353 (E.D. Pa. May 3, 2011) (noting that courts "routinely decline to grant" "obey the law" injunctions, summarizing cases, and on that basis finding plaintiff lacked standing); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. Oct. 16, 2007) (noting that "'blanket injunctions to obey the law are disfavored'").[4]

"Irreparable harm cannot be established solely on the fact of past infringement." *Metro-Goldwyn-Mayer Studios*, 518 F. Supp. 2d at 1214; *see also* *F.T.C. v. Merchant Services Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394, at *1 (E.D. Wash. Aug. 13, 2013) ("a court must independently assess whether violations are imminent"). In the Ninth Circuit, in cases "involving statutes which give the courts the discretion to issue injunctions on the basis of past violations, the federal courts have consistently held that the party moving for the injunction must show that there is a 'likelihood' of future violations." *Federal Election Commission v. Furgatch*, 869 F.2d 1256, 1261 (9th Cir. 1989); *F.T.C. v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) ("As a general rule, '[p]ast wrongs are not enough for the grant of an injunction[.]'").

Here, Plaintiff fails to even meet the "likelihood" standard as it does not allege a present and continuing course of conduct for claims two through five that

[4] Plaintiff's "obey the law" prayer for relief also does not notify the Defendant of the relief sought, as required by Rule 8(a)(3).

are redressable by injunctive relief. Rather, the Bureau only alleges acts in the past tense as to these claims. *See e.g.* Compl. ¶¶ 17, 20-32, 35, 37, 39, 41-47, 50-59, 65-67, 72-74, 78-79, 82-87. There is no allegation that any of the alleged misrepresentations are likely to occur in the future. *See Furgatch*, 869 F.2d at 1261. Despite, this shortcoming, Plaintiff requests that the Court grant "injunctive relief" as the Court deems just and proper. Compl. at 15:8-9. Because Plaintiff does not allege when the allegedly unlawful conduct occurred (other than "at times"), that it continues to occur, or likely will recur, Plaintiff has also failed to establish that any challenged conduct is redressable by injunctive relief. *See Evans*, 775 F.2d at 1087.

Moreover, Plaintiff's prayer for relief is inadequate because it amounts to no more than an impermissible "obey the law" injunction. *See Elend*, 471 F.3d at 1209; *Sixth Angel Shepherd Rescue Inc.*, 790 F. Supp. 2d at 353 ("obey the law" injunctions are inappropriate). Plaintiff asks the Court to "[p]ermanently enjoin Defendant from committing further violations of the CFPA and the TSR and other provisions of federal consumer financial law as defined by 12 U.S.C. § 5481(14)." Compl. at 15:5-7. The problem with this request, as discussed more fully *supra*, is that Plaintiff's Complaint fails to state what is unlawful and fails to allege that the unspecified conduct is continuing. Rather, Plaintiff's Complaint espouses almost exclusively vague allegations of past conduct. Without allegations that any specific conduct will occur in the future that could be redressed by the proposed vague injunction, Plaintiff lacks standing to pursue injunctive relief.[5] *Elend*, 471 F.3d at 1210 ("At a bare minimum, standing requires that a plaintiff provide a concrete frame of reference for evaluating an alleged future harm."); *id.* at 1211-12

[5] Moreover, "requests that a court grant any 'relief it deems just' are not sufficient to show redressability." *Sixth Angel*, 790 F.Supp.2d at 353. Plaintiff's catchall provision to this effect (Compl. at 15:8-9) does not cure the lack of standing.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

(“When a case involving prospective relief provides a court with no factual assurance that future injury is likely and no clues about its contours should such an injury arise, . . . [s]uch a claim is not fit for adjudication by this Court.”).

**B. Plaintiff Is Not Entitled to a Monetary Remedy Because Plaintiff Does Not Allege Actual Consumer Injury**

Restitution or Disgorgement – equitable monetary relief – is appropriate only when there is a showing that a defendant or respondent has engaged in conduct that violated one or more consumer financial laws and that conduct resulted in actual consumer injury. *See e.g.*, *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994) (citation omitted); *see also*, 12 U.S.C. §§ 5565(a)(2)(C), (D). In order to obtain restitution on behalf of consumers, Plaintiff must show consumer injury. *F.T.C. v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1336 (M.D. Fla. July 21, 2010). For example, when the FTC seeks restitution for violations of Section 5 of the FTC Act, courts necessarily consider the total refunds that consumers have received, and the actual services that were rendered. *See F.T.C. v. Zamani*, No. SACV 09-0977-DOC, 2011 U.S. Dist. LEXIS 60913, at *37 (C.D. Cal. June 6, 2011).

However, Plaintiff has not alleged any consumer injury. For instance, although Plaintiff alleges that “[c]onsumers often encountered difficulty in obtaining refunds from PMH”, Plaintiff does not allege that any consumer did not obtain the requested refund. *See* Compl. ¶ 55. Likewise, although Plaintiff alleges “[i]n numerous instances, in connection with the offering or provision of credit repair services, PMH has represented, directly or indirectly, expressly or by implication, that its actions will or likely will result in a substantial increase in consumers’ credit scores,” Plaintiff has not alleged that any representation to this effect turned out to be false. *See, e.g.*, Compl. ¶ 65. There has been no consumer injury, which is why Plaintiff has not alleged any. Defendant’s customers have either received the benefit of Defendant’s services, or had the ability to obtain a

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

refund, or both. For the foregoing reasons, Plaintiff lacks Article III standing, this Court lacks subject matter jurisdiction, and Plaintiff's claims should be dismissed.

## III. PLAINTIFF'S TELEMARKETING SALES RULE ADVANCE FEE CLAIM (COUNT 1) FAILS AS A MATTER OF LAW

Plaintiff alleges that Defendant's conduct is an abusive telemarketing practice pursuant to 16 C.F.R. section 310.4(a)(2)(ii) (the "Advance Fee Provision"). Compl. ¶ 62. 16 C.F.R. section 310.4 provides, in relevant part, that

> It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:
> . . .
> (2) [r]equesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit card, or credit rating until:
> (i) [t]he time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and
> (ii) [t]he seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. . . .

16 C.F.R. § 310.4(a)(2). Plaintiff's claim is specifically based on section 310.4(a)(2), subsection (ii). Compl. ¶¶ 61-62. As discussed below, Plaintiff does not and cannot state a claim against Defendant under this provision.

### A. A Specific Statute (CROA) Trumps a General Regulation (the Advance Fee Provision)

Plaintiff's interpretation of the Telemarketing Sales Rule's (TSR) Advance Fee Provision contradicts the contours of a statutory regime, CROA, 15 U.S.C. § 1679 *et seq*, that has primacy in the credit repair field, and which was enacted after the Advance Fee Provision. *Compare* 15 U.S.C. § 1679 (CROA effective September 30, 1996) *with* 60 Fed. Reg. 43842 (promulgating Advance Fee Provision, August 23, 1995).

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

As the Supreme Court has explained, there are "sound reasons" for a specific statute to be the governing statute in an area as it "represents Congress' detailed judgment" on the issue and accommodates relevant policy issues to be addressed. *United States v. Estate of Romani*, 523 U.S. 517, 532 (1998). Moreover, "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974); *see also D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling.").

CROA is the primary statute designed and intended to regulate the credit repair industry. *See, e.g.*, Request for Judicial Notice ("RJN") Ex. A, FTC, States Announce Crackdown on Scams that Bilk Customers (Mar. 5, 1998) ("The CROA is the first federal law specifically targeting credit repair . . . ."). It includes provisions that specifically address how companies may charge fees for credit repair services. *See* 15 U.S.C.§ 1679b(b). In contrast, the credit repair provisions of the TSR, including the Advance Fee Provision, were promulgated under 15 U.S.C. § 6102, the Telemarketing Sales Act (TSA), which generally addresses deceptive and abusive telemarketing practices. Regulating general telemarketing practices in a specific industry with a general statute or regulation, via the TSR, of course, cannot override or render obsolete the strictures of CROA, a statute created specifically to govern the credit repair industry. *See Morton*, 417 U.S. at 550-51; *D. Ginsberg & Sons*, 285 U.S. at 208.

It is a bedrock principle that "[a] valid statute always prevails over a conflicting regulation." *Texas v. E.P.A.*, 726 F.3d 180, 195 (D.C. Cir. 2013) (citations omitted). And, "a regulation can never trump the plain meaning of a statute." *Id.* (internal quotation marks omitted). For example, in *Texas v. E.P.A.*, the D.C. Circuit recognized these established principles when it determined that no matter how an EPA regulation was previously applied or interpreted, it could not

override a statutory requirement that greenhouse-gas emitting sources were automatically regulated as of January 2, 2011. *Id.* at 195. To interpret the regulation otherwise would "undercut Congress's mandate." *Id.* When a statute specifically designed and intended to regulate an entire industry, such as CROA, conflicts with a regulation, such as the Advance Fee Provision, promulgated under a statute of general purpose, like the TSA, the specific statute must prevail.

CROA expressly addresses how credit repair organizations may charge fees: "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b(b). Thus, once the service has been fully performed, Congress has determined that credit repair organizations, such as the Defendant, may collect fees for those completed services. CROA does not require that a credit repair services provider wait at least six months or longer to receive payment for services rendered, as the Bureau seems to apply the Advance Fee Provision. Moreover, CROA was passed by Congress, after the TSR was promulgated. Indeed, Congress could not have intended to have CROA's fee structuring provisions already vitiated on the date of enactment, by the pre-existing TSR Advance Fee Provision.

CROA's fee-structuring provisions necessarily prevail over the TSR's Advance Fee Provision. In one of the few cases addressing fee structures in the credit repair industry, *DuCharme v. Heath*, the court held that a fee structure that is substantially similar to Defendant's method of billing customers is lawful under CROA. *DuCharme v. Heath*, No. C 10-02763 CRB, 2010 WL 5211502, at *6 (N.D. Cal. Dec. 16, 2010). Specifically, the defendant in *DuCharme* charged a "setup/first work" fee, and then charged customers a monthly fee to cover the work performed the previous month. *Id.* at *1. The *DuCharme* court held that the fee structure was permissible under CROA, and that credit repair organizations could

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

break down credit repair services into smaller component parts including an initial "first work" fee and charge fees for each stage of services as those services are completed. *Id.* at *5. The court held that these smaller service increments could be considered "any service" under the language of CROA, and that the term "any service" did not and could not mean "all [credit repair] services." *Id.* As in *DuCharme*, Defendant does not require "down payments" before work is performed, and does not charge for any services before providing them. And the Complaint alleges no contrary facts. The court in *DuCharme* noted that charging fees before "any service" is "fully performed" is prohibited under CROA and that this is the most logical and textually-faithful way of interpreting the advance fee ban in that statute. *Id.* at *4. PMH, of course, has always operated in accordance with CROA, and neither the Bureau nor the FTC – which enforces CROA – has ever alleged otherwise.

Nevertheless, the Bureau appears to presume that companies must provide all credit repair services free of charge for a minimum of six months. There is no business in this country that can operate in that fashion. Indeed, this application of the Advance Fee Provision would shut down lawful business practices that are expressly contemplated and regulated by CROA. The Court should reject the Bureau's attempt to override this statutory regime.

**B. The Bureau's Application of the Advance Fee Provision Does Not Accord With The FTC's Interpretation of The TSR, and the FTC Promulgated This Rule**

The FTC does not enforce the Advance Fee Provision, even though this agency promulgated the TSR. Indeed, in the twenty years since the Advance Fee Provision's enactment, the FTC has only attempted to enforce the provision in one case. And, at that, the FTC, subsequently sought to dismiss that case, in order to avoid a court holding that the Advance Fee Provision was unconstitutional. *See* *Illinois v. National Credit Management Group*, No. 96-C-2073, (N.D. Ill.)

("*National Credit I*"). In *National Credit I* , the State of Illinois brought a four-count complaint alleging violations of the Advance Fee Provision, and Illinois's Credit Services Organizations Act and Consumer Fraud Act. *See Illinois v. National Credit Management Group*, No. 96-C-2073, 1996 WL 351196 (N.D. Ill. June 24, 1996) at *1. National Credit filed a motion for summary judgment challenging the constitutionality of the Advance Fee Provision. *Id*. The FTC intervened as an amicus at the request of the trial judge who found that defendant's motion raised "serious questions about the constitutionality of the Federal Trade Commission's Telemarketing Sales Rule, 16 CFR Section 310.4(a)(2) and the Commission's authority to regulate credit repair services absent a clear statement from Congress." RJN Ex. B, [Dkt 35]. The case was voluntarily dismissed by the State of Illinois after a hearing on the motion for summary judgment but before the court ruled.

Less than two years later, when the FTC and the State of New Jersey brought actions against the same company, National Credit Management Group, additional light was shed on the voluntarily dismissal in *National Credit I*. *See In re National Credit Management Group., LLC*, 21 F. Supp. 2d 424 (D. N.J. 1998) ("*National Credit II*"). In this second action, the FTC and State of New Jersey, in a consolidated complaint, alleged violations of Section 5 of the FTC Act, CROA, provisions of the TSR but not the Advance Fee Provision, the Telemarketing and Consumer Fraud and Abuse Prevention Act (TCFA), and the NJ Consumer Fraud Act. *Id*. at 429. Notably, in this second action against a credit repair company, the FTC did not allege violations of the TSR's Advance Fee Provision. *See generally id*. In fact, in *National Credit II*, the court noted that the oral argument on the constitutionality issue in *National Credit I* "did not go well" for the FTC, and that Illinois dismissed its case at the request of the FTC "[t]o avoid an adverse ruling." *Id*. at 432 n.13. Since the dismissal of *National Credit I*, the FTC has never sought to enforce the Advance Fee Provision. And for good reason—with the passage of

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

CROA, as highlighted above, Congress has spoken and promulgated a specific statute governing credit repair that does not require a six-month-or-more delay fee structure as the Bureau appears to apply here. *See supra*.

**C. The Advance Fee Provision Was Never Meant to and Does Not Apply to a Company like PMH**

Moreover, the Advance Fee Provision would never apply to PMH if the FTC ever enforced the Provision. The Advance Fee Provision was meant to apply to "bogus" credit repair establishments. The Bureau's proposed application of the Advance Fee Provision contravenes the FTC's intent in promulgating this provision. For example, as noted in the Federal Register "Statement of basis and purpose and final rule," which was published in 1995 when the TSR was first promulgated, Section 310.4(a)(2) is intended to limit the operations of fraudulent scammers who "promise consumers that, for a fee paid in advance, they will improve the consumer's credit record by removing negative information from that record" and then "[o]nce the fee is paid, . . . fail to deliver the promised services or achieve the promised results, and the consumer's credit record does not improve." 60 Fed. Reg. 43842-01, 43853 (Aug. 23, 1995) (codified at 16 C.F.R. pt. 310).

Similarly, the FTC's express statement of intent in promulgating the TSR, as articulated in the FTC's guidance on "Complying with the Telemarketing Sales Rule," provides that the Advance Fee Provision was meant to curtail "bogus credit repair services." *See* RJN Ex. C, Federal Trade Commission, Complying with the Telemarketing Sales Rule (Feb. 2011). A bogus credit repair service will effect temporary removal of an inaccurate item from a consumer credit report while a consumer dispute is being investigated. The Fair Credit Reporting Act and its implementing rule, the Furnisher Rule require such investigations. *See, e.g.*, 15 U.S.C. § 1681i. All disputed items are initially investigated, regardless of whether the disputed item is accurately or inaccurately reported on the consumer's credit report. This often results in a disputed item being removed from a credit report

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

temporarily during the pendency of an investigation. But once a credit bureau has re-verified the item and confirmed its accuracy, that item will re-appear on a consumer credit report, several months after the consumer paid fees for bogus credit repair services. If there is any purpose to the Advance Fee Provision, it is clearly intended to halt this exact conduct. RJN Ex. C, Federal Trade Commission, Complying with the Telemarketing Sales Rule (Feb. 2011). PMH, however, does not engage in such conduct, and the Complaint pleads no contrary allegations.

### D. The Bureau's Application of the Advance Fee Provision Unlawfully Conflicts with State Law

The CFPA, the Bureau's enabling act, disfavors preemption of state consumer protection laws. The Dodd-Frank Act, in a section titled "Relation to Other Provisions of Enumerated Consumer Laws that Relate to State Law," provides that "[n]o provision of this title . . . , shall be construed as modifying, limiting, or superseding the operation of any provision of an enumerated consumer law that relates to the application of a law in effect in any State with respect to such Federal law." The Bureau's apparent interpretation of the Advance Fee Provision directly conflicts with, and requires companies to violate, a number of state laws.

For example, the California Credit Services Act of 1984 requires a credit services organization "to perform the agreed services within six months following the date the buyer signs the contract for those services." Cal. Civ. Code § 1789.13. But under the Bureau's apparent interpretation of the Advance Fee Provision, a credit repair organization is unable to fulfill the service of providing the documentation of credit repair results within six months, as California's law requires. Credit repair companies are therefore left with the unsatisfactory choice of either violating well-established California law and not providing the requisite documentation or complying with a never-before-enforced and unconstitutional regulation. Other state laws have similar effects and it cannot be that credit repair

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

companies have to choose which law to violate, when one of those laws has been implicitly (if not explicitly) abandoned by the agency (the FTC) that promulgated it.

**E. Even if Applied, Defendant Does Not Violate the Advance Fee Provision**

The Advance Fee Provision, even if the Bureau's application was lawful – which it is not – does not apply to Defendant's products and services. As alleged, some of Defendant's customers only purchase a credit consultation product – that is, ***not*** a product that is "represented to remove derogatory information from, or improve a person's credit history, credit record, or credit rating." Compl. ¶ 33; 16 C.F.R. § 310.4(a)(2).

In addition, the Advance Fee Provision only applies to "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one ***interstate*** telephone call," 16 C.F.R. §310.2(dd) (emphasis added). Therefore, the Advance Fee Provision also does not apply to transactions conducted within the state of California, where Defendant is located.

Finally, Plaintiff does not allege that Defendant promises any result, as required by the Advance Fee Provision. 16 C.F.R. § 310.4(a)(2)(ii) (making it illegal to collect fees for credit repair until "[t]he seller has . . . demonstrat[ed] that the promised results have been achieved"). Plaintiff alleges that Defendant tells consumers that it "can raise consumers' individual credit scores." Compl. ¶ 47. That is not an allegation that Defendant has promised that it would raise those scores. A promise requires a "will do," not a "might do." *See e.g. Meissner v. Simpson Timber Co.*, 421 P.2d 674, 679 (Wash. 1966) (applying Washington law that "A promise is an undertaking, however expressed, either that something shall happen, or that something shall not happen, in the future." (internal quotation marks omitted).

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

Likewise, the Bureau alleges that Defendant "has represented" that "it substantially raises its customers' credit scores, often stating that it raises scores by an average of more than 100 points." Compl. ¶ 46. That allegation, too, is not a promise because it is neither specific enough to be enforceable nor does it represent a future intent to do something. *See, e.g.*, *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1017 (9th Cir. 2003) (applying California law "a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages"); *Richmond Eng'g & Mfg. Corp. v. Loth*, 115 S.E. 774, 786 (Va. 1923) (applying Virginia law that a promise must be "sufficiently certain in its terms to enable the court to understand what the promisor undertakes").

Notably absent from Plaintiff's allegations is what Defendant actually advertises. Defendant is aware that it cannot make promises to consumers, as it has neither the authority nor the foresight to promise what credit bureaus may do with any particular item on a consumer's credit report. Plaintiff pled no contrary fact because there are no such facts.

## IV. PLAINTIFF'S CLAIMS RELATED TO DECEPTIVE PRACTICES (COUNTS TWO THROUGH FIVE) FAIL AS A MATTER OF LAW

Defendant's marketing efforts have complied with all relevant provisions of the TSR and the CFPA's UDAAP prohibitions (12 U.S.C. §§ 5531, 5536), and Plaintiff's allegations of deceptive conduct are baseless. The CFPB's deception doctrine adheres to section 5 of the FTC Act's deception standard.[6] As stated in

[6] Under the FTC standard an act or practice is deceptive if (1) there is a representation, omission, or practice, (2) that is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material. *Pantron I Corp.*, 33 F.3d at 1096.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

the CFPB examination manual, "[t]he principles of 'unfair' and 'deceptive' practices in the Act are similar to those under Sec. 5 of the Federal Trade Commission Act (FTC Act)." RJN Ex. D, CFPB Supervision and Examination Manual Version 2 (Oct. 2012). The CFPB examination manual provides that "[a] representation, omission, act or practice is deceptive when: (a) the representation, omission, act, or practice misleads or is likely to mislead; (2) the consumer's interpretation of the representation, omission, act, or practice is reasonable under the circumstances; and (3) the misleading representation, omission, act, or practice is material." *Id.* at Procedures 9.

As discussed in more detail below, Plaintiff has no basis for alleging that any of Defendant's marketing claims are deceptive.

**A. Defendant Does Not Make Material Misrepresentations (Claims 2 and 5)**

Plaintiff alleges that Defendant has misrepresented "to consumers that it could remove virtually any negative information from a consumer's credit report" (Compl. ¶ 42), "its ability to get certain items removed from individual consumers' credit reports" (*id.* ¶ 43), and "that it could remove virtually any negative information from a consumer's credit report" (*id.* ¶ 44). Plaintiff does not supply the Court with any actual advertising, probably because this is not what Defendant advertises to consumers. Rather, Defendant guarantees "the removal of a minimum one (1) Disputed item that is reporting inaccurate or obsolete on the client's credit history within one hundred and eighty days (180) of the date of the execution of this Agreement." RJN Ex. E at p. 3, Park View Credit Website.

This court should not unreasonably infer untrue marketing claims from the marketing claims Defendant actually has made. *See Stuart v. Cadbury Adams USA, LLC*, No. 09-6295 AHM (CWx), 2010 WL 1407303, at *5 (C.D. Cal. Apr. 5, 2010) ("This Court is not prepared to extend the *Iqbal* test to allow for the outlandish claim that gum chewers would not be aware of the importance of oral

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

hygiene unless it were spelled out in the gum manufacturers' marketing materials"; granting motion to dismiss). Viewing Defendant's website as a whole, Defendant does not make any of the allegedly deceptive advertising claims.[7]

Moreover, Defendant's testimonials are both factually true and, taken with the other elements of the website, have no misleading implication, as they do not purport to be more than certain customers' specific experiences. *See Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 322 (7th Cir. 1992) (citations omitted). RJN Ex. E at p. 12. ("After working with Park View Credit, Stephen saw a 130 point increase in his credit score!"). The mere fact that the Bureau characterizes representations as material does not make them so. *See, e.g.*, Compl. ¶¶ 66, 82, 83.

**B. Defendant's Money Back Guarantee Is Not Deceptive (Claim 3)**

Defendant offers a full refund to its customers if Defendant does not successfully remove one inaccurate derogatory item from the customer's credit report after 180 days of service. RJN Ex. E at p. 3; Compl. ¶ 52. In effect, Defendant functionally provides the same assurance that the Advance Fee Provision was intended to provide – to ensure that no consumers pay for credit repair without receiving results. Defendant is unaware of any instances in which customers were promised a money back guarantee with terms that conflict with its clear and conspicuous money back guarantee. The Bureau alleges no contrary facts.

Plaintiff alleges that Defendant "has represented that it offers a money-back guarantee" (Compl. ¶ 50), which is true. RJN Ex. E at p. 3. The specific terms of the guarantee are prominent on Defendant's website (*id.*) and, as Plaintiff alleges, also restated in Defendant's contracts. (Compl. ¶ 52). As shown on the website,

[7] To the extent Plaintiff is able to show that any of these alleged claims were made, Plaintiff still has wholly failed to allege any facts to support its allegations that the representations were untrue.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

the actual terms of the guarantee are not as Plaintiff alleges (Compl. ¶ 50) nor does Defendant fail to disclose limitations on the guarantee (*id.* ¶ 51). And Plaintiff alleges that Defendant "typically failed to explain that consumers would have to pay for at least six months of services in order to even be eligible for the money-back guarantee" (Compl. ¶ 54), but neglects to mention that Defendant provides its consumers with a detailed explanation of when charges are authorized. RJN Ex. E at p. 6. There is simply nothing deceptive about Defendant's money-back guarantee.

**C. Defendant's Product Fees are not Deceptive (Claims 4 and 5)**

Plaintiff alleges that "at times" Defendant failed to disclose certain monthly fees, regurgitates the elements of a claim under 16 C.F.R. section 310.3(a)(2)(i), and conclusively states that "[i]n numerous instances . . . PMH misrepresented the costs of its credit repair services." Compl. ¶¶ 57-58, 77-80, 86. However, contrary to the Bureau's representations, Defendant discloses a detailed summary of the costs of its services on its website. RJN Ex. E at p. 5. Plaintiff has not pointed to any advertising that is different than what is on the website, or practices that are inconsistent with the representations made on the website.

**D. Defendant's Advertising Regarding Removing Negative Information is Accurate (Claim 5)**

Plaintiff alleges that Defendant misrepresented the efficacy of its services, such as by representing that Defendant can obtain removal of material negative entries or a substantial increase in consumers' credit scores. Compl. ¶¶ 82-84. Once again, Plaintiff fails to point to any specific advertising. And, once again, Plaintiff's allegations are contradicted by the actual text of Defendant's advertising. Defendant has provided actual customer testimonials. RJN Ex. E at pp. 11-12. Because those testimonials do not purport to be anything more than specific customers' experiences, Plaintiff cannot draw the broad conclusions therefrom that it wants to draw. *See Kraft, Inc.*, 970 F.2d at 322.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**CONCLUSION**

In no uncertain terms, Plaintiff's lawsuit is designed to put a lawful company, bonded in the State of California, and by extension a lawful industry, out of business as it would be functionally impossible to run a business without being permitted to collect fees for at least six months. This untenable result is not required by Congress and was not intended under CROA or the TSA. Plaintiff's overreaching is punctuated by its refusal to put Defendant's actual advertising before the Court because it knows that Defendant does not engage in the alleged deceptive conduct. As a result, the very fact of this suit is jeopardizing a business with over one-hundred employees.

Because the Advance Fee Provision is unenforceable and purports to trump a specific statute, Defendant cannot be liable. For this and the numerous reasons addressed above, the Court should dismiss all of Plaintiff's claims with prejudice.

Dated: October 7, 2016

**VENABLE LLP**

By: /s/ Kimberly Culp Cloyd

Kimberly Culp Cloyd (SBN 238839)
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
KCulp@Venable.com
Tel: (415) 653-3750
Fax: (415) 653-3755

Allyson B. Baker (*PHV To Be Filed*)
Katherine M. Wright (*PHV To Be Filed*)
575 7th Street, NW
Washington, DC 20004
ABBaker@Venable.com
KMWright@Venable.com
Tel: (202) 344-4000
Fax: (202) 344-8300

*Attorneys for Defendant Prime Marketing Holdings, LLC*