SARAH PREIS, DC BAR # 997387 (PHV)
(Email: sarah.preis@cfpb.gov)
(Phone: 202-435-9318)
PATRICK GUSHUE, PA Bar #306966 (PHV)
(Email: patrick.gushue@cfpb.gov)
(Phone: 202-435-9671)
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7329

KENT KAWAKAMI, CA Bar # 149803 – Local Counsel
(Email: Kent.Kawakami@usdoj.gov)
(Phone: 213-894-4858)
United States Attorney's Office
Central District of California - Civil Division
300 North Los Angeles Street, Room 7516
Los Angeles, CA 90012
Fax: (213) 894-2380

Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Consumer Financial Protection Bureau,

Plaintiff,

v.

Prime Marketing Holdings, L.L.C.,

Defendant.

Case No. 2:16-cv-07111-BRO (JEM)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE**

# TABLE OF CONTENTS

ARGUMENT ........................................ 2

I. The Bureau Has Adequately Pleaded Its Claims ........................................ 2

A. The Bureau's Allegations Easily Meet the Requirements of Rule 8 and State a Claim for Relief ........................................ 2

B. Rule 9(b) Does Not Apply to Deception Claims under the CFPA, But Even if it Did, the Bureau's Claims Meet that Standard ........................................ 6

1. The Bureau's Claims Do Not "Sound in Fraud" ........................................ 6

2. The Bureau's Allegations Satisfy Rule 9(b). ........................................ 10

II. The Bureau Has Standing and PMH is Subject to the CFPA ........................................ 11

III. PMH Must Comply with the TSR ........................................ 15

A. CROA Did Not Implicitly Repeal the Advance Fee Provisions of the TSR ........................................ 15

1. PMH Cites No Evidence that Congress Intended to Repeal the TSR's Advance Fee Ban, Or that the FTC Interpreted the TSR as Repealed. ........................................ 16

2. CROA Does Not Conflict with the TSR's Advance Fee Ban. ........................................ 19

B. PMH Has Engaged in Precisely the Type of Abusive and Deceptive Practices Prohibited by the TSR ........................................ 20

IV. PMH's Factual Arguments Are Inappropriate and Ineffective ........................................ 23

CONCLUSION ........................................ 24

## TABLE OF AUTHORITIES

**Cases**

*Branch v. Smith*,
538 U.S. 254, 273 (2003) ....................17
*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156, 1159 (9th Cir. 2016). ....................2
*CFPB v. All Am. Check Cashing, Inc.*,
No. 3:16-CV-00356 at 6-7 (S.D. Miss. July 15, 2016) ....................7
*CFPB v. Frederick J. Hanna*,
114 F. Supp. 3d 1342, 1372 (N.D. Ga. 2015) .................... 7, 8, 9
*CFPB v. ITT*,
2015 WL 1013508, at *17 (S.D. Ind. Mar. 6, 2015) ....................4
*CFPB v. Morgan Drexen, Inc.*,
60 F. Supp. 3d 1082 (C.D. Cal. 2014) ....................21
*CFPB. v. Gordon*,
819 F.3d 1179, 1188 (9th Cir. 2016) .................... 11, 13
*Ebeid ex rel United States v. Lungwitz*,
616 F.3d 993, 998 (9th Cir. 2010) ....................10
*FTC v. Communidyne, Inc.*,
No. 93-6043, 1993 WL 558754, at *2 (N.D. Ill. Dec. 3, 1993) ....................8

*FTC v. Consumer Health Benefits Assoc.*,
No. 10-3551, 2012 WL 1890242 at *6-7 (E.D.N.Y. May, 23, 2012)....................8

*FTC v. ELH Consulting, Inc.*,
No. 12-02246, 2013 WL 4759267, at *1 (D. Ariz. Sept. 4, 2013)......................11

*FTC v. Figgie Int'l, Inc.*,
994 F.2d 595, 605-06 (9th Cir. 1993) ..................................................14

*FTC. v. Gill*,
265 F.3d 944, 950 (9th Cir. 2001)...........................................................4

*FTC v. Johnson*,
96 F. Supp. 3d 1110, 1120-21 (D. Nev. 2015).............................................4

*FTC v. Lights of America*,
760 F. Supp. 2d 848 (C.D. Cal. 2010)....................................................10

*FTC v. Nat'l Testing Servs., LLC*,
2005 WL 2000634, at *2 (M.D. Tenn.) ..................................................9

*FTC v. Sterling Precious Metals, LLC*,
No. 12-80597, 2013 WL 595713, at *3 (S.D. Fla. Feb. 15, 2013) ........................8

*FTC v. Subscriberbase Holdings, Inc.*,
2013 WL 5406225, at *2 (N.D. Ill. Sept. 24, 2014)...........................................24

*Hillsborough Cty., Florida v. Automated Med. Labs., Inc.*,
471 U.S. 707, 712-13 (1985).................................................................23

*In re Charles Schwab Corp. Secur. Litig.*,
257 F.R.D. 534, 545-56 (N.D. Cal. 2009)....................................................9

*In re Mattel*,
588 F. Supp.2d 1111, 1118 (C.D. Cal. 2008)....................................................6

*In re NationsMart Corp. Sec. Litig.*,
130 F.3d 309, 315 (8th Cir. 1997)....................................................8

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.*,
534 U.S. 124, 142 (2001) .................................................... 16, 17

*Kearns v. Ford Motor Co.*,
567 F.3d 1120, 1126 (9th Cir. 2009)....................................................7

*Koenig v. USA Hockey, Inc.*,
2010 WL 4783042, at *3 (S.D. Ohio June 14, 2010)....................................................24

*Leatherman v. Tarrant Cty. Narcotics & Coordination Unit*,
507 U.S. 163, 164 (1993) ....................................................8

*Massey v. Banning Unified School Dist.*,
256 F. Supp. 2d 1090, 1092 (C.D. Cal. Mar. 28, 2003)....................................................13

*Morton v. Mancari*,
417 U.S. 535, 550 (1974). ....................................................16

*Radzanower v. Touche Ross & Co.*,
426 U.S. 148 (1976) .................................................... 16, 20

*Sixth Angel Shepherd Rescue Inc. v. West*,
790 F. Supp. 2d 339, 352-53 (E.D. Pa. 2011) ....................................................13

*Star v. Baca*,
652 F.3d 1202, 1212 (9th Cir. 2011)...........................................................................2

*State. v. Lexington Law Firms*,
No. 96-0344, 1997 WL 367409, at * 6 (M.D. Tenn. May 14, 1997)....................17

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506, 513 (2002) ..........................................................................................8

*United States v. Dish Network, L.L.C.*,
75 F. Supp. 3d 942, 1103-04 (C.D. Ill. 2014), *amended on recons.*, 80 F. Supp. 3d 914 (C.D. Ill. 2015), *and vacated in part on recons.*, 80 F. Supp. 3d 917 (C.D. Ill. 2015).........................................................................................................22

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097, 1105-06 (9th Cir. 2003) ............................................. 6, 7, 10, 11

**Statutes**

12 U.S.C. §§ 5481(12), (14) ...................................................................................23

12 U.S.C. §5481(14) .................................................................................................11

12 U.S.C. § 5481(15)(ix) ..........................................................................................15

12 U.S.C. § 5481(15)(viii) ........................................................................................14

12 U.S.C. §§5481(15)(viii)(I)-(II). ...........................................................................15

12 U.S.C. § 5481(6)(A)....14

12 U.S.C. § 5491....23

12 U.S.C. §§ 5531(a), 5536(a),....1

12 U.S.C. § 5536(a)(1)(B). ....14

12 U.S.C. § 5551(b)....22

12 U.S.C. §§ 5564....11

12 U.S.C. § 5565(a)(1)....12

12 U.S.C. § 5565(a)(2)....12

15 U.S.C. § 1679....15

15 U.S.C. § 1679(b)(2)....18

15 U.S.C. § 1679b(b). ....20

15 U.S.C. § 1692n....23

15 U.S.C. § 6101....15

15 U.S.C. §§ 6101-6108....1

**Other Authorities**

Consumer Credit and the Law § 2A:12....18

The Late Charles Alan Wright, et al. *Federal Practice and Procedure* § 1255 (3d ed. 2016)....12

**Rules**

Fed. R. Civ. P. 9(b)....6

Fed. R. Civ. Pro. 8(a)(2). ....................................................................................2

**Regulations**

16 C.F.R. § 310 ....................................................................................1, 21

16 C.F.R. § 310.2(dd) ....................................................................................22

16 C.F.R. § 310.2(ff) ....................................................................................2

16 C.F.R. § 310.2(gg) ....................................................................................2

16 C.F.R. § 310.3(a)(2)(i) ....................................................................................5

16 C.F.R. § 310.3(a)(2)(iii), ....................................................................................5

16 C.F.R. § 310.4(a)(2) .................................................................... 1,3, 17, 20

16 C.F.R. § 310.4(a)(4) ....................................................................................18

The Bureau brought this action against the Defendant, Prime Marketing Holdings, LLC, ("PMH") on September 22, 2016, alleging violations of law in connection with PMH's offer and sale of credit repair services.[1] On October 7, 2016, PMH moved to dismiss the Bureau's complaint. Def.'s Mot. to Dismiss, ECF No. 14.

The Complaint alleges that in connection with a telemarketing transaction, PMH collects fees for credit repair services before satisfying the requirements of the TSR's advance fee ban, 16 C.F.R. § 310.4(a)(2). The Complaint also alleges that in the course of marketing its services to consumers, PMH makes numerous misrepresentations about the benefits and cost of its services, as well as its "money back guarantee."

In response to the Complaint, Defendant asks this Court to dismiss the case, raising a litany of arguments. The Bureau's allegations are well-pleaded, PMH's arguments regarding the applicability of the TSR are without merit, and its attempt to rebut the Bureau's allegations are both wholly unpersuasive and inappropriate at this stage of litigation. Accordingly, for the reasons set forth below, the Bureau respectfully requests that the Court deny the Defendant's Motion to Dismiss.

[1] The Bureau's Complaint alleges violations of Sections1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA"), 15 U.S.C. §§ 6101-6108, and its implementing regulation, the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310 (1995).

## ARGUMENT

### I. The Bureau Has Adequately Pleaded Its Claims.

#### A. The Bureau's Allegations Easily Meet the Requirements of Rule 8 and State a Claim for Relief.

The Bureau's allegations "plausibly suggest an entitlement to relief" and provide sufficient allegations of underlying facts to give fair notice to PMH so that it can defend itself effectively.[2] *Star v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). "A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). In considering whether to dismiss pursuant to Rule 12(b)(6), a court must "accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Id.* (citation omitted).

The Complaint clearly exceeds this standard. The Bureau has alleged that since as early as October 1, 2014, PMH, using several different names, has

[2] PMH argues that the Bureau fails to allege that PMH has made or received interstate phone calls. However, the Bureau's allegation that PMH is a "telemarketer" necessarily includes the allegation that it made or received interstate telephone calls. *See* 16 C.F.R. § 310.2(ff) (defining a telemarketer as one who initiates or receives calls "in connection with a telemarketing transaction"); 16 C.F.R. § 310.2(gg) (defining telemarketing as "involv[ing] more than one interstate telephone call").

engaged in an ongoing, unlawful credit repair business that harms consumers nationwide by charging consumers unlawful advance fees and misrepresenting both the costs and benefits of its services. Compl. ¶¶ 2, 7, 12, 15-17.

First, the TSR prohibits companies from charging fees to consumers for credit repair before the consumer is provided a consumer report showing the promised results, and that report must be issued more than six months after the results were achieved. 16 C.F.R. § 310.4(a)(2). Count I alleges PMH has charged a series of unlawful advance fees without complying with this provision, including an initial fee in conjunction with a consultation that is marketed as "free" (Compl. ¶¶ 26-33); a monthly fee of $89.99 (Compl. ¶¶ 37-38); and in some cases, a separate set-up fee of several hundred dollars (Comp. ¶ 39). These allegations sufficiently plead Count I, and state a claim for relief. Compl. ¶¶ 30, 37, 39-40.

Next, in Counts II to V, the Complaint alleges that PMH made deceptive representations in violation of the CFPA as well as other specific provisions of the TSR. Count V alleges deceptive conduct in violation of the CFPA and applies to each of the types of misrepresentations described below. To establish liability for deception under the CFPA, the Bureau must show that (1) there was a representation; (2) the representation was likely to mislead consumers acting

reasonably under the circumstances; and (3) the representation was material. *Cf.* *FTC. v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001).[3]

The Complaint specifically alleges four types of misrepresentations: (1) that PMH substantially raises customers' credit scores; (2) that it will raise consumers' credit scores by a specific amount; (3) that it can remove virtually any type of negative item from a consumer's credit report; and (4) that it will remove specific items on a consumer's report. Compl. ¶¶ 42-43, 46-47.The Complaint alleges that PMH lacked a reasonable basis for making these representations. Compl. ¶¶ 44-45, 48-49. Making a claim without a reasonable basis is deceptive. *FTC v. Johnson*, 96 F. Supp. 3d 1110, 1120-21 (D. Nev. 2015) (explaining that the FTC can show that a representation is likely to mislead consumers by establishing that an advertiser lacked a reasonable basis for a representation, and that a "reasonable basis" requires having "had some recognizable substantiation prior to making the representation"). These allegations state a claim for relief under Count II for violations of the TSR, which prohibits misrepresenting, directly or by implication, in the sale of goods or services any material aspect of the "performance, efficacy,

[3] *CFPB v. ITT*, 2015 WL 1013508, at *17 (S.D. Ind. Mar. 6, 2015) (noting that the CFPA's "prohibition on 'any unfair [or] deceptive act or practice' closely mirrors the language employed by Section 5 of the Federal Trade Commission Act," and concluding "that longstanding interpretations of the FTCA should inform interpretation of the CFPA as well.")

nature or central characteristics" of services that are the subject of a sales offer, 16 C.F.R. § 310.3(a)(2)(iii), as well as Count V (deception under the CFPA).

The Complaint further alleges that PMH misrepresented the terms of its "money back guarantee" by failing to disclose in sales calls that it only applies if a consumer pays for at least six months of service. Compl. ¶54. These allegations sufficiently state a claim in Count III for violations of the TSR, which prohibits failing to disclose clearly and conspicuously the material terms and conditions of its refund policy, 16 C.F.R. § 310.3(a)(1)(iii), as well Count V.

Finally, the Complaint alleges that at times PMH has failed to disclose the monthly fee for its services, for example by failing to tell consumers that they would be charged a monthly fee or by representing that this fee would only be charged if the consumer affirmatively elected to continue services, when the fee was assessed automatically. (Compl. ¶¶ 57-59). These factual allegations are sufficient to support the claim in Count IV for violations of the TSR, which requires telemarketers to clearly and conspicuously disclose the total cost for services before a consumer consents to pay for them, 16 C.F.R. § 310.3(a)(2)(i), and Count V (the CFPA). Thus the Bureau's allegations state a claim for relief,

easily meet the pleading standards established by Federal Rule Civil Procedure 8(a), and provide sufficient notice so that PMH can defend itself effectively.[4]

**B. Rule 9(b) Does Not Apply to Deception Claims under the CFPA, But Even if it Did, the Bureau's Claims Meet that Standard.**

**1. The Bureau's Claims Do Not "Sound in Fraud."**

Rule 9(b) does not apply to the Bureau's claims because they do not sound in fraud. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Although PMH does not identify specific counts, it appears to argue that Counts Two through Five of the complaint "sound in fraud[.]"[5] Mot. 6. PMH's argument fails, however, because deception and fraud are different legal theories and there is no basis for equating the two for the purposes of Rule 9(b).

The Ninth Circuit has recognized that where an allegation does not mention the word fraud or allege facts constituting fraud, Rule 9(b) does not apply. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003); *In re Mattel*, 588 F. Supp.2d 1111, 1118 (C.D. Cal. 2008). In *Vess*, the court looked to the elements

[4] PMH takes issue with the use of terms like "often" or "has charged." First, the Bureau is not required to allege the exact number of instances of these actions. Second, the Bureau has alleged that PMH's unlawful conduct is ongoing. Compl. ¶ 2. And the use of phrases like "has charged" includes possible future conduct as well as past instances.

[5] Although PMH's arguments only address deception claims, it urges the court to dismiss because the complaint is "deficient on every count." Mot. 6. PMH has not offered any support for applying Rule 9(b) to Count One, which is not a deception claim.

of a fraud claim in evaluating whether to apply Rule 9(b) to the plaintiff's deception claims, noting that the elements for fraud include misrepresentation, knowledge of its falsity (or "scienter"), intent to defraud, justifiable reliance and damages. *Vess*, 317 F.3d at 1105. The court applied Rule 9(b) to claims against two of the defendants which were largely based on a fraudulent conspiracy. *Vess*, 317 F.3d. at 1106, 1108. Yet it declined to apply Rule 9(b) to some of the claims against the other defendant because the allegations did not mention fraud or incorporate the elements of fraud. *Id.; see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).[6]

Numerous courts have adopted this approach in declining to apply Rule 9(b) to deception claims brought under the FTC Act and the CFPA. *See CFPB v. All Am. Check Cashing, Inc.*, No. 3:16-CV-00356 at 6-7 (S.D. Miss. filed July 15, 2016) (attached as Exhibit A) (holding that Rule 9(b) does not apply to CFPA deception claims); *CFPB v. Frederick J. Hanna*,114 F. Supp. 3d 1342, 1372 (N.D.

[6] In *Kearns*, the Ninth Circuit noted that the elements of fraudulent misrepresentation had expanded since *Vess* to include non-disclosure. *Kearns*, 567 F.3d at 1126. The court therefore held that nondisclosure "is a claim for misrepresentation *in a cause of action for fraud*." *Id.* at (empahsis added). Regardless of how this would have affected the outcome in *Vess*, *Kearns* reiterated the principle that claims are considered "grounded in fraud," even if fraud is not a necessary element of the claim, if a plaintiff "nonetheless allege[s] that defendant engaged in fraudulent conduct." Because the plaintiff alleged that the defendant conspired with dealerships to intentionally conceal information from consumers, the *Kearns* court held that the claims sounded in fraud. *Kearns*, 567 F.3d at 1127. *Vess* held that not all deception claims sound in fraud, and *Kearns* does not hold otherwise.

Ga. 2015) (same); *FTC v. Sterling Precious Metals, LLC*, No. 12-80597, 2013 WL 595713, at *3 (S.D. Fla. Feb. 15, 2013) (declining to apply Rule 9(b) to FTC Act and TSR claims and adopting rationale of the Tenth Circuit that FTC Act claim is not a fraud claim due to different elements); *FTC v. Consumer Health Benefits Assoc.*, No. 10-3551, 2012 WL 1890242 at *6-7 (E.D.N.Y. May, 23, 2012) (reasoning that FTC Act and TSR claims more akin to claims under state consumer protection statute than to common law fraud); *FTC v. Communidyne, Inc.*, No. 93-6043, 1993 WL 558754, at *2 (N.D. Ill. Dec. 3, 1993) (rejecting argument that Rule 9(b) applies to §5 FTC Act claims).

Furthermore, applying a heightened pleading standard to consumer protection claims that do not include fraud or mistake as an element conflicts with the "liberal system of 'notice pleading' embodied in the Federal Rules of Civil Procedure." *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997) (declining to apply Rule 9(b) to securities claims that were not "grounded in fraud"). "The Supreme Court has consistently cautioned against extending Rule 9(b)'s heightened pleading standard beyond claims for fraud or mistake." *Hanna*, 114 F. Supp. 3d at 1372 (citing *Leatherman v. Tarrant Cty. Narcotics & Coordination Unit*, 507 U.S. 163, 164 (1993)); *see also* *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).

These considerations are even more heightened where, as here, the claims are remedial, as evidenced by the fact that Bureau need not show intent, reliance, or actual harm to establish liability. *See Hanna*, 114 F. Supp. 3d at 1373; *FTC v. Nat'l Testing Servs., LLC*, 2005 WL 2000634, at *2 (M.D. Tenn.) (noting intent is not an element of a § 5 FTC Act claim because the primary purpose is "to protect the consumer public rather than to publish the wrong-doer" and therefore Rule 9(b) does not apply). Including any claims involving misrepresentations within the scope of Rule 9(b) would greatly expand that rule. *Cf. In re Charles Schwab Corp. Secur. Litig.*, 257 F.R.D. 534, 545-56 (N.D. Cal. 2009) (declining to apply Rule 9(b), even though § 11 securities claims require a misrepresentation and may sound in fraud if pleaded along with § 10-b claims, because "they are not inherently fraud-based"). Such an expansion is not warranted. The instant allegations do not have the same reputational consequences as do allegations of intentional harm, and the risk of litigation being used as a pretext for discovery is minimized when the plaintiff is a federal law enforcement agency charged with protecting consumers. *Cf. Hanna*, 114 F.Supp.3d at 1373 (explaining that concerns activating Rule 9(b) are inapplicable or "minimized" in CFPA context and that imposing the Rule would make it more difficult for consumers to enforce their rights). Thus the

Bureau's complaint need only satisfy the "simple requirements" of Rule 8(a), which it clearly does. *See* Swierkiewicz, 534 U.S. at 513.[7]

Because the Bureau's deception claims do not sound in fraud, Rule 9(b) does not apply. The Complaint does not allege fraud, use the word "fraud," or allege facts that would constitute fraud. It does not allege that PMH intentionally misled consumers, or that specific consumers actually relied on the misrepresentations. Accordingly, Rule 9(b) does not apply to the Bureau's claims.

**2. The Bureau's Allegations Satisfy Rule 9(b).**

Even if Rule 9(b)'s heightened pleading standard applied, the Complaint would meet that standard. To satisfy Rule 9(b), a complaint must include "the who, what, where, when and how" of the fraud. *Vess*, 317 F.3d at 1106. In addition, the complaint must allege why the statements are false. *Ebeid ex rel United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). A pleading is sufficient under Rule 9(b) if provides notice of the fraudulent conduct so that the defendant can prepare an adequate answer and not just deny wrongdoing. *Id*. at 999.

The Bureau has alleged the general nature of PMH's credit repair operation and the timeframe (Compl. ¶¶20-40); provided a detailed description of the advance fees charged by PMH (Compl. ¶¶ 30, 37, 39, 40); and described the types

[7] *FTC v. Lights of America*, 760 F. Supp. 2d 848 (C.D. Cal. 2010), a case on which PMH relies, does not support dismissal here because that case involved claims of individual liability, and by extension, required the pleading of additional elements that are not at issue here. *Id.* at 852-53.

of misrepresentations made to consumers (Compl. ¶¶ 41-43, 46-47, 51-54, 56-59). The Complaint also alleges why these representations are false or misleading. Compl. ¶¶ 44-45, 48-49, 51-54, 56-59. PMH is aware of how it has marketed its services and with which consumers it has done business, and the Bureau's allegations provide notice of the specific practices that have violated the law. *See* *FTC v. ELH Consulting, Inc.*, No. 12-02246, 2013 WL 4759267, at *1 (D. Ariz. Sept. 4, 2013). In keeping with the aim of Rule 9(b), this information is sufficient to allow PMH to prepare an adequate answer.[8]

## II. The Bureau Has Standing and PMH is Subject to the CFPA.

PMH's assertions that the Bureau does not have standing to bring the claims alleged in the Complaint are utterly without merit. *See* Mot. 7-11. The Bureau has standing to bring actions in federal court to enforce certain consumer protection statutes and regulations, including enforcing both the TSR and the CFPA's prohibition on deceptive acts and practices. *See* *CFPB. v. Gordon*, 819 F.3d 1179, 1188 (9th Cir. 2016); 12 U.S.C. §§ 5564 (authorizing the Bureau to bring actions to enforce violations of Federal consumer financial law), 5481(14) (defining

[8] Should the court disagree, however, the appropriate relief is leave to amend rather than dismissal. *See* *Vess*, 317 F.3d at 1108 (acknowledging that dismissal for failure to comply with Rule 9(b) should ordinarily be without prejudice and that leave to amend should be granted if it appears at all possible that the plaintiff can cure any defect).

Federal consumer financial law to include both the TSR and the CFPA's prohibition on deceptive acts and practices).

PMH's claim that the Bureau's allegations are not redressable necessarily requires a finding that there is no appropriate legal or equitable relief for any of the violations alleged in the Complaint. That position is untenable. The CFPA expressly authorizes the Bureau to seek such redress: The Bureau can seek "any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law." *Id*. § 5565(a)(1). Such relief can include, but is not limited to, restitution, disgorgement, damages, or injunctive relief. *Id.*§ 5565(a)(2). The Bureau has alleged that PMH collects unlawful advance fees and makes deceptive statements regarding its services. Requiring PMH to repay unlawful advance fees or fees collected as a result of deceptive conduct and enjoining future violations are just a few examples of possible relief that would redress the violations.

Under the guise of addressing redressability, PMH claims that specific injunctive relief and restitution are not appropriate given the facts in this matter. These claims are not appropriate for a motion to dismiss, and they are, in any event, wrong. The purpose of a motion to dismiss under 12(b)(6) is to test the legal sufficiency of the complaint. As numerous courts have held, the demand for judgement is not considered part of the claim for that purpose. *See, e.g.*, The Late Charles Alan Wright, et al. *Federal Practice and Procedure* § 1255 (3d ed. 2016)

(collecting cases). Courts will not dismiss complaints so long as they can grant some form of relief. *See, e.g.*, *Massey v. Banning Unified School Dist.*, 256 F. Supp. 2d 1090, 1092 (C.D. Cal. Mar. 28, 2003) (stating dismissal not warranted merely if plaintiff requests a remedy to which he or she is not entitled, so long as the court can ascertain that some relief can be granted).

Because the Bureau has standing and is entitled to seek the relief requested, the cases relied upon by PMH are inapposite. *See, e.g.*, *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 352-53 (E.D. Pa. 2011) (acknowledging that a plaintiff "need not craft specific requests for injunctive relief" but dismissing third amended complaint because defendant failed to show redressability because it sought only an "amorphous" injunction to "restrain officials from performing acts").

PMH's arguments regarding the requested injunctive relief also reflect a fundamental misunderstanding of what is required at this stage of litigation. Once the Bureau has established liability, this Court will have an opportunity to determine whether an appropriately tailored injunction should be ordered based on the facts presented. *See, e.g.*, *Gordon*, 819 F.3d at 1197-98 (rejecting argument that district court abused its discretion by ordering injunctive relief after court made findings regarding likelihood of recurrence).

Finally, PMH misconstrues the Bureau's obligations with respect to injury. PMH essentially argues that it can keep illegal advance fees and fees collected after PMH made deceptive representations, so long as consumers were ultimately "satisfied" by its services. As the Ninth Circuit explained, there is "no precedent" for the proposition that the Bureau cannot seek restitution for unlawful fees paid by purportedly "satisfied customers." *Id*. Moreover, PMH's argument ignores that fact that once deception has been proven a "presumption of actual reliance arises" and "proof of individual reliance by each purchasing consumer is not needed." *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605-06 (9th Cir. 1993).

Buried in a footnote, PMH also argues that it is not subject to the CFPA. Mot. 7, n.3. Section 1036(a)(1)(B) of the CFPA states that it "shall be unlawful for (a) any covered person . . . (B) to engage in any unfair, deceptive, or abusive act or practice." 12 U.S.C.§ 5536(a)(1)(B). Section 1002(6)(A) defines a "covered person" as "any person that engages in offering or providing a consumer financial product or service[.]" 12 U.S.C. § 5481(6)(A). PMH is a "covered person" because it offers, sells, and purports to perform credit repair services. The definition of "financial product or service" includes "financial advisory services" provided "to consumers on individual financials matters or relating to proprietary financial products or services . . . ." 12 U.S.C. § 5481(15)(viii). As evident by the use of the word "including," this provision is not limited to credit counseling or the

enumerated debt relief services. *Id.* at § 5481(15)(viii)(I)-(II). The definition of "financial product or service" also includes "collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of consumers, used or expected to be used in connection with any decision regarding the offering or provision of a consumer financial product or service," with three exceptions that are not present here. 12 U.S.C. § 5481(15)(ix). Thus PMH's argument that it is not a "covered person" is belied by the language of the statute, and is incorrect.

## III. PMH Must Comply with the TSR.

### A. CROA Did Not Implicitly Repeal the Advance Fee Provisions of the TSR.

PMH essentially argues that the Credit Repair Organizations Act (CROA), codified at 15 U.S.C. § 1679 *et seq.* (1996), implicitly repealed the credit repair provisions of the TSR and thereby in effect excluded credit repair companies that engaged in telemarketing from the FTC's rulemaking authority under the Telemarketing and Consumer Fraud and Abuse Prevention Act (TCFAPA), codified at 15 U.S.C. § 6101 *et seq.* (1994). This argument fails for three reasons: PMH offers no evidence that Congress intended to repeal the TSR, implied repeals are extremely disfavored, and CROA and the TSR do not conflict.

The Supreme Court rarely finds an implied repeal "due to the relatively stringent standard for such findings, namely that there be an irreconcilable conflict

between the two federal statutes at issue." *See* *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.*, 534 U.S. 124, 142 (2001) (citations omitted). Moreover, "the intention of the legislature to repeal must be clear and manifest." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) (citations omitted). Absent an affirmative showing that Congress intended to repeal, the Court has stated that the only permissible justification for repeal by implication is where two statutes are "irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 550 (1974). However, the Supreme Court also has repeatedly explained that when two acts cover the same subject, "the rule is to give effect to both if possible." *J.E.M. Ag Supply*, 534 U.S. at 143-44 (citations omitted).

**1. PMH Cites No Evidence that Congress Intended to Repeal the TSR's Advance Fee Ban, Or that the FTC Interpreted the TSR as Repealed.**

PMH points to no evidence, let alone "clear and manifest evidence," that by enacting CROA, Congress intended to repeal the TSR's advance fee ban. Nothing in the language of CROA (which was enacted shortly after the promulgation of the TSR's advance fee ban) or its legislative history indicates that CROA limits the FTC's authority to regulate credit repair companies, that it exempts credit repair companies from rules regarding telemarketing, or that it otherwise serves as a substitute for § 310.4(a) of the TSR. Indeed, the only court to consider this issue held that although the defendant was subject to CROA, nothing in the text of

CROA indicated that the defendant's telemarketing activities could not also be subjected to the TSR. *State. v. Lexington Law Firms*, No. 96-0344, 1997 WL 367409, at * 6 (M.D. Tenn. May 14, 1997). Although PMH inaccurately casts CROA as the exclusive mechanism for enforcing deceptive and abusive practices committed by credit repair companies, CROA does not contain any exclusivity provision. *See* Mot. 12-13; *see also* *J.E.M.*, 534 U.S. at 140-41 (reasoning that statute that did not contain exclusivity provisions did not restrict coverage of another statute). PMH asserts that CROA "trumps" the TSR because the TSR is a "general" regulation, but the TSR advance fee ban very specifically applies to "services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating." 16 C.F.R. § 310.4(a)(2).

Furthermore, because CROA applies to all credit repair companies while the TSR applies to all telemarketers, CROA does not substitute for the TSR. *See* *Branch v. Smith*, 538 U.S. 254, 273 (2003) (explaining that an implied repeal may be found where a later statute covers "the whole subject of the earlier one and is 'clearly intended as a substitute'") (citation omitted). Rather, as one commentator explained,

> Echoing and effectively broadening the provision in the FTC Telemarketing Sales Rule, the CROA bans the taking of any advance fees by credit repair organizations before their services have been fully performed. The CROA, however, applies to all credit repair sales, not just those that are telemarketed, so its scope is more comprehensive than the FTC rule.

Consumer Credit and the Law § 2A:12; *see* also 15 U.S.C. § 1679(b)(2) (stating purpose of CROA includes "protect[ing] the public from unfair or deceptive advertising and business practices by credit repair organizations").

Moreover, the FTC has amended the TSR several times since the passage of CROA, and at no point has it stricken or otherwise altered the advance fee ban for credit repair services. Rather, as recently as December 14, 2015, the FTC has reiterated the applicability of this provision. Telemarketing Sales Rule, 80 Fed. Reg. 77,520-01, 77,521 (Dec. 14, 2015) (to be codified at 16 C.F.R. pt. 310) ("Third, the Rule prohibits telemarketers and sellers from requesting or receiving payments in advance of obtaining credit repair services[.]"). This is consistent with educational information provided to the public on the FTC's website discussing payment restrictions on sales of credit repair services. Request for Judicial Notice, Ex. C at 63.

In claiming that the FTC has adopted an "interpretation" that somehow precludes enforcement of § 310.4(a)(2)—a valid, existing regulation—PMH relies only on conjecture. PMH first refers to a case brought, and later dismissed, by the State of Illinois. Mot.14-15. Specifically, PMH points to dicta from a different case suggesting that the state that brought the action dismissed *National Credit I* because of concerns that a court would hold the advance ban for credit repair provisions of the TSR unconstitutional. *Id.* at 15. PMH does not actually challenge

the TSR on constitutional grounds, or even identify what those constitutional grounds might be, nor has any court ever invalidated § 310.4(a)(2) on constitutional or other grounds.

PMH also claims that the FTC typically relies on CROA when litigating the unlawful collection of fees by credit repair companies. Mot. 14. The FTC's exercise of prosecutorial discretion in charging CROA without also charging violations of the advance fee ban under the TSR does not render the TSR invalid. The FTC, much like the Bureau and other law enforcement agencies, is not obligated to charge each subject with every applicable statutory violation. The fact remains that the TSR's advance fee ban was not expressly repealed by CROA and that PMH points to no evidence, let alone clear and manifest evidence, of Congress' intent to do so by implication.

### 2. CROA Does Not Conflict with the TSR's Advance Fee Ban.

PMH's argument fails to recognize the critical fact that CROA and the TSR do not conflict. It is both possible and legally required for a credit repair company that engages in telemarketing to comply with both CROA and the TSR. CROA prohibits credit repair companies from charging or receiving "any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b(b). Credit repair companies that engage in

telemarketing are further required to provide consumers with a credit report demonstrating that any promised results have been achieved for at least six months before collecting fees. Complying with the TSR will not cause a company like PMH to violate CROA. Rather, a credit repair company that complies with the TSR's advance fee ban in these circumstances will necessarily also comply with CROA's advance fee provisions. Because the TSR and CROA are capable of mutual coexistence, both provisions must be regarded as effective, and a court should not find that CROA implicitly repealed the TSR's advance fee ban for credit repair. *See* *Radzanower*, 426 U.S. at 155.

**B. PMH Has Engaged in Precisely the Type of Abusive and Deceptive Practices Prohibited by the TSR.**

PMH next attempts to evade liability by making a series of erroneous claims that its practices do not subject it to the TSR or alternatively do not violate the TSR. *First*, PMH claims that the TSR was never intended to apply to its credit repair activities, ignoring the plain language of the TSR, which PMH's alleged conduct clearly violates. *See* 310.4(a)(2). Furthermore, the FTC has explained its concerns, stating

> [i]f an item is inaccurate, incomplete, or more than seven or 10 years old, consumers can remove or correct the information themselves at no charge if they follow the dispute procedures in the [Fair Credit Reporting Act]. Consumers do not need the services of a third party to correct an inaccurate or out-of-date credit report. No one can do anything to "repair" a bad credit report that is accurate and up to date.

Request for Judicial Notice, Ex. C at 63. The TSR reflects the Commission's concern about credit repair companies representing that they can improve the consumer's records by removing negative items, regardless of what affects the consumer's score. 16 C.F.R. § 310, August 23, 1995. Such companies historically charged advance fees, yet typically failed to actually improve the consumers score. *Id.* By prohibiting credit repair companies from charging fees until the actual credit improvement has truly been achieved, the TSR curbs this abusive practice. The allegations in the Complaint, ¶¶42-43, 46-47, go directly to the heart of the FTC's concern.

*Second*, PMH claims that its initial consultations are not subject to the advance fee ban, because "some" of its customers only purchase the "credit consultation product." Mot. 18. Even if true, this argument goes only to the scope of PMH's liability, not whether the Bureau has stated a claim for which relief can be granted, and PMH fails to address the Bureau's allegation that this service is marketed as the first step in the credit repair process, and therefore is subject to the advance fee ban. *See* Compl. ¶28; *cf.* *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1094 (C.D. Cal. 2014) (finding that Bureau plausibly alleged that fees requested and received for bankruptcy work were for advance fees for debt relief work, in violation of the TSR).

*Third*, PMH construes the TSR's definition of telemarketing as excluding intrastate calls. Again, this argument goes to the scope of PMH's liability, and is wrong. The TSR applies to any "plan, program, or campaign . . . which *involves* more than one interstate telephone call." 16 C.F.R. § 310.2(dd) (emphasis added). The Complaint alleges that PMH engages in telemarketing nationwide, and telemarketing is defined a scheme involving at least one interstate telephone call. Compl. ¶¶ 2, 19. Because the Complaint alleges at least one interstate telephone call, PMH must comply with the TSR for all consumers, including those in California. *See United States v. Dish Network, L.L.C.*, 75 F. Supp. 3d 942, 1103-04 (C.D. Ill. 2014), *amended on recons.*, 80 F. Supp. 3d 914 (C.D. Ill. 2015), *and vacated in part on recons.*, 80 F. Supp. 3d 917 (C.D. Ill. 2015)(concluding that intrastate calls were subject to TSR).

*Fourth*, PMH similarly misreads Section 1041(b) of the CFPA in arguing that § 310.4(a)(2) of the TSR "[u]nlawfully conflicts" with state law. Mot. 17-18. Section 1041(b) merely provides that the CFPA does not alter the Enumerated Consumer Laws' effects on state laws.[9] 12 U.S.C. § 5551(b). Neither the TCFAPA

---

[9] In addition to the provisions of the CFPA, the Bureau was charged with administering eighteen preexisting "enumerated consumer laws." 12 U.S.C. §§ 5481(12), (14), 5491. Some of these laws had provisions intended to clarify Congress's intent to preempt state laws. For example, section 816 of the Fair Debt Collections Practices Act (FDCPA) provides that the FDCPA does not preempt any state laws that provide greater consumer protections than the FDCPA. 15

or its implementing regulation, the TSR, are an Enumerated Consumer Law. *See* 12 U.S.C. § 5481(12). Further, even if the TSR conflicted with Cal Civ. Code. § 1789.13, which it does not, federal regulations preempt inconsistent state law. *See Hillsborough Cty., Florida v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (acknowledging that state laws can be pre-empted by federal regulations as well as by federal statutes)

*Finally*, PMH asserts it is not subject to the TSR because it does not "promise" results. This unsupported assertion is contradicted by the allegations in the Complaint, which must be taken as true at this stage and show both that PMH "guaranteed" the removal of at least one item within 180 days and made deceptive representations that would leave reasonable consumers with the impression that it had promised a result. *See* Compl. ¶¶ 42-43, 46-47, 52, *cf. FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 604 (9th Cir. 1993) (holding that implicit misrepresentations can be deceptive). The Bureau's allegations thus state a plausible entitlement to relief.

## IV. PMH's Factual Arguments Are Inappropriate and Ineffective.

PMH devotes significant time to an ineffective, and inappropriate, attempt to refute or contradict the Bureau's factual allegations. At the motion to dismiss stage, the court must accept well-pleaded facts as true. *See supra* Part I.A. PMH appears to base its allegations largely on what (presumably) is a current version of

U.S.C. § 1692n. Section 1041(b) simply clarifies that the CFPA does not alter these provisions.

its website. Although courts may reject allegations that contradict matters subject to judicial notice, the website provided does not contradict the Bureau's allegations and is not subject to judicial notice. *See Koenig v. USA Hockey, Inc.*, 2010 WL 4783042, at *3 (S.D. Ohio June 14, 2010). Indeed, PMH does not address the Bureau's allegations regarding misrepresentations made to consumer's during sales calls; it does not assert that the website capture provided to the court has remained unchanged since October 1, 2014; nor does it claim that the website provided to the Court is the only form of online advertising (or even the only website) utilized by PMH to market its services to consumers. PMH's arguments do not establish that the Bureau lacks a factual basis for its allegations, and should be rejected. *See FTC v. Subscriberbase Holdings, Inc.*, 2013 WL 5406225, at *2 (N.D. Ill. Sept. 24, 2014) (rejecting motion to dismiss and characterizing assertion that FTC could not, "as a matter of law, give rise to any cause of action against [the defendant]" as "premature"). PMH's request for judicial notice of its website should also be denied.

**CONCLUSION**

For the reasons set forth above, the Bureau respectfully requests that the Court deny the Defendant's Motion to Dismiss and the Defendant's Request for Judicial Notice of Exhibit E.

Respectfully submitted,

Anthony Alexis
Enforcement Director

Deborah Morris
Deputy Enforcement Director

Craig Cowie
Assistant Litigation Deputy

/s/ Sarah Preis
Sarah Preis
(Email: sarah.preis@cfpb.gov)
(Phone: 202-435-9318)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722
Attorney for Plaintiff
Consumer Financial Protection Bureau