**VENABLE LLP**
Allyson B. Baker (*Pro Hac Vice*)
Katherine M. Wright (*Pro Hac Vice*)
575 7th Street, NW
Washington, DC 20004
Email: ABBaker@Venable.com
KMWright@Venable.com
Telephone: 202.344.4000
Facsimile: 202.344.8300

Kimberly Culp Cloyd (SBN 238839)
Email: kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone: 415.653.3750
Facsimile: 415.653.3755

Witt Chang (SBN 281721)
Email: wchang@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

Attorneys for Defendant Prime Marketing Holdings, LLC

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Prime Marketing Holdings, LLC, (d.b.a. Park View Credit, National Credit Advisors, and Credit Experts)<br><br>Defendant. | CASE NO.: 2:16-CV-07111-BRO (JEMx)<br><br>**PRIME MARKETING HOLDINGS, LLC'S REPLY TO ITS MOTION TO DISMISS COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**<br><br>**Date:** **November 14, 2016**<br>**Time:** **1:30 p.m.**<br>**Location:** **Courtroom 7C**<br>**Officer:** **Hon. Beverly Reid O'Connell**<br><br>Action Filed: September 22, 2016<br>Trial Date: N/A |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**PRELIMINARY STATEMENT**

The Bureau's Opposition to PMH's Motion to Dismiss relies on misapplied case law and tautological arguments. Indeed, the Bureau's arguments are baseless.

Notably, throughout its Opposition the Bureau makes sweeping generalizations about the applicability of the TSR, but does not articulate in its brief or its complaint—for that matter—how the facts in this specific case make out a cognizable claim. This is true even though the Bureau has had nearly two years to develop any facts that would be necessary to support its claims.

**ARGUMENT**

**I. THE BUREAU FAILS TO MEET APPLICABLE PLEADING STANDARDS REQUIRING DISMISSAL OF ALL FIVE CLAIMS**

**A. The Bureau's Failure to Plead "Promised Results" Requires Dismissal under Rule 12(b)(6)**

The Bureau's Complaint fails to plead that PMH made a "promised result," even though this is a necessary element of any Advance Fee Provision claim. In its opening brief, PMH specifically highlighted this failure and in its 25-page opposition brief, the Bureau still only parrots the regulation's language (Opp. at 3), makes a vague reference to PMH's guarantee (Opp. at 23), and relies on so-called implicit promises not alleged in the Complaint. *Id*. Nowhere does the Bureau allege that PMH "promised results" to consumers, and the Advance Fee Provision claim fails for that reason alone. Moreover, the Bureau's implicit promise argument is predicated on PMH making "deceptive representations." *Id*. The Bureau, thus, predicates the success of Count 1 on the viability of Counts 2-5 alleging deceptive conduct. And as noted below, Counts 2-5 cannot survive, and Count 1, thus, fails for this reason, as well.

Here, re-pleading the Complaint would prove to be futile and also unfair. This is especially true because the Bureau has failed to identify (1) what a promised result is, (2) what promised results PMH made, and (3) how those alleged promises violated the TSR. The Bureau's other claims also fall short of

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

federal pleading standards. The agency has been investigating PMH for at least two years, and it is unlikely that the CFPB will unearth previously unavailable information that renders the Complaint compliant with federal pleading standards. *See* *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).[1] Rather, granting leave to amend will unnecessarily and unfairly prolong this case. The fact of this lawsuit alone has significantly impacted PMH's ability to continue its operations. The Court should dismiss without leave to re-plead, as "it is the consideration of prejudice to the opposing party that carries the greatest weight" when deciding whether to grant leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

**B. The Bureau Does Not Satisfy Rule 8(a)**

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Indeed, the Bureau defends its complaint doing nothing more than by noting the paragraphs of the Complaint that are near verbatim copies of statutory language (*i.e.*, not actually facts). *See* Opp. at 3 (citing Compl. ¶¶ 30, 40). But merely reciting statutory language, of course, cannot give rise to a cognizable claim under even the most generous reading of Rule 8 of the Federal Rules of Civil Procedure. *See e.g.*, *Twombly*, 550 U.S. at 545.

The Bureau also fails to rehabilitate its vague pleading of alleged past conduct, making it nearly impossible for PMH to identify what it is that the Bureau alleges was unlawful about PMH's business. Indeed, in summarizing its claims

[1] Should the Bureau create a definition of "promised results" in an Amended Complaint, such a definition would be the first time the Bureau (or any federal agency) has ever announced such a standard. At that point, Due Process concerns would require dismissal because neither PMH nor anyone else has had notice of the Bureau's or any other agency's interpretation of the phrase "promised results."

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

made in Counts 2-5, the Bureau explains that the "Complaint alleges that PMH ***made*** deceptive representations." Opp. at 3 (emphasis added). The Complaint does not inform PMH of the facts at issue, relies on a recitation of elements and conclusory statements, and thus fails to satisfy Rule 8.

**C. The Bureau Also Fails to Satisfy Rule 9(b)**

The Bureau argues that no count sounds in fraud because fraud is not an element of the claim. The Court need look no further than the Bureau's Opposition to find authority that 16 C.F.R. § 310.3 claims (*i.e.*, counts II-IV) sound in fraud. Opp. at 17 (citing *State v. Lexington Law Firms*, No. 3:96-0344, 1997 WL 367409 (M.D. Tenn. May 14, 1997)). In *Lexington Law*, the court held that "[a]s the proscriptions of [TSR] Section 310.3 sound in fraud, Rule 9(b) requires Plaintiff to allege violations of said rule with particularity." 1997 WL 367409 at *2.

Moreover, all of the Bureau's claims need to be pled with particularity because they each incorporate "by reference" the allegations which purport to state an alleged fraudulent course of conduct. Compl. ¶¶ 60, 63, 70, 76, and 81. A fraudulent course of conduct "can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). In the Ninth Circuit, where fraud is not an element of a claim but the plaintiff chooses to aver a fraudulent course of conduct (*i.e.*, the claim is "grounded in fraud"), those allegations must still satisfy Rule 9(b). *Id*.

The Bureau's Opposition does not discuss the controlling authority from this district.[2] As PMH explained in its moving brief, a plaintiff must satisfy Rule 9(b)

[2] Although the Bureau claims that *Lights of America* does not apply because it involves "individual claims of liability," that distinction makes no sense. Opp. at 10 n.7. *Lights of America* was a case brought by the FTC alleging that the defendants violated the Federal Trade Commission Act (760 F. Supp. 2d at 850), which Act the Bureau readily admits "closely mirrors" the CFPA under which Count 5 is brought. Opp. at 4:18-20.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

for allegations sounding in fraud. *F.T.C. v. Lights of America, Inc.*, 760 F. Supp. 2d 848, 852 n.4 (C.D. Cal. 2010). In *Lights of America*, the district court also discussed one of the cases cited by the Bureau in its Opposition, *F.T.C. v. Communidyne*, No. 93 C 6043, 1993 WL 558754, at *2 (N.D. Ill. Dec. 3, 1993). Opp. at 8:7-9. The *Lights of America* court explained that *Communidyne* did not apply in the Central District of California as it is "an unpublished decision from the Northern District of Illinois that, contrary to well-established Ninth Circuit law, assumed that claims must include all elements of a claim for fraud or mistake in order to trigger Rule 9(b)." 760 F. Supp. 2d at 851. The court rejected the FTC's out-of-Circuit authorities, as this Court should, because "the decisions cited by the FTC as having already resolved this issue base their conclusion entirely on the assumption that a cause of action must include all of the elements of a claim for fraud in order to trigger Rule 9(b). . . . [T]his assumption contravenes well-established Ninth Circuit law providing that, even where a claim does not include all of the elements of a claim for fraud, it is subject to the heightened pleading requirements of Rule 9(b) if it 'sound[s] in fraud.'" *Id.* at 851-52 (*quoting* *Vess*, 317 F.3d at 1103-04).[3]

The Bureau's remaining cases were all decided outside of this Circuit. Opp. at 7-8; *see, e.g.*, *CFPB v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1371-72 (N.D. Ga. 2015) (expressly declining to follow Ninth Circuit authority that supported application of Rule 9(b)). These cases acknowledge the split in authority and decided not to follow the Ninth Circuit. *See* *F.T.C. v.*

[3] Even in *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008), upon which the Bureau relies and which also pre-dates *Lights of America*, the court merely rejected application of Rule 9(b) because, there, the plaintiff did not allege a cause of action with any "common law fraud elements such as intent to deceive or any overarching fraudulent scheme to defraud the individual Plaintiffs or the public"; a situation markedly different from the Bureau's deception claims under the TSR and the CFPA.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

*Consumer Health Benefits Ass'n*, No. 10 Civ. 3551(ILG)(RLM), 2012 WL 1890242, at *6 (E.D.N.Y. May 23, 2012); *F.T.C. v. Sterling Precious Metals, LLC*, No. 12-80597-CIV, 2013 WL 595713, at *3 (S.D. Fla. Feb. 15, 2013).

The Bureau also advances a public policy argument against applying Rule 9(b) and cites *Vess*, which involved California consumer protection statutes that do not include fraud as an essential element. But there, too, the Ninth Circuit required those claims be pled under Rule 9(b). 317 F.3d at 1105. The Bureau also cites *Hanna*, which relies on *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Opp. at 8:15-17. *Leatherman*, however, turned on a question that was neither at issue in *Hanna* nor here, which was whether claims asserted against municipalities should meet the heightened pleading standard, and held that they did not. 507 U.S. at 167-68. And there the Supreme Court referred to Rule 9(b), noting that in "all averments of fraud or mistake" the plaintiff must meet the heightened standard. *Id.* at 168.[4]

Finally, the Bureau summarily argues that even if Rule 9(b) applies, "PMH is aware of how it has marketed its services and with which consumers it has done business." Opp. at 11:3-4. While that may be true generally, Rule 9(b) requires a plaintiff to notify a defendant of *which* customers and *which* marketing the plaintiff alleges is unlawful, and *how* it was unlawful, in a particular case. *Vess*, 317 F.3d at 1103-04 (requiring the "who, what, when, where, and how"). The Bureau has not done that.

---

[4] The Bureau makes another policy argument that Rule 9(b) should not apply here because the "instant allegations do not have the same reputational consequences as do allegations of intentional harm," presumably trying to explain why Rule 9(b) is not needed to protect the Defendant's interests in this instance. Opp. at 9. But, as PMH's moving brief makes clear, the mere filing of this case has exacted and continues to exact substantial commercial harm on PMH, threatening its continued existence. This only highlights how any policy informing the application of Rule 9(b) further militates in favor of that Rule applying here, too.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## II. THE BUREAU LACKS STANDING TO PURSUE ITS CLAIMS

The Bureau lacks standing in this case because its claims are not redressable, a necessary element of Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). The Bureau's response is that the prayer is not considered part of the claim for purposes of a motion to dismiss and the Complaint cannot be dismissed so long as the Bureau is entitled to some relief. Opp. at 12-13. But it is axiomatic that a plaintiff can only pursue a legal claim if that claim is susceptible to redress. Moreover arguments that a plaintiff lacks standing "are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)" because standing pertains to subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). And "[s]tanding must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc). In fact, courts in the Ninth Circuit regularly dismiss claims for injunctive relief when there is no likelihood that a plaintiff will be similarly injured in the future. *See, e.g.*, *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 927 (N.D. Cal. 2012); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (N.D. Cal. 2010); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007); *Delarosa v. Boiron, Inc.*, No. SACV 10-1569-JST, 2012 WL 8716658, at *8 (C.D. Cal. Dec. 28, 2012).

The case the Bureau relies upon for the proposition that "[c]ourts will not dismiss complaints so long as they can grant some form of relief" does not reach that conclusion. Opp. at 13:2-5 (citing *Massey v. Banning Unified School Dist.*, 256 F. Supp. 2d 1090 (C.D. Cal. 2003)). Rather, the court in *Massey* declined to dismiss the claim for future injunctive relief because there was a factual question about whether the plaintiff would be harmed in the future—a question that could not "be decided prior to discovery." 256 F. Supp. 2d at 1098. This question is not relevant here. Indeed, the Bureau has not alleged, and cannot allege, that PMH is

*currently* engaging in any conduct that violates the TSR or CFPA. Nevertheless, the Bureau seeks to enjoin PMH from doing that which it does not actually do.[5]

Finally, separately, as to monetary damages, the Bureau merely argues that it is entitled to a "presumption of actual reliance."[6] Opp. at 14 (citing *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 605-06 (9th Cir. 1993)). But, *Figgie* examined a situation involving advertising that the Ninth Circuit repeatedly referred to as "fraudulent." 994 F.2d at 606-607. Thus, "[a] presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product." *Id.* at 605.[7] But, here, the Bureau has failed to plead with particularity. The CFPB certainly cannot argue an implied presumption of reliance as a stand-in for pleading causation.

## III. THE TSR ADVANCE FEE CLAIM (COUNT 1) FAILS AS A MATTER OF LAW

Strikingly, the Bureau does not point to a single case supporting its interpretation and use of the Advance Fee Provision. Because CROA is the operative statutory scheme governing credit repair, and CROA trumps a general regulation under a general telemarketing statute, the Bureau cannot state a claim against PMH for violations of the Advance Fee Provision.

---

[5] The Bureau argues against taking judicial notice of PMH's current Park View Credit website (Opp. at 23-24), but does not explain why judicial notice is inappropriate or, more importantly, how any of the statements support the Bureau's request for injunctive relief. PMH included its current website to emphasize that none of the alleged misrepresentations are made on PMH's operating website. The Bureau has not identified any unlawful conduct to enjoin going forward, and it has not refuted this fact.

[6] The Bureau avails itself of this "presumption of reliance," as it insists that its claims are redressable, while it simultaneously argues that Rule 9(b) does not apply. Reliance, of course, is an element of any fraud claim, which is subject to a heightened pleading standard. The CFPB cannot have it both ways.

[7] The Bureau appears to understand it must plead at least its fifth claim to this higher standard, although, as discussed, it does not achieve that goal. *See* Opp. at 3-4.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

### A. PMH Does Not Assert that CROA Implicitly Repealed the TSR and CROA Does Trump the Advance Fee Provision

Contrary to the Bureau's assertion, PMH does not argue that CROA implicitly repealed the TSR. Opp. at 15-20. The TSR's governing statute, the TCFAPA, 15 U.S.C. § 6101, *et seq.*, makes no mention of credit repair. Rather, PMH argues that a specific statute (CROA) trumps a more general one (TCFAPA) and the regulations promulgated under that general statute (TSR). Mot. at 11-14. Indeed, the "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (citation omitted). "This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand." *Id.* (finding Congress's tobacco-specific statutes recognized the FDA's "long held position" that it lacked jurisdiction to regulate tobacco products and holding that the FDA had no role for such regulation despite the agency's newly formed interpretation that it could regulate tobacco). And, "a specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it ha[s] not been expressly amended." *United States v. Estate of Romani*, 523 U.S. 517, 530-31 (1998).

The established principle that "[a] valid statute always prevails over a conflicting regulation," *Texas v. EPA*, 726 F.3d 180, 195 (D.C. Cir. 2013), is even more apt when a regulation's "meaning ha[s] not been definitively established." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 137 n.9 (2001) (citing *Estate of Romani*, 523 U.S. at 529); *see also* *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 164-65 (1976) (Stevens, J. dissenting) ("if neither the existence of, nor the reason for, the old rule is clear at the time of the later enactment, there is no special reason for questioning the legislative intent to have the later statute mean exactly what it says"). Here, the meaning and interpretation of the Advance

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Fee Provision has never been established. Indeed, and for example, the Bureau fails to articulate what a "promised result" actually is, let alone point to an instance when PMH promised even one result. *See supra*. CROA is the governing legislation in the field for credit repair and its operation trumps a vague general regulation that neither the Bureau nor existing precedent has ever defined with any precision or clarity.

**B. The Bureau's Authorities Do Not Support its Position.**

The Bureau's single, unreported case purportedly supporting the notion that CROA and the Advance Fee Provision, 16 C.F.R. § 310.4, can co-exist, provides no such support because § 310.4 is not mentioned in that case at all. Opp. at 17 (citing *Lexington Law*, 1997 WL 367409, at *6). Rather, the court found that under the TCFAPA's authority to promulgate "deceptive telemarketing acts or practices," 15 U.S.C. § 6102(2), credit repair was a logical out-growth of the enumerated example of "credit card laundering" and could be regulated under 16 C.F.R. § 310.3. *Lexington Law*, 1997 WL 367409, at *2, *6. But § 310.4 was announced under the TCFAPA's authority to proscribe rules relating to abusive telemarketing acts or practices, 15 U.S.C. § 6102(3). Thus, *Lexington Law* provides the Bureau with no support to apply 16 C.F.R. § 310.4 in this case.

Additionally, the Bureau's blanket statement that federal regulations preempt inconsistent state law is both misleading and unsupported by the single case the Bureau cites. Opp. at 23. In *Hillsborough*, the court stated that a state law "can be preempted by federal regulations, but to do so, the government has a heavy burden to show that Congress intended the federal legislation to preempt the entire field that the regulation covers." *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 714-18 (1985) (finding local county ordinances not preempted by FDA regulations). Here, the Bureau's interpretation of the Advance Fee Provision, allowing no payment of fees for at least six months, expressly conflicts with California law requiring all credit repair work be completed within six months

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

(Mot. at 17-18), and the state law is not preempted by the Advance Fee Provision regulation as it clearly does not occupy the field of credit repair. *See, e.g.*, CROA, 15 U.S.C. § 1679.

**C. The Bureau Cannot Rewrite its Complaint in its Opposition**

In response to PMH's motion to dismiss, the Bureau attempts to remedy its pleading infirmities by reimagining its Complaint. Opp. at 23. For example, the Complaint never alleges that PMH "made deceptive representations that would leave reasonable customers with the impression that it had promised a result." *See generally* Compl. Rather, the Bureau alleges only that PMH has, at times, stated it *could* or *might* do something, not that PMH promised consumers it would do something. *See Meissner v. Simpson Timber Co.*, 421 P.2d 674, 679 (Wash. 1996) (articulating the contours of a promise as "that something shall happen, or that something shall not happen, in the future"). PMH could not "implicitly" affirmatively promise to do, or not do, something in the future in the way the Bureau only now suggests in its brief. *See* Opp. at 23. Regardless, the notion of an implicit promise is nowhere in the Complaint and Plaintiff cannot rewrite its Complaint in an Opposition to a Motion to Dismiss. *E.g.*, *Petrie v. Elec. Game Card Inc.*, No SACV 10-00252 DOC (RNBx), 2011 WL 165402, at *4 n.2 (C.D. Cal. Jan. 12, 2011) ("It is axiomatic that the complaint may not be amended in briefs in opposition to a motion to dismiss.").

The Bureau's implied repeal argument is merely a red herring to distract from the lack of support for enforcing the Advance Fee Provision in this case.

**CONCLUSION**

PMH respectfully requests that the Court dismiss the Bureau's Complaint.

Dated: October 31, 2016

**VENABLE LLP**

By: /s/ Allyson B. Baker

Allyson B. Baker
Kimberly Culp Cloyd
Katherine M. Wright
Witt Chang

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900