UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

| Present: The Honorable | BEVERLY REID O'CONNELL, United States District Judge | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**      (IN CHAMBERS)

## ORDER RE DEFENDANT'S MOTION TO DISMISS [14]

### I.      INTRODUCTION

Pending before the Court is Defendant Prime Marketing Holdings, LLC's ("Defendant") Motion to Dismiss.  (*See* Dkt. No. 14 (hereinafter, "Mot.").)  After considering the papers filed in support of and in opposition the instant Motion, the Court finds this matter appropriate for resolution without oral argument of counsel.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the reasons set forth below, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

### II.     BACKGROUND

#### A.     Factual Background

Plaintiff the Consumer Financial Protection Bureau ("Plaintiff" or "CFPB") brings this action against Defendant, alleging that Defendant engages in an ongoing, unlawful credit repair business that charges unlawful advance fees and misrepresents the costs and benefits of its services. (Dkt. No. 1 (hereinafter, "Compl.") ¶ 2.)  The CFPB is an independent agency of the United States charged with enforcing federal consumer financial laws.  (Compl. ¶ 5 (citing 12 U.S.C. §§ 5491, 5563, 5564).)  Further, the CFPB has independent litigating authority, including the authority to enforce the Telemarketing Sales Rule ("TSR").  (*Id.* (citing 12 U.S.C. §§ 5564(a), (b), 6105(d).)  Defendant is a Delaware company organized in 2014 that has a place of business in Van Nuys, California.  (Compl. ¶ 6.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

According to Plaintiff, Defendant began offering credit repair services to consumers in October 2014. (Compl. ¶ 7.) Plaintiff avers that Defendant entered into an agreement with a company owned by a California attorney that was registered as a credit services organization ("CSO") with the California Department of Justice. (Compl. ¶¶ 9–10.) Under the agreement, which allowed Defendant to offer credit repair services using the CSO's name, Defendant handled marketing and performed credit repair services for consumers who contracted with the CSO. (Compl. ¶¶ 11–12.) Plaintiff claims that this agreement was terminated on or about June 29, 2015. (Compl. ¶¶ 13.)

In approximately November 2015, Defendant began doing business as Park View Credit, National Credit Advisors, and Credit Experts. (Compl. ¶¶ 14–16.) With these new companies, Defendant offered credit repair to consumers. (Compl. ¶ 17.) Defendant's customers include individuals who were attempting to obtain mortgage, loan, refinancing, or other credit lines at the time when Defendant first contacted them. (Compl. ¶ 22.) Plaintiff claims that Defendant would either contact a consumer after the consumer inquired about a loan through Defendant's website, or the consumer would reach out to Plaintiff after seeing information online about the credit repair services that Defendant offered. (Compl. ¶¶ 23–24.)

Plaintiff alleges that Defendant would request or receive payment for services such as removing derogatory information from, or to improve, consumers' credit histories, credit records, or credit ratings. (Compl. ¶ 25.) According to Plaintiff, Defendant represented that the first step in the credit repair process was to set up a consultation with the consumer, which Defendant would market as free. (Compl. ¶¶ 28–29.) However, Plaintiff claims that Defendant would typically tell consumers that they were required to pay an initial fee (that Defendant claimed was for a credit report or "lender report") before proceeding with a consultation. (Compl. ¶¶ 26–27, 30–31.) During the consultation, an analyst would review and discuss the consumer's credit report with the consumer and identifies ways in which Defendant could assist the consumer in increasing his or her credit score. (Compl. ¶ 33.) If the consumer agreed to hire Defendant, he or she was required to sign an online contract. (Compl. ¶ 34.) Plaintiff avers that Defendant would refuse to provide consumers with a copy of the contract until after the consumer had paid the initial fee. (Compl. ¶ 32.) Further, Plaintiff claims that, at times, consumers were "hurried through the signature process" by Defendant's salesperson. (Compl. ¶ 35.) Consumers who used Defendant's services were charged a monthly fee as high as $89.99 until consumers affirmatively cancelled their contracts. (Compl. ¶¶ 36–38.) In addition,

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

Plaintiff claims that, at other times, Defendant charged a separate "set-up fee" of several hundred dollars for the first two months and then charged a monthly fee in later months. (Compl. ¶ 39.) Plaintiff claims that Defendant would request and collect any fees charged before providing the consumer with a consumer report from a reporting agency demonstrating that the promised results had been achieved. (Compl. ¶ 40.)

Plaintiff also alleges that Defendant misrepresented the efficacy of its services by representing that it would remove "virtually any negative information" from an individual's credit report without having a reasonable basis for this representation. (Compl. ¶¶ 41–42, 44.) Plaintiff avers that Defendant would inform consumers that it often raised consumers' credit scores by more than 100 points, though it did not have a reasonable basis for making these claims (or for claiming that it could raise an individual's credit score by any specific amount). (Compl. ¶¶ 46, 48–49.)

According to Plaintiff, Defendant also represented that it offered a money-back guarantee, but failed to disclose the significant limitations associated with this guarantee. (Compl. ¶¶ 50–51.) For instance, Plaintiff claims that Defendant failed to explain to consumers that they would have to pay for at least six months of service before becoming eligible for the money-back guarantee. (Compl. ¶ 54.) Further, Plaintiff contends that consumers have encountered difficulty in obtaining refunds. (Compl. ¶ 55.) And finally, Plaintiff claims that Defendant has misrepresented the costs of its services by failing to disclose the monthly fees associated with their services and that consumers would be automatically charged for their services. (Compl. ¶¶ 56–59.)

### B. Procedural History

Plaintiff initiated this action in this Court on September 22, 2016. (*See* Compl.) In its Complaint, Plaintiff alleged five causes of action for various conduct arising under the TSR and the Consumer Financial Protection Act of 2010 ("CFPA"): (1) violation of the TSR, 16 C.F.R. § 310.4(a)(2), for collecting fees for credit repair prior to demonstrating the promised results have been achieved, (Compl. ¶¶ 60–62); (2) violation of the TSR, 16 C.F.R. § 310.3(a)(2)(iii), for misrepresentations about material aspects of the efficacy of its services, (Compl. ¶¶ 63–69); (3) violation of the TSR, 16 C.F.R. § 310.3(a)(1)(iii), for failure to disclose limitations on its money back guarantee, (Compl. ¶¶ 70–75); (4) violation of the TSR, 16 C.F.R. § 310.3 (a)(2)(i), for misrepresenting the costs of its services, (Compl. ¶¶ 76–80); and, (5) violations of the CFPA, 12 U.S.C. §§ 5531, 5536, for alleged deceptive acts or practices, (Compl. ¶¶ 81–88). Plaintiff requests that the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

Court grant injunctive relief and award Plaintiff equitable monetary relief along with civil penalties. (*See* Compl. ¶ 89; *see also* Compl. at 15.)

On October 7, 2016, Defendant filed the instant Motion to Dismiss, (*See* Mot.), along with a Request for Judicial Notice, (Dkt. No. 15 (hereinafter, "RJN")). Plaintiff timely filed its Opposition on October 24, 2016, (Dkt. No. 27 (hereinafter, "Opp'n")), along with its own Request for Judicial Notice, (*see* Dkt. Nos. 27-1 (hereinafter, "Pl.'s RJN")).[1] Defendant timely replied on October 31, 2016. (Dkt. No. 29 (hereinafter, "Reply").)

## II.   REQUESTS FOR JUDICIAL NOTICE

As noted above, both Plaintiff and Defendant filed Requests for Judicial Notice along with their papers. (*See* Def.'s RJN; Pl.'s RJN.) When considering a motion to dismiss, a court typically does not look beyond the complaint in order to avoid converting a motion to dismiss into a motion for summary judgment. *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). Notwithstanding this precept, a court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and, (2) matters in the public record. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1137 (C.D. Cal. 2010) (holding that a court may "consider documents that are incorporated by reference but not physically attached to the complaint if they are central to the plaintiff's claim and no party questions their authenticity"). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).

Specifically, Defendant requests that the Court take judicial notice of five documents: (1) Exhibit A, a press release from the Federal Trade Commission ("FTC") entitled "States Announce Crackdown on Scams that Bilk Customers," dated March 5, 1998; (2) Exhibit B, a minute order dated December 3, 1996, in *State of Illinois v. National Credit Management Group*, No. 1:96-cv-02073 (N.D. Ill.); (3) Exhibit C, a

---

[1] On October 25, 2016, Plaintiff's counsel Sarah Preis filed a separate declaration authenticating the document Plaintiff requested the Court judicially notice. (Dkt. No. 28.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

portion of the FTC website entitled "Complying with the Telemarketing Sales Rule," dated October 1, 2016; (4) Exhibit D, an excerpt of the CFPB Supervision and Examination Manual Version 2, dated October 2012; and, (5) Exhibit E, pages from Park View Credit's website. (*See* Def.'s RJN at 1.) Plaintiff, along with its Opposition also requests that the Court take judicial notice of an Order Denying Motion for More Definite Statement in *Consumer Financial Protection Bureau v. All American Check Cashing Inc., et al.*, No. 3:16-cv-356-WHB-JCG (S.D. Miss.). (*See* Pl.'s RJN.) In addition, Plaintiff objects to the Court taking judicial notice of Park View Credit's website. (*See* Opp'n at 24.)

Defendant argues that Exhibits A through E are matters of the public record that are properly noticeable. (Def.'s RJN at 2.) When deciding a motion to dismiss, the court "may take judicial notice of matters of public record," *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986), including "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue," *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted). However, "a court can only take judicial notice of *existence* of those matters of public record (the existence of a motion or of representations having been made therein) but not the *veracity* of the arguments and disputed facts contained therein." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004) (emphasis in original). In addition, "[a] court may not take judicial notice of one party's opinion of how a matter of public record should be interpreted."

As to Defendant's Exhibits A, C, and D, the Court may take judicial notice of publicly available information found on a government agency's website. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." (alteration and internal quotation marks omitted)); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of online information "made publicly available by government entities"). As these exhibits come from the FTC and the CFPB's website, the Court finds they are properly subject to judicial notice. Accordingly, the Court **GRANTS** Defendant's Request as to Exhibits A, C, and D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

As to Defendant's Exhibit B and Plaintiff's Exhibit, as noted above, the Court may take judicial notice of proceedings in other courts that are related to the instant proceedings. *See Robinson*, 971 F.2d at 248. It appears the filings that the parties proffer here are related to this case as they address similar issues to the instant litigation. (*See* Def.'s RJN, Ex. B; Pl.'s RJN.) Therefore, the Court **GRANTS** Defendant's Request as to Exhibit B and **GRANTS** Plaintiff's Request.

As to Defendant's Exhibit E, however, "information appearing on . . . third party websites is not a proper subject of judicial notice because it is not capable of accurate and ready determination." *Gerritsen*, 112 F. Supp. 3d at 1029. Defendant has not explained how information found on its own website is capable of accurate and ready determination, and "[t]he potential for fabrication or for inaccurate information is simply too great to be reconciled with the language of Rule 201." *Id.* at 1031 (refusing to take judicial notice of information found on the defendant's website); *see also Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012) ("[I]t is inappropriate for the Court to take judicial notice of facts on a webpage whose source and reliability are unknown."). Therefore, the Court **DENIES** Defendant's Request as to Exhibit E.

### III. LEGAL STANDARD

#### A. Rule 8(a)

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: first, the court must discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, the court shall determine "whether they plausibly give rise to entitlement to relief." *See id.* at 679; *accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). A court should consider the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Lee*, 250 F.3d at 688 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").

### B. Rule 9(b)

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. *Odom*, 486 F.3d at 553. Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *Id.* at 765.

### IV. DISCUSSION

Plaintiff alleges violations of several sections of the TSR as well as violation of the CFPA. (*See* Compl.) Specifically, Plaintiff alleges violations of the following sections of the TSR: (1) section 310.4(a)(2), which makes it unlawful for a telemarketer

Case 2:16-cv-07111-BRO-JEM Document 32 Filed 11/15/16 Page 8 of 20 Page ID #:324

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

advertising that it can improve a person's credit history to receive payment until it has provided documentation of the effect of its services at least six months after the results have been achieved, *see* 16 C.F.R. § 310.4(a)(2); (2) section 310.3(a)(2)(iii), which makes it unlawful for a telemarketer to misrepresent any material aspect of its goods or services' performance or efficacy, *see* 16 C.F.R. § 310.3(a)(2)(iii); (3) section 310.3(a)(1)(iii), which requires a telemarketer to disclose all material terms and conditions of any policy regarding refunds before a customer pays for goods or services offered, *see* 16 C.F.R. § 310.3(a)(1)(iii); and, (4) section 310.3(a)(2)(i), which makes it unlawful for a telemarketer to misrepresent the cost of its services, *see* 16 C.F.R. § 310.3(a)(2)(i). In addition, the CFPA makes it unlawful for any covered entity "to engage in any unfair, deceptive, or abusive act or practice," *see* 12 U.S.C. § 5536(a)(1)(B). "An act or practice is deceptive if: (1) there is a representation, omission, or practice that, (2) is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material." *Consumer Fin'l Protection Bur. v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016) (internal quotation marks omitted). Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted, that Plaintiff lacks standing, and that Plaintiff's claims fail as a matter of law. The Court will address each argument in turn.

### A.     Whether the Heightened Pleading Standard for Rule 9(b) Applies

As a preliminary matter, Defendant argues that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to Plaintiff's claims regarding deception because these claims sound in fraud. (*See* Mot. at 5–7.) Plaintiff argues that deception and fraud are distinct legal theories, and thus, Rule 9(b) does not apply to its deception claims. (*See* Opp'n at 6–10.)

The Ninth Circuit has held that in cases where fraud is not an element of a claim, but a plaintiff alleges that the defendant has engaged in "a unified course of fraudulent conduct," the claim "sound[s] in fraud" and therefore must meet Rule 9(b)'s heightened pleading requirements. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Further, in cases where a plaintiff does not allege a unified course of fraudulent conduct, but instead alleges "some fraudulent conduct and some non-fraudulent conduct," the allegations of fraud are subject to Rule 9(b). *See id.* at 1104. "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Id.* at 1105. Thus, Rule 9(b)'s

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

heightened pleading standard is implicated "when: (1) a complaint specifically alleges fraud as an essential element of a claim, (2) when the claim 'sounds in fraud' by alleging that the defendant engaged in fraudulent conduct . . . and (3) to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.'" *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089–90 (C.D. Cal. 2009) (citation omitted).

Plaintiff argues that courts have refused to extend Rule 9(b)'s requirements to claims brought under the CFPA. (Opp'n at 7–8.) At least one court within this district, however, has held that Rule 9(b) should apply to claims brought under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 45(a)(1), 53(b), which, much like the TSR and the CFPA, prohibits "unfair or deceptive acts or practices in or affecting commerce." *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 851 (C.D. Cal. 2010). There, the court held that Rule 9(b) applied because the FTC's claims alleged a fraudulent course of conduct where (1) the defendants "distributed promotional materials that made specific representations about the watt equivalency, lumen output, and life spans of their LED lamps," (2) these representations were false, and, (3) the defendants knew or should have known that their conduct was unfair or deceptive. *Id.* at 852–53. Though the FTC omitted the word "fraud" from its complaint, the court held that this omission did "not detract from the apparently fraudulent nature of the allegations." *Id.* at 853. In coming to its decision, the court found persuasive the "analogous," though "not identical," elements of a violation of the FTCA and negligent misrepresentation.[2] *Id.*

---

[2] A claim under the FTCA requires the plaintiff to prove (1) misrepresentations or omissions, (2) of material fact, (3) of a kind usually relied upon by reasonably prudent persons, (4) creating consumer injury, and, (5) that the individual participated in or controlled the underlying acts. *See FTC v. Swish Mktg.*, No. C 09-03814 RS, 2010 WL 653486, at *3 (N.D. Cal. Feb. 22, 2010). The elements of negligent misrepresentation are: (1) a false representation; (2) the defendant made the representation without reasonable ground for believing it to be true; (3) intent to deceive; (4) justifiable reliance; and, (5) damages. *See West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 792 (Cal. Ct. App. 2013). In *Lights of America*, the Court explained that the plaintiff's complaint explicitly alleged misrepresentation and the resulting damages and, though the complaint did "not specifically allege intent to induce reliance and justifiable reliance," it followed from the facts that these elements were also alleged. *Lights of Am.*, 760 F. Supp. 2d at 854. Moreover, as the *Lights of America* court noted, under Ninth Circuit law, "a claim does not need to include *all* of the elements of a claim for fraud or negligent misrepresentation in order for it to trigger the heightened pleading standard of Rule 9(b)." *Id.*; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that plaintiff must meet Rule 9(b) requirements when alleging fraudulent conduct pursuant to California's consumer protection

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

The crux of Plaintiff's claims here (other than its first cause of action for violation of the advance fee provision) is that Plaintiff purposefully misrepresented the efficacy of its services, its money back guarantee, and the costs of its services and that these statements were likely to mislead consumers. (*See* Compl. ¶¶ 41–59, 67, 79, 87.) There is no indication from Plaintiff's Complaint that any of these misrepresentations were accidental or the result of a mistake. (*See id.*) Thus, it appears that Plaintiff is alleging that Defendant participated in a unified course of fraudulent conduct, multiple portions of which violated the TSR.³ *See TransFresh Corp. v. Ganzerla & Assocs., Inc.*, 862 F. Supp. 2d 1009, 1017–18 (N.D. Cal. 2012) (finding claims sounded in fraud where the crux of the plaintiff's claims were that the defendant had "made numerous misleading and false representations" knowingly and intentionally); *FTC v. Ivy Capital, Inc.*, No. 2:11-CV-283 JCM (GWF), 2011 WL 2118626, at *1, *3 (D. Nev. May 25, 2011) (applying Rule 9(b) standard in claim brought under the FTCA where the FTC "alleged that the defendants collectively engaged in a unified course of fraudulent conduct, which forms the entire basis of the claims alleged"); *Davis*, 650 F. Supp. 2d at 1089–90 (applying Rule 9(b) standard to claims sounding in misrepresentation). Therefore, the

---

statutes though fraud is not a necessary element of these claims); *see FTC v. ELH Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 WL 4759267, at *1 (D. Ariz. Sept. 4, 2013) (holding that claims arising under the FTCA and the TSR sounded in fraud and had to meet Rule 9(b) where complaint alleged "that defendants engaged in deceptive acts and practices and 'operate a tangled network of telemarketing companies and telemarketing service providers' who make representations that are 'false'").

³ The Court's conclusion is further supported by the similarities between the elements of fraud and the elements of a TCPA claim. As noted above, a TCPA claim requires a plaintiff to establish (1) a misrepresentation, (2) that is likely to mislead consumers, (3) that is material. *See Gordon*, 819 F.3d at 1192. Thus, though a plaintiff is not explicitly required to plead intent or damages under the TCPA, the Court finds the elements sufficiently analogous to support the proposition that the TCPA can implicate Rule 9(b). *See Lights of Am., Inc.*, 760 F. Supp. at 853–54.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

Court finds that, in this case, Plaintiff's second, third, fourth, and fifth[4] causes of action sound in fraud and must meet the heightened pleading standards of Rule 9(b).[5]

### B.     Whether Plaintiff Sufficiently Pleads Its Claims

#### 1.     Plaintiff's First Claim

The TSR provides that it is an abusive telemarketing act or practice to request or receive "payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until" after the telemarketer "has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved." *See* 16 C.F.R. § 310.4(a)(2). Plaintiff's first claim alleges that Defendant violates the TSR when it charges the consumer initial report fees, a set-up fee, and its monthly fees before it has provided the consumer with a

---

[4] Defendant argues that Plaintiff's first cause of action sounds in fraud also because it incorporates by reference all of Plaintiff's other allegations. (*See* Reply at 3.) Plaintiff's first cause of action alleges that Defendant sought payment for its services prematurely, but does not include any allegations of misrepresentation or reliance. (*See* Compl. ¶¶ 60–62.) Thus, fraud is not implicated as this claim does not appear to incorporate *any* of the elements of fraud and includes no facts indicating that Defendant acted fraudulently. Therefore, the Court disagrees with Defendant's argument and holds that Plaintiff need only plead this cause of action in compliance with the Rule 8(a) standard.

[5] Plaintiff makes two additional arguments. First, Plaintiff argues that applying a heightened pleading standard to consumer protection claims would contravene the liberal notice pleading standard. (Opp'n at 8.) The Ninth Circuit has already made clear, however, that Rule 9(b) may apply to consumer protection claims such as California's Unfair Competition and False Advertising Laws. *See Kearns*, 567 F.3d at 1125. Thus, the Court finds Plaintiff's argument unavailing.

Plaintiff also argues that heightened pleading should not be required here because violations of the TSR do not have the "same reputational consequences as do allegations of intentional harm" and the risk of using litigation as a pretext for discovery is lower in suits brought by federal law enforcement agencies. (Opp'n at 9.) The Court finds these arguments unpersuasive as well. First, accusations of fraud are likely to have the same reputational consequences regardless of what statute provides the cause of action. Second, Rule 9(b) does not differentiate between governmental agency plaintiffs and private plaintiffs and courts within this Circuit have not found the difference dispositive. *See ELH Consulting, LLC*, 2013 WL 4759267, at *1; *Lights of Am., Inc.*, 760 F. Supp. 2d at 854; *see also FTC v. Swish Mktg.*, No. C 09-03814 RS, 2010 WL 653486, at *3.

Case 2:16-cv-07111-BRO-JEM   Document 32   Filed 11/15/16   Page 12 of 20   Page ID #:328

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

consumer report. (Compl. ¶¶ 40, 61–62.) As noted above, Plaintiff's claim need only comply with the pleading requirements of Rule 8(a).

Plaintiff has adequately pleaded its claim. Defendant raises no arguments specifically attacking the adequacy of Plaintiff's first claim, other than alleging that Plaintiff's Complaint generally "is inundated with vague terms." (*See* Mot.) However, Plaintiff has pleaded facts indicating that Defendant (1) charged consumers fees prior to an initial consultation, (2) charged set-up fees within two months of the initial consultation, and, (3) charged monthly fees thereafter, prior to providing the consumer with a consumer agency report. (*See* Compl. ¶¶ 25–40.) Accordingly, Plaintiff's Complaint is sufficient to state a claim for its first cause of action.

### 2.     Plaintiff's Second Claim

The TSR also provides that it is unlawful for a telemarketer to misrepresent "[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." *See* 16 C.F.R. § 310.3(a)(2)(iii). As noted above, Plaintiff must comply with Rule 9(b)'s pleading standards for this claim. Here, Plaintiff's allegations fall short. Plaintiff fails to identify any specific instances where Defendant made such a misrepresentation. *See Swartz*, 476 F.3d at 764 (explaining that Rule 9(b) "requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations'" (citation omitted)). Further, while Plaintiff claims in a conclusory manner that Defendant did not "have a reasonable basis" for its claims that it could raise consumers' credit score by an average of 100 points, Plaintiff fails to provide any facts indicating that Defendant's representations lacked a reasonable basis. (*See* Compl. ¶ 48.) For instance, Plaintiff provides no factual examples of instances where Defendant represented that it would raise a consumer's score but it failed to do so. Accordingly, Plaintiff's second claim is **DISMISSED without prejudice**.

### 3.     Plaintiff's Third Claim

Next, the TSR provides that a telemarketer must "disclose truthfully, in a clear and conspicuous manner" "all material terms and conditions" of any policy regarding refund or cancellation. *See* 16 C.F.R. § 310.3(a)(1)(iii). As with its second claim, Plaintiff must meet Rule 9(b)'s heightened pleading standard. In this case, Plaintiff pleads more facts than with its second claim by providing some of the policies of which Defendant failed to

Case 2:16-cv-07111-BRO-JEM   Document 32   Filed 11/15/16   Page 13 of 20   Page ID #:329

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

inform consumers. (*See* Compl. ¶¶ 51–54.) However, Plaintiff's claim is still insufficiently pleaded as it fails to provide details of any instances when Defendant failed to make these disclosures. *See Swartz*, 476 F.3d at 764. Therefore, Plaintiff's Fourth Claim is **DISMISSED without prejudice**.

### 4. Plaintiff's Fourth Claim

Further, the TSR prohibits telemarketers from misrepresenting the total cost to purchase, receive, or use the telemarketer's services. *See* 16 C.F.R. § 310.3(a)(2)(i). As with its second and third claims, Plaintiff's fourth claim must be pleaded according to Rule 9(b). Plaintiff's fourth claims suffers from the same deficiencies as its second and third claims. Plaintiff pleads in general terms that "at times" Defendant has failed to disclose its monthly fees and has falsely represented that it would not charge monthly fees immediately. (Compl. ¶¶ 57–59.) Again, however, Plaintiff fails to plead with specificity what representations were made, when these representations were made, and to whom they were made. *See Swartz*, 476 F.3d at 764. Accordingly, Plaintiff's fourth claim is **DISMISSED without prejudice**.

### 5. Plaintiff's Fifth Claim

Plaintiff's fifth claim arises under the CFPA, which, as noted above, makes it unlawful for any covered entity "to engage in any unfair, deceptive, or abusive act or practice," *see* 12 U.S.C. § 5536(a)(1)(B). Plaintiff's CFPA claim must also be pleaded in compliance with Rule 9(b). Plaintiff's CFPA claim appears to be tethered entirely to its second and fourth claims arising under the TSR, however, and alleges that Defendant committed deceptive acts by misrepresenting the efficacy of its services and the cost of its services. (*See* Compl. ¶¶ 82–88.) Just as Plaintiff's second and fourth claims fail, so too does Plaintiff's fifth claim. Therefore, Plaintiff's fifth claim is **DISMISSED without prejudice**.

### C. Whether Plaintiff Has Standing

Next, the Court will address whether Plaintiff has standing to pursue its first claim—the only surviving cause of action. Defendant argues that Plaintiff lacks standing to bring this claim because (1) Plaintiff is not a covered person within the meaning of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

CFPA, (2) Plaintiff's claims are not redressable,[6] and, (3) Plaintiff is not entitled to monetary relief. The Court finds these arguments unconvincing.

First, Defendant argues that it is not a "covered person" under the CFPA. (*See* Mot. at 7 n.3.) The Court disagrees. A covered person under the CFPA is defined as "any person that engages in offering or providing a consumer financial product or service." 12 U.S.C. § 5481(6)(A). The definition of "consumer financial product or service" includes "collecting, analyzing, maintaining, or providing consumer report information, *including information relating to the credit history of consumers*." 12 U.S.C. § 5481(15)(A)(ix) (emphasis added). As Plaintiff's Complaint alleges that Defendant is in the business of providing consumer report information about consumers' credit history, Defendant falls squarely within the definition of "covered person" as it is defined in the CFPA.

Further, Defendant claims that Plaintiff's Complaint establishes only past violations and thus, injunctive relief is inappropriate. (*See* Mot. at 8–9.) Defendant is correct that "[p]ast wrongs are not enough for the grant of an injunction." *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir. 1984). However, the Court does not interpret Plaintiff's Complaint as alleging only past conduct regarding its first cause of action. Plaintiff's Complaint does not indicate that Defendant no longer performs credit repair services; in fact, its Complaint alleges that "Defendant engages in an ongoing" credit repair business. (Compl. ¶ 2.) Thus, so long as Defendant is still in business, it appears that Defendant could again violate the TSR. *See SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) ("An inference arises from illegal past conduct that future violations may occur.").

Third, under consumer protection statutes, the Court has the power to order equitable economic relief when there is "proof of injury" caused by unlawful practices. *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1994). Defendant argues that Plaintiff has not established that there is any proof of injury in this case. (Mot. at 10.) The Court disagrees. If the advance fees Plaintiff charged prior to supplying a consumer report were unlawful, then consumers will have, by definition, suffered financial injury. Therefore, the Court finds that Plaintiff has standing to pursue its first claim.

---

[6] It appears Plaintiff raises this argument only as to Plaintiff's second through fifth claims. (*See* Mot. at 8–9.) Regardless, the Court finds this argument unpersuasive as to Plaintiff's first claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

### D. Whether Plaintiff's Advanced Fee Claim Fails as a Matter of Law

Finally, Defendant argues that Plaintiff's claim under the advance fee provision of the TSR, 16 C.F.R. § 310.4(a)(2), fails as a matter of law for several reasons: (1) the Credit Repair Organizations Act ("CROA") "trumps" the TSR; (2) Plaintiff's application of the advance fee provision does not comport with the FTC's interpretation of the rule; (3) the advance fee provision does not apply to Defendant; (4) Plaintiff's application of the advance fee provision conflicts with state law; and, (5) even if applied, Defendant does not violate the advance fee provision. (Mot. at 11–19.)

#### 1. Whether the CROA Supersedes the TSR

The CROA, enacted September 30, 1996, provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b(b). In Defendant's view, this provision conflicts with the advance fee provision of the TSR, which provides that a credit repair company cannot collect payment until the company has provided documentation of the efficacy of its services at least six months after the company's "promised results have been achieved." 16 C.F.R. § 310.4(a)(2)(ii). Defendant argues that the CROA should trump the TSR because (1) the CROA was enacted after the TSR, and, (2) a valid statute always supersedes a conflicting regulation. (Mot. at 11–12.)

There is a dearth of case law addressing the interaction between the CROA and the TSR. In fact, the only decision addressing the interplay between the CROA and the TSR identified by the parties or found by the Court is *Tennessee v. Lexington Law Firms*, No. 3:96-0344, 1997 WL 367409, at *6 (M.D. Tenn. May 14, 1997). In that case, the defendant contended that the CROA (recently enacted at the time) was specifically enacted to govern credit repair agencies, and therefore, based on the TSR's "more general wording," Congress "must not have intended credit repair services" be governed by the TSR. *Id.* The court disagreed and held that, though the CROA "undoubtedly governs" credit repair agencies, "there is no language in that statute indicating that Defendant's telemarketing activities may not simultaneously be regulated by the [TSR]." *Id.* The Court finds the court's analysis persuasive.

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

Just as the court in *Lexington Law Firms* held, the Court here finds that Defendant's argument fails at the outset, because contrary to Defendant's contention, the CROA and the TSR do not conflict. The CROA prohibits all *credit repair agencies* from charging advance fees, *see* 15 U.S.C. § 1679b(b), while the TSR prohibits all *telemarketers* who participate in credit repair services from charging advance fees until six months after the promised results have been achieved, *see* 16 C.F.R. § 310.4(a)(2); *see also* Dee Pridgen & Richard M. Alderman, Consumer Credit and the Law, § 2A:12 Credit Repair Organizations Act (Nov. 2016) ("Echoing and effectively broadening the provision in the [TSR], the CROA bans the taking of any advance fees by credit repair organizations before their services have been fully performed. The CROA, however, applies to all credit repair sales, not just those that are telemarketed, so its scope is more comprehensive than the FTC rule." (footnote omitted)). In other words, when a business is both a credit repair agency and a telemarketer, it is required to comply with both the CROA and the TSR. On the other hand, if a credit repair agency does not qualify as a telemarketer, then it need not comply with the TSR—only the CROA is applicable.

Under the CROA, even if a credit repair agency is not a telemarketer, it may not collect payment for its services until the services are completed. *See* 15 U.S.C. § 1679b(b). If that credit repair agency is also a telemarketer, however, then it may not collect services until its services are completed *and* it has provided documentation to the consumer at least six months after the services are completed evidencing the agency's efficacy. *See* 16 C.F.R. § 310.4(a)(2). Thus, the two provisions may be complied with concurrently; they do not conflict. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976) ("It is not enough to show that the two statutes produce differing results when applied to the same factual situation, for that no more than states the problem."). "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Cal. ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005, 1012–13 (9th Cir. 2000) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). Accordingly, the Court finds that Plaintiff's first claim under the advance fee provision does not fail as a matter of law on this ground.

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

### 2. Whether Plaintiff's Interpretation of the TSR Comports with the FTC's Interpretation

Defendant's next argument is that the FTC has chosen not to enforce the advance fee provision, though it is the agency charged with promulgating the TSR. (Mot. at 14–16.) However, while Defendant's argument identifies litigation from another jurisdiction where the FTC initially chose to prosecute under the advance fee provision then later voluntarily dismissed its claim, the argument fails to provide a legal basis on which this Court could dismiss Plaintiff's claim. Thus, the Court finds Defendant's argument unavailing.

### 3. Whether the Advance Fee Provision Applies to Defendant

Next, Defendant argues that the advance fee provision does not apply to companies like Defendant, because the provision "was meant to apply to 'bogus' credit repair establishments." (Mot. at 16.) Defendant points to information released by the FTC that indicates the purpose of the TSR was to curtail "bogus credit services." (*Id.*; *see also* Def.'s RJN, Ex. C at 63 ("This prohibition is directed at the deceptive marketing and sale of bogus credit repair services; it is not directed at the non-deceptive telemarketing of secured credit cards or legitimate credit monitoring services.").) In its Motion, Defendant alleges that the advance fee provision specifically targets credit repair agencies that fraudulently dispute negative credit items on a consumer's report that only temporarily benefit a consumer's credit score, (Mot. at 16); but Defendant provides no authority for the proposition that this is the *only* conduct to which the advance fee provision is intended to prevent. (*See id.*) Thus, though Defendant argues that it "does not engage" in this specific form of fraudulent conduct, (Mot. at 17), other than Defendant's self-serving argument, there is no evidence currently before the Court that the advance fee provision was not intended to prevent other forms of fraudulent conduct. In fact, the FTC literature indicates that its purpose is much broader than Defendant's suggested scope: to curtail "bogus credit services" in general. (*See* Def.s' RJN, Ex. C at 63.) Whether Defendant acts deceptively, and thus, may be considered a "bogus" credit service, is one of the disputes in this litigation. Accordingly, Defendant cannot escape liability by itself concluding that it does not participate in deceptive conduct and, therefore, the TSR does not apply to it. Accordingly, the Court finds Defendant's argument unpersuasive.

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

### 4. Whether Plaintiff's Application of the Advance Fee Provision Unlawfully Conflicts with California Law

Defendant's fourth argument is that the TSR conflicts with California law and, because consumer protection laws are not intended to preempt state law, cannot be enforced. (Mot. at 17–18.) Specifically, Plaintiff notes that the California Credit Services Act of 1984 (the "CCSA") requires a credit services company "to perform the agreed services within six months following the date the buyer signs the contract for those services." *See* Cal. Civ. Code § 1789.13(b). In Defendant's view, Plaintiff's interpretation of the advance fee provision would prevent Defendant from fully performing the contracted services within six months, as Defendant is required to wait, at minimum, six months before providing the consumer with documentation of its services' efficacy. (Mot. at 17.)

Again, however, the Court is not persuaded that the two provisions conflict. The CCSA defines a "credit services organization" as any person who (1) improves a buyer's credit record, history, or rating, (2) obtains a loan or other credit line for a buyer, or, (3) provides assistance to a buyer regarding (1) or (2). *See* Cal. Civ. Code § 1789.12(a). Simply providing a credit report does not appear to be contemplated under California law as a service provided by a credit services organization. In other words, the CCSA requires that when a consumer contracts with a credit services organization, the organization is required to complete "the services of a credit services organization"—i.e., the services that improve the consumer's credit record, history, or rating—within six months of the execution of a contract. *See* Cal. Civ. Code §§ 1789.12(a), 1789.13(b). The TSR then separately requires that at least six months following the *completion* of these services, the credit agency provide the consumer with a report evidencing the efficacy of its services. *See* 16 C.F.R. § 310.4(a)(2). But nothing in the language of the CCSA suggests that providing a credit report as evidence of the organization's effective assistance is itself a service that must be completed within six months of the execution of the contract.[7] Therefore, the two provisions do not conflict as a credit repair organization

---

[7] In practical terms, if a consumer contracts with a credit services agency on January 1, under California law, the agency has until June 30 to perform the services required to improve the consumer's credit history or score. Assuming the consumer's credit score improves on June 30, under the TSR, the credit services agency must then provide the consumer with a credit reported dated December 31 or later showing the improvement in the consumer's credit score. Providing this report, however, is not intended to have any effect on the consumer's score; rather, it is mere evidence of the credit agency's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

may comply with both by performing the services intended to improve a consumer's credit score within six months, followed by providing evidence of those services through a credit report more than six months after they have been completed. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1023 (9th Cir. 2013) (explaining that impossibility preemption is implicated only "where it is impossible for a private party to comply with both state and federal law" (citation omitted)). Accordingly, the Court will not dismiss Plaintiff's first cause of action on this ground.

### 5. Whether Defendant Violated the Advance Fee Provision

Defendant's final argument is that, even if the advance fee provision applies, it has not violated the advance fee provision. (Mot. at 18–19.) First, Defendant argues that a credit consultation is not a product or service covered by the TSR. (Mot. at 18.) The Court disagrees. The advance fee provision prohibits a telemarketer from requiring advance payment for "goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating." 16 C.F.R. § 310.4(a)(2). Plaintiff's Complaint alleges that Defendant represented that the consultation was the first step in the credit repair process; (*see* Compl. ¶ 28); thus, taking Plaintiff's allegations as true, Defendant represented that the consultation was part of the process for removing derogatory or negative information from the consumer's credit report. Therefore, consultations would be conduct covered by the TSR and requiring payment prior to conducting a consultation would be a violation of the TSR.[8]

Second, Defendant argues that Plaintiff has failed to establish that Defendant participates in "telemarketing" under the TSR because Plaintiff has not explicitly alleged that Defendant makes "interstate" telephone calls. (Mot. at 5 n.2, 18.) Under the TSR, telemarketing is any plan or program that "is conducted to induce the purchase of goods or services . . . and which involves more than one interstate telephone call." 16 C.F.R.

---

prior conduct that had an impact on the consumer's credit score. Thus, the Court finds that providing the report is not a "service" under the CCSA that must be completed within six months of the execution of the contract between the consumer and the credit services agency.

[8] These representations do not have to be pleaded in accordance with Rule 9(b), however, because as addressed above, Plaintiff's Complaint does not allege that these representations were fraudulent or that Plaintiff participated in a course of fraudulent conduct related to these representations. Rather, the relevance of the representations is only to determine whether the initial consultation falls within the scope of the TSR.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-07111-BRO (JEMx) | Date | November 15, 2016 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

§ 310.2(gg). Plaintiff's Complaint, however, alleges that Defendant operates on a nationwide basis, (Compl. ¶ 2), and initiates and receives telephone calls from its customers, (Compl. ¶ 19). Therefore, construing the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff sufficiently pleads facts indicating that Defendant's business involves interstate phone calls.

Further, Defendant argues that Plaintiff has not sufficiently included allegations regarding the "promises" that Defendant has made to consumers. (Mot. at 18–19.) The Court finds Defendant's argument unavailing. To have a viable claim under the advance fee provision, Plaintiff must allege that (1) Defendant requested or required payment, (2) for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating, (3) less than six months before the seller has provided the consumer with documentation (i.e., a credit report) indicating that it has completed the requested or promised services. *See* 16 C.F.R. § 310.4(a)(2). Plaintiff's Complaint alleges that Defendant (1) required consultation fees, set-up fees, and monthly fees, (Compl. ¶ 40), (2) before and after entering into a contract with the consumer with the intent to increase or improve the consumer's credit score, (Compl. ¶¶ 33–34, 36), (3) but before six months has passed and Defendant has provided the consumer with documentation of its services, (Compl. ¶ 40). Thus, Plaintiff has sufficiently pleaded all three elements here and the terms of the promises that Plaintiff made are immaterial to its advance fee provision claim. Therefore, the Court does not find dismissal of Plaintiff's first cause of action warranted on these grounds. Therefore, Defendant's Motion to Dismiss Plaintiff's first cause of action is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Defendant's Motion is **DENIED** as to Plaintiff's first claim. Plaintiff's second, third, fourth, and fifth causes of action are **DISMISSED without prejudice**. Plaintiff is **ORDERED** to file a First Amended Complaint, if any, no later than November 28, 2016.

**IT IS SO ORDERED.**

:

Initials of Preparer        rf