**VENABLE LLP**
Allyson B. Baker (*Pro Hac Vice*)
Katherine M. Wright (*Pro Hac Vice*)
575 7th Street, NW
Washington, DC 20004
Email: ABBaker@Venable.com
KMWright@Venable.com
Telephone: 202.344.4000
Facsimile: 202.344.8300

Kimberly Culp Cloyd (SBN 238839)
Email: kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone: 415.653.3750
Facsimile: 415.653.3755

Witt Chang (SBN 281721)
Email: wchang@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

Attorneys for Defendant Prime Marketing Holdings, LLC

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Prime Marketing Holdings, LLC, (d.b.a. Park View Credit, National Credit Advisors, and Credit Experts)<br><br>Defendant. | CASE NO.: 2:16-CV-07111-BRO (JEMx)<br><br>**PRIME MARKETING HOLDINGS, LLC'S MOTION TO DISMISS AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**<br><br>**Date:** **January 9, 2017**<br>**Time:** **1:30 p.m.**<br>**Location:** **Courtroom 7C**<br>**Officer:** **Hon. Beverly Reid O'Connell**<br><br>Action Filed: September 22, 2016<br>Trial Date: N/A |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## NOTICE OF MOTION

**TO THIS HONORABLE COURT, PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on January 9, 2017, or as soon thereafter as counsel may be heard in Courtroom 7C of the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Prime Marketing Holdings, LLC will and hereby does move this Court, pursuant to Federal Rules of Civil Procedure Rule 9(b) and 12(b)(6), to dismiss the Amended Complaint filed November 28, 2016.

Defendant Prime Marketing Holdings, LLC requests dismissal of all of the claims asserted against it in Plaintiff Consumer Financial Protection Bureau's Amended Complaint: (1) "Advance Fees in Violation of the TSR"; (2) "Misrepresentations about Material Aspects of the Efficacy of Its Services in Violation of the TSR"; (3) "Failure to Disclose Limitations on Guarantee in Violation of the TSR"; (4) "Misrepresentations Regarding the Cost of Services in Violation of the TSR"; (5) "Deceptive Acts or Practices in Violation of the CFPA."

This motion is based on the instant notice, the accompanying Memorandum of Points and Authorities and Request for Judicial Notice, the complete court file, including the records and pleadings on file in this matter, and any other oral or documentary evidence that may be presented to the Court.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which occurred telephonically on December 2, 2016.

Dated: December 9, 2016

**VENABLE LLP**

By: /s/ Kimberly Culp Cloyd
Kimberly Culp Cloyd
Allyson B. Baker (*Pro Hac Vice*)
Katie M. Wright (*Pro Hac Vice*)
Witt Chang

*Attorneys for Defendant Prime Marketing Holdings, LLC*

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ....................1

STATEMENT OF FACTS ....................2

ARGUMENT ....................5

I. THE BUREAU STILL FAILS TO SATISFY RULE 9(B) ON COUNTS 2 THROUGH 5 ....................6

II. THE BUREAU FAILS TO ADEQUATELY PLEAD DECEPTION FOR COUNTS 2 THROUGH 5, WHICH THEREFORE FAIL AS A MATTER OF LAW ....................7

A. The Bureau Fails To Show, Through Its FCRA Arguments, That PMH Has Failed To Substantiate Its Statements (Counts 2 and 5) ....................9

B. The Bureau's Allegations Relating To Alleged Advertising About "Substantial Increases" In Consumer Credit Scores Fail To State A Claim for Violation Of The TSR Or CFPA (Counts 2 and 5) ....................11

1. The Statements Themselves Are Not Deceptive ....................11

2. The Bureau's "Reasonable Basis" Allegations Do Not Save The FAC ....................13

C. The Bureau's Allegations Relating To Alleged Advertising About Removing Entries From Consumer Credit Reports Fail To State A Claim For Violation Of The TSR Or CFPA (Counts 2 And 5) ....................15

1. The Statements Are Not Deceptive ....................15

2. The Bureau's "Reasonable Basis" Allegations Do Not Save The FAC ....................16

D. The Bureau's Allegations Relating To PMH's Guarantee Fail To State A Claim For Violation Of The TSR (Count 3) ....................17

E. The Bureau's Allegations Relating To Alleged Advertising About PMH's Costs Of Service In Sales Calls And Scripts Fail To State A Claim For Violation Of The TSR Or CFPA (Counts 4 And 5) ....................18

III. THE BUREAU FAILS TO TIE ITS ALLEGATIONS TO ANY WRONGFUL CONDUCT ....................20


VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

IV. THE BUREAU LACKS STANDING TO PURSUE COUNTS 2 THROUGH 5 ....21

V. THE BUREAU'S TELEMARKETING SALES RULE ADVANCE FEE CLAIM (COUNT 1) FAILS AS A MATTER OF LAW ....23

CONCLUSION....24

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*Brady v. United of Omaha Life Ins. Co.*,
902 F. Supp. 2d 1274 (N.D. Cal. Aug. 20, 2012) .......... 21

*Caton v. Stryker Sustainability Sols., Inc.*, No. CV1405101PSGVBKX,
2015 WL 12426110 (C.D. Cal. May 12, 2015) .......... 5

*CFPB v. Frederick J. Hannah & Assocs., P.C.*, No. 1:14-CV-2211-AT,
2015 WL 10551424 (N.D. Ga. Nov. 16, 2015) .......... 8

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) .......... 12

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
911 F.2d 242 (9th Cir. 1990) .......... 5, 11

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .......... 21

*Davis v. Federal Election Commission*,
554 U.S. 724 (2008) .......... 21

*Dickman v. Verizon Comm'ns, Inc.*,
876 F. Supp. 2d 166 (E.D.N.Y. 2012) .......... 9

*Elend v. Basham*,
471 F.3d 1199 (11th Cir. 2006) .......... 21, 23

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .......... 5, 6

*F.T.C. v. ELH Consulting, LLC*, No. 12-CV-2246,
2013 WL 4759267 (D. Ariz. Sept. 4, 2013) .......... 6

*F.T.C. v. Evans Prods. Co.*,
775 F.2d 1084 (9th Cir. 1985)....................22

*F.T.C. v. John Beck Amazing Profits, LLC*,
865 F. Supp. 2d 1052 (C.D. Cal. 2012)....................8, 9

*F.T.C. v. Lights of Am., Inc.*,
760 F. Supp. 2d 848 (C.D. Cal. 2010)....................6

*F.T.C. v. Merchant Services Direct, LLC*, No. 13-CV-0279-TOR,
2013 WL 4094394 (E.D. Wash. Aug. 13, 2013)....................22

*F.T.C. v. Pantron I Corp.*,
33 F.3d (9th Cir. 1994)....................8

*Federal Election Commission v. Akins*,
524 U.S. 11 (1998)....................21

*Federal Election Commission v. Furgatch*,
869 F.2d 1256 (9th Cir. 1989)....................22

*Ileto v. Glock Inc.*,
349 F.3d 1191 (9th Cir. 2003)....................7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................21

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
518 F. Supp. 2d 1197 (C.D. Cal. Oct. 16, 2007)....................21, 22

*Odom v. Microsoft*,
486 F.3d 541 (9th Cir. 2003)....................7

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, No. 5:11-cv-1860,
2012 WL 1669726 (C.D. Cal. May 14, 2012)....................5, 21

*Robertson v. Dean Witter Reynolds, Inc.*,
749 F.2d 530 (9th Cir. 1984)....................5

*Seamans v. Temple Univ.*,
744 F.3d 853 (3rd Cir. 2014)....................9

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

*Shinde v. Nithyananda Found.*, No. EDCV 13-0363 JGB (SPx), 2013 WL 1953707 (C.D. Cal. May 10, 2013) .......... 4, 5

*Siqueiros v. USPS*, No. CV 14-8516 PA (PLAx), 2015 WL 8570782 (C.D. Cal. Oct. 5, 2015) .......... 5, 21

*Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339 (E.D. Pa. May 3, 2011) .......... 21, 23


**Statutes and Regulations**

12 U.S.C. § 5481(14) .......... 23

12 U.S.C. § 5531 .......... 8

12 U.S.C. § 5536 .......... 8

15 U.S.C. §§ 1681-1681x .......... 1, 10

15 U.S.C. § 1681a(g) .......... 10

15 U.S.C. § 1681e(b) .......... 10

15 U.S.C. §1681i .......... 10, 11

12 C.F.R. § 1022.43(a)(4) .......... 10

16 C.F.R. § 310.4(a)(2) .......... 2, 23

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 13, 16, 19, 21

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiff Consumer Financial Protection Bureau ("CFPB," "the Bureau," or "Plaintiff") initially pled legal conclusions, not facts, and the majority of the Complaint was pled in a conditional past tense. Accordingly, on November 15, 2016, this Court dismissed Counts 2 through 5 of the Bureau's September 22 Complaint because the Bureau failed to satisfy the heightened pleading standard of Rule 9(b).[1] The Court's dismissal was without prejudice and the Bureau was provided leave to re-plead.

On November 28, 2016, the Bureau filed the operative Amended Complaint ("FAC"). (Dkt. 35). In sharp contrast to its original bare-bones Complaint, the Bureau has now taken a "kitchen sink" approach whereby it throws a potpourri of statements at the Court hoping that some of them will satisfy its burden. The Bureau espouses many "facts" but fails to connect those facts to any improper conduct by PMH. Notwithstanding its increased length, the FAC still suffers from the same deficiencies as the original Complaint. Most notably, the Bureau has still failed to allege how or why the statements attributed to Prime Marketing Holdings, LLC ("PMH") are false or otherwise cannot be substantiated.

Moreover, the Bureau's new allegations referring to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, merely underscore the Bureau's failure to allege the requisite elements of deception doctrine.

The Bureau's new "facts" also demonstrate that Counts 2 through 5 are not redressable by this Court. The Bureau alleges facts, which even if taken as true,

[1] The Court also found that the Bureau had alleged enough facts to survive a Motion to Dismiss on Count 1of its September 22 Complaint. PMH has since filed a Motion for Reconsideration limited to that portion of the Court's ruling as the Bureau did not plead a required element of an Advance Fee Provision claim: namely, that PMH promised results. (*See* Dkt. 34). That Motion remains pending.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

occurred far in the past and are unconnected to PMH's current business operations.

Finally, the Bureau still fails to allege that PMH made "promised results," a required element of Count 1, which arises under 16 C.F.R. § 310.4(a)(2).

Because the Bureau still cannot state a claim under any of its five counts, the FAC should be dismissed with prejudice.

## STATEMENT OF FACTS

PMH has provided credit repair services to its customers since October 1, 2014. (FAC ¶¶ 8, 23).[2] It commenced that business following the acquisition of several other credit repair companies on September 30, 2014. (*Id.* ¶ 7). PMH operates separate businesses that each provide credit repair services.[3] (*Id.* ¶ 24). The advertising and marketing for each of these businesses is not identical. (*See e.g. id.* ¶¶ 34, 49-54). The Bureau also does not aver that the payment structures are identical.

PMH markets its services on the internet, (*id.* ¶¶ 16, 34) and provides its services to its customers by telephone. (*Id.* ¶¶ 25-27).

PMH first consults with its customers about their credit report and identifies with the consumer how, if at all, PMH can help a consumer increase his or her credit score. (*Id.* ¶¶ 49, 56, 67). PMH has charged a fee to obtain the consumer's credit report. (*Id.* ¶¶ 49-54). Some consumers obtain an initial consultation for free, although consumers do have to pay to purchase a credit report. (*Id.* ¶¶ 49, 57). Not all consumers engage PMH after the initial call. (*Id.* ¶ 57). Those

---

[2] PMH disputes the Bureau's characterization of its business and allegations, but accepts them as true for the limited purposes of this Motion.

[3] The Bureau does not distinguish between these separate businesses and confusingly lumps them together in its FAC. It is impossible to determine which business the Bureau believes made – or did not make – which statements. The Bureau's refusal to identify dates or specific words used is, as discussed below, not adequate pleading pursuant to Rule 9(b). PMH attempts to unravel the Bureau's factual allegations in this statement of facts.

consumers who hire PMH after the initial consultation sign an online contract.[4] (*Id.*)

After the initial consultation, PMH charges a monthly service fee until its customers cancel their contract. (*Id.* ¶ 59). There are sometimes set-up fees or initial fees, depending upon which business the consumer is contracting with. (*Id.* ¶ 63). On calls with its customers, PMH explains that it can help consumers increase their credit scores. (*Id.* ¶ 30).

PMH's employees do not promise specific results when they speak with consumers. Rather, they are clear that they can "help" "fix" credit (*id.* ¶¶ 67, 126, 127) and accurately state that there is "nothing that we can't dispute on your credit history." (*Id.* ¶¶ 68, 74). PMH also, accurately, stated that it can "dispute negative accounts" and "[n]aturally, anytime one or more of these items are taken off your reports your scores will increase." (*Id.* ¶ 72). PMH does not promise a specific increase, but rather reports an average credit report item deletion rate based on its experience. (*Id.*)

PMH has included "testimonials" of "actual result letters" as exemplars for prospective customers. (*Id.* ¶¶ 74, 76, 79-81, 84). PMH has not promised that any consumer will see the same results as are represented by the results achieved by other PMH customers. (*See, e.g.*, *id.* ¶ 77 ("most")). PMH does not promise any score increase for any customer, but rather explains to them what other specific customers have seen or what "average" results have been.[5] (*See id.* ¶¶ 94-99, 101-

---

[4] Notably absent from the Bureau's FAC is a copy of the agreement.

[5] The Bureau alleges two purported instances from March and May 2015 where PMH allegedly promised a consumer a specific credit score increase. (*Id.* ¶¶ 114-117). The Bureau does not allege what was said, who spoke with the consumer, or any other context about the the alleged statement. The Bureau does not allege whether or not these customers asked for and received a refund. The Bureau's other allegations that PMH's policy was to state an "average" increase is inconsistent with these allegations. Moreover, these allegations certainly do not describe PMH's current business practices.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

105, 108-110, 131). PMH has its own historical data and the data of the companies it purchased and whose businesses it began operating from which to calculate its historical average. (*Id.* ¶¶ 7-8, 111).

The Bureau alleges that in May 2015, PMH allegedly "assured" a customer that PMH could remove a four-year old bankruptcy from the consumer's credit report. (*Id.* ¶ 88). The Bureau does not allege what the actual promise was to this consumer, what PMH allegedly did or did not do to help remove the bankruptcy, and what the customer allegedly did or did not do to support PMH's efforts to remove the bankruptcy. The Bureau alleges that the bankruptcy was not removed and the consumer's credit did not change (*id.* ¶ 89), but the Bureau does not allege whether or not the customer asked for or received a refund. (*See also, e.g.*, *id.* ¶¶ 90-91).

On behalf of its customers, PMH sends letters to consumer reporting agencies disputing items on the consumers' credit report. (*Id.* ¶ 40). However, responses to those letters are typically sent directly to the consumer; PMH does not get a copy. (*Id.* ¶ 41).

PMH offers its customers a money-back guarantee if PMH does not remove "a minimum of one (1) Disputed item within one hundred and eighty days (180) of the execution of the Agreement." (*Id.* ¶ 119, 121). The guarantee goes on to explain to consumers that PMH "does not guarantee results should the customer not forward the monthly results letters" and "does not guarantee results prior to the expiration of one hundred and eighty (180) days after the execution of this Agreement." Request for Judicial Notice in Support of PMH's Motion to Dismiss the Amended Complaint ("RJN") Ex. 1[6] (National Credit Advisors Service

[6] As discussed more fully in the RJN, the Court may take judicial notice of the service agreements because the Bureau has incorporated them into the FAC by quoting and relying on select excerpts of the guarantee. "A complaint incorporates by reference documents attached to it or on which it relies." *Shinde v.*

(continued…)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Agreement) at Paragraph 9; *see also* RJN Ex. 2 (Park View Credit Service Agreement) at Paragraph 9. Moreover, PMH's written guarantee clearly provides that the "[c]lient is eligible for a refund only if [PMH] is unable to remove one (1) Disputed Item within one hundred and eighty (180) days." RJN Ex. 2 at Paragraph 9. Both in writing and on the phone, PMH explained to its customers that PMH "can't guarantee anything beyond our control." (FAC ¶ 127). The Bureau has not alleged that a single consumer entitled to a refund did not receive that refund.

**ARGUMENT**

A complaint must be dismissed as a matter of law when it (1) "lack[s] a cognizable legal theory" or (2) states "insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Although leave to amend an initial complaint is generally liberally granted, leave to amend should not be given when a pleading "could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Moreover, when a plaintiff has had an opportunity to re-plead its complaint but its allegations continue to be deficient, dismissal of the complaint with prejudice is warranted. *See, e.g.*, *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, No. 5:11-cv-1860, 2012 WL 1669726, at *12 (C.D. Cal. May 14, 2012); *Siqueiros v. USPS*, No. CV 14-8516 PA (PLAx), 2015 WL 8570782, at *5 (C.D. Cal. Oct. 5, 2015). Prejudice is the "touchstone of the inquiry" when deciding whether to grant leave to amend. *Eminence Cap., LLC v.*

(continued)

*Nithyananda Found.*, No. EDCV 13-0363 JGB (SPx), 2013 WL 1953707, at *7 (C.D. Cal. May 10, 2013); *see also* *Caton v. Stryker Sustainability Sols., Inc.*, No. CV1405101PSGVBKX, 2015 WL 12426110, at *3 (C.D. Cal. May 12, 2015) (granting request to "take judicial notice of several of the studies that Plaintiff references in, but does not attach to, the [second amended complaint]").

*Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing cases). Here, the Bureau's continued pursuit of this litigation materially prejudices PMH. After getting two bites at the apple, the Bureau should not get a third.

## I. THE BUREAU STILL FAILS TO SATISFY RULE 9(B) ON COUNTS 2 THROUGH 5

As this Court previously found, the Bureau's claims in Counts 2 through 5 "sound in fraud" and must satisfy Rule 9(b)'s heightened pleading standard. *See* Dkt. 32 at 8-10 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)); *see also F.T.C. v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 854 (C.D. Cal. 2010) ("a claim does not need to include *all* of the elements of a claim for fraud or negligent misrepresentation in order for it to trigger the heightened pleading standard of Rule 9(b)"); *F.T.C. v. ELH Consulting, LLC*, No. 12-CV-2246, 2013 WL 4759267, at *1 (D. Ariz. Sept. 4, 2013). Despite the guidance provided in the Court's prior Order, the Bureau still has not, because it cannot, adequately plead its claims under Rule 9(b).

As it did in its original Complaint, the Bureau continues to put forward non-specific, non-particular allegations that fail to meet the pleading requirements of Rule 9(b). For example, the Bureau vaguely alleges that:

- "a consumer complained" without any explanation of to whom the consumer allegedly "complained" (*see* FAC ¶¶ 88, 89, 115, 116, 139, 141, 142);
- "PMH has stated that the basis for its assertion that *its* credit repair services have resulted in" average credit score increases of 104 points; this allegation lacks any information about where or when PMH "stated" or made this "assertion" (*id.* ¶ 111);
- "According to PMH" a predecessor company measured results in a specific manner; this allegation does not aver where or when PMH made this representation (*id.* ¶ 112);

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

- "Consumers often encountered difficulty in obtaining refunds from PMH"; this allegation is without any specifics as to when these "difficulties" occurred or what the "difficulty" was or that a refund was never actually provided to the consumer (*id.* ¶ 137); and
- "some" of PMH's telemarketing scripts failed to inform consumers of a monthly fee; the only example the Bureau alleges involves one (not some) script provided to the California Department of Justice, without any accompanying allegations that the script was ever used or communicated to consumers, or anything to suggest that the script was anything more than a draft (*id.* ¶¶ 144-145).

Without the missing specific information for these and the other similarly deficient allegations (*id.* ¶¶ 64-72, 75-76, 79, 82- 107, 110-123, 126-129, 131-147, 162-165, 171-181, 184-187, 190-192, 194-206), PMH is not able to adequately defend itself against the Bureau's claims. *See Odom v. Microsoft*, 486 F.3d 541, 553 (9th Cir. 2003).

In addition, the facts the Bureau now alleges still do not establish any claim against PMH.

## II. THE BUREAU FAILS TO ADEQUATELY PLEAD DECEPTION FOR COUNTS 2 THROUGH 5, WHICH THEREFORE FAIL AS A MATTER OF LAW

At a minimum, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation omitted). Where a complaint only pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotations omitted). Pleadings that are "no more than conclusions" are "not entitled to the assumption of truth." *Id.* at 679; *see also Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) ("we do not

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations").

PMH's marketing efforts have complied with all relevant provisions of the TSR and the CFPA's UDAAP prohibitions (12 U.S.C. §§ 5531, 5536), and the Bureau's allegations of deceptive conduct are baseless and insufficient. The Bureau's TSR and CFPA deception claims must meet the elements of deception doctrine that adheres to section 5 of the FTC Act's deception standard.[7] As stated in the CFPB examination manual, "[t]he principles of 'unfair' and 'deceptive' practices in the Act are similar to those under Sec. 5 of the Federal Trade Commission Act (FTC Act)." Dkt. 15-4 (CFPB Supervision and Examination Manual Version 2 at UDAAP 1 (Oct. 2012)) at Ex. D, p. 71.[8] For example, the CFPB examination manual provides that "[a] representation, omission, act or practice is deceptive when: (1) [t]he representation, omission, act, or practice misleads or is likely to mislead the consumer; (2) [t]he consumer's interpretation of the representation, omission, act, or practice is reasonable under the circumstances; and (3) [t]he misleading representation, omission, act, or practice is material." *Id.* at p. 72; *see also* *CFPB v. Frederick J. Hannah & Assocs., P.C.*, No. 1:14-CV-2211-AT, 2015 WL 10551424 (N.D. Ga. Nov. 16, 2015) (citation omitted).

To show a representation is likely to mislead, the Bureau must show that (1) the representation was false or (2) the advertiser lacked a reasonable basis for its claims. *F.T.C. v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1067

---

[7] Under the FTC standard an act or practice is deceptive if (1) there is a representation, omission, or practice, (2) that is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material. *F.T.C. v. Pantron I Corp.*, 33 F.3d at 1096 (9th Cir. 1994).

[8] The Court has already ruled that it may take judicial notice of the CFPB Supervision and Examination Manual. (*See* Dkt. 32 at 5).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

(C.D. Cal. 2012). And "[f]or an advertiser to have had a 'reasonable basis' for a representation, it must have had some recognizable substantiation for the representation prior to making it in an advertisement." *Id.* at 1067 (quoting *F.T.C. v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 298 (D. Mass. 2008)).

In its November 15 Order, the Court identified specific instances where the Bureau failed to plead that advertising and statements attributed to PMH were, in fact, false. (Dkt. 32 at 11). That same deficiency pervades the FAC. As discussed in more detail below, the Bureau has failed to allege that PMH's marketing claims are deceptive and therefore fails to state a claim under Counts 2 through 5.

### A. The Bureau Fails To Show, Through Its FCRA Arguments, That PMH Has Failed To Substantiate Its Statements (Counts 2 and 5)

The Bureau attempts to attribute false or inaccurate statements to PMH by misstating the FCRA's requirements and prohibitions. Under the FCRA, consumer reporting agencies ("CRA"s) collect consumer credit data from "furnishers," such as banks and other businesses, and organize that material into individualized credit reports, which are used by various commercial entities to assess a particular consumer's creditworthiness. *See Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3rd Cir. 2014). The FCRA imposes a variety of obligations on both furnishers and CRAs. For example, the FCRA (§ 1681s-2(a)) imposes on furnishers a "duty to report information [to CRAs] and the ongoing duty to correct inaccurate information." *Dickman v. Verizon Comm'ns, Inc.*, 876 F. Supp. 2d 166, 172 (E.D.N.Y. 2012).

The Bureau takes issue with PMH allegedly representing its ability to get negative items removed from consumer credit reports (*see, e.g.*, FAC ¶¶ 31, 65, 66, 68, 72) and testimonials where, according to the Bureau, PMH did not allegedly make clear that the FCRA only requires consumer reporting agencies to remove items in limited circumstances. (*Id.* ¶¶ 83, 86). For example, the Bureau alleges that "PMH has misrepresented its ability to remove negative items from

consumers' credit reports by failing to make clear the limited circumstances in which such items must be removed pursuant to FCRA." (*Id.* ¶ 65).

While it is true that the FCRA only denotes certain circumstances where an item must be removed from a consumer's credit report, there is nothing in the FCRA limiting what may be removed from a consumer's report. *See generally* 15 U.S.C. §§ 1681-1681x. Indeed, the FCRA requires a CRA to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). In other words, there is nothing preventing a CRA from removing false information from a consumers' credit report due to reasons not specifically mandating removal under the statute. Moreover, a CRA is required to investigate "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency" (15 U.S.C. § 1681i(a)(1)(A)), and a consumer's "file" "means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g); *see also* 12 C.F.R. § 1022.43(a)(4) (a "furnisher" must investigate anything that relates to "[a]ny other information contained in a consumer report regarding an account or other relationship with the furnisher that bears on the consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."). It is irrelevant that PMH has not allegedly notified consumers about what items a CRA *must remove* from a consumer report; those FCRA requirements do not govern which consumer report items may be removed, only which ones must be removed.

Moreover, the Bureau also purports to allege that PMH falsely stated that it could help its customers "fix" their credit histories. (FAC ¶ 67 ) ("For example, during an initial sales call on January 19, 2016, PMH stated the following to a Bureau investigator: 'And we do the job that you need. I mean, if you have damage to your credit no matter what you may have done in the past or what was done to

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

you, we can help you fix it. It's very simple.'"); *see also id.* ¶¶ 65-66, 68). Here, too, the Bureau's allegations suggest – incorrectly – that the FCRA prevents PMH from substantiating this statement. But this is not a correct interpretation of the FCRA. Indeed, there is nothing that prevents a consumer from including a statement explaining an item on their credit report (such as, "Bills were late because I lost my job; I now have one."), which may help that consumer "fix" his or her credit. *See e.g.*, 15 U.S.C. §1681i.

The Bureau fails to plead the requisite elements of deception because its allegations that PMH failed to substantiate certain statements rely on a faulty interpretation of FCRA's requirements and prohibitions, as a matter of law. Specifically, there is no limitation on the circumstances when a CRA may remove an item from a consumer's credit report. Similarly, a CRA may add information to a consumer's credit report, including information that improves the accuracy of the consumer's credit report.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**B. The Bureau's Allegations Relating To Alleged Advertising About "Substantial Increases" In Consumer Credit Scores Fail To State A Claim for Violation Of The TSR Or CFPA (Counts 2 and 5)**

The Bureau alleges that PMH represented that its services "will result in a substantial increase to consumers' credit scores." (FAC ¶ 195). Not only do the factual allegations related to this alleged advertising fail to satisfy Rule 9(b), they also fail to state a claim for violation of either the TSR or the CFPA because the Bureau does not demonstrate that PMH's advertising was deceptive.

1. The Statements Themselves Are Not Deceptive

First, even if the Bureau had adequately pled that PMH advertised that it could help consumers "substantially increase" their credit scores, such advertising is not a violation of deception doctrine. Rather, these statements would be puffery, which are "claims [which] are either vague or highly subjective'", but not unlawful. *Cook*, 911 F.2d at 246 ("The common theme that seems to run though

cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions.") (citations omitted). Here, the "facts" that the Bureau avers are vague, and, at the most, puffery. This is true because PMH, for example, makes no specific promise about how much it will increase any particular consumer's credit score. *See also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("The statement that Coastal was 'too small' to handle Shearson's business, along with the implication or statement that First American was large enough to handle that business, was exactly the kind of 'puffery' that does not qualify as a statement of fact capable of being proved false.").

Second, even if the Bureau's allegations were well-pled under Rule 9(b), the Bureau still fails to plead the elements of deception. For example, the Bureau alleges that PMH misrepresented the average credit score increases of its customers. (*See, e.g.*, FAC ¶¶ 94, 95, 96, 98-105). But, the Bureau does not plead that these average score increases did not happen, that is that this statement is false.

The same is true about the Bureau's allegations regarding testimonials on PMH's websites. (*See, e.g., id.* ¶¶ 106-110). Nowhere does the Bureau allege that these testimonials are false, or that the customers portrayed in them did not obtain precisely the results the customers stated that they received. The Bureau's statement that the testimonials on PMH websites "have implied that such results were representative of what consumers would experience" is entirely conclusory. (*See id.* ¶ 76). The Bureau has not pled a single allegation that any consumer complained of being misled by such a testimonial or that even one PMH customer believed that a testimonial was representative of what benefits that consumer would receive from PMH's services, and there are no allegations supporting the inference that a reasonable consumer would be confused.

///

///

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

2. The Bureau's "Reasonable Basis" Allegations Do Not Save The FAC

The Bureau fails to plead its "reasonable basis" allegations with the particularity required under Rule 9(b), and they also do not survive Rule 12(b)(6).

For example, the Bureau claims that PMH lacked a reasonable basis for the following:

- allegedly claiming its services increase consumers' credit scores by an average of approximately 100 points because PMH allegedly relied upon a subset of consumers who are not representative of PMH's client population (*id.* ¶¶ 175, 198);
- allegedly claiming its services increase consumers' credit scores by an average of approximately 100 points because PMH relied upon information based on results obtained by a different company (*id.* ¶¶ 176, 199); and
- allegedly representing that it could improve consumers' scores by a certain amount because it did not have access to proprietary information about how those scores are calculated (*id.* ¶¶ 113-118, 177, 200).

First, the allegation that PMH relied upon a subset of consumers who are not representative of PMH's client population is conclusory. While the Bureau purports to identify the client population upon which it alleges PMH based its data (*id.* ¶ 112), it does not allege how or why PMH's client population materially differs.[9] Nor does the Bureau allege that PMH stated how its average credit score improvement was calculated, that it was not true at the time, or that PMH had not

[9] Moreover, as noted above, the Bureau does not identify with particularity the basis of these statements other than alleging "PMH has stated" or "[a]ccording to PMH," also failing to meet Rule 9(b)'s pleading standard.

at some other point in time obtained data to support its average success rate. In other words, the Bureau's allegations are purely conclusory. And, here, too, the FAC fails to plead a claim for deception under well-established doctrine, because the FAC does not plead why these statements are false or that PMH lacked a reasonable basis to make these statements.

Second, the Bureau does not allege why it is improper for PMH to substantiate its claims based on results from "a different company." As the Bureau pleads that "different company" was a credit repair company whose assets PMH purchased. (*Id.* ¶¶ 7, 8, 111). There is similarly no averment that could explain why the customers of the credit repair company which PMH purchased do not provide adequate data for PMH's ongoing credit repair business. Here, too, the Bureau fails to plead why PMH has no reasonable basis to make the alleged average credit score improvement statement.

Third, the FAC fails to allege that PMH was responsible for any failure to achieve an improvement in a credit score. Nevertheless, the FAC cites *two* alleged instances where a purported specific increase in a credit score was promised (*id.* ¶¶ 113-118) to two consumers. The Bureau does not allege who the consumers were, what the exact promises were, that the customers did everything they were supposed to do to help improve their credit scores, or the specific circumstances of the alleged failure to obtain an increase in a score. In short, the FAC fails to plead how PMH's alleged promise to improve credit scores of two consumers actually resulted in a failure to improve those two consumers' credit scores. Here, too, the Bureau fails to establish that PMH had no reasonable basis for making its marketing statements.

Fourth, the Bureau also fails to plead that PMH could not possibly know that its services could raise a consumer's credit score. The FAC's other averments undermine the FAC's allegation that PMH did not have a reasonable basis for making a statement about the average increase in its customers' credit scores. (*Id.*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

¶ 176). Elsewhere in the FAC, the Bureau actually pleads the basis on which PMH could make any alleged general representations about its accomplishments in this regard. Specifically, the FAC alleges that PMH has been in the industry for two years (*id.* ¶¶ 6, 23), and has the records of "several credit repair companies." (*Id.* ¶ 7). In other words, PMH has historical data upon which to make a representation about credit score improvement average, and the Bureau does not allege that the average was false. Here, too, the Bureau cannot plead the elements of a deception claim.

Fifth, the allegations regarding representations on PMH's websites suffer from the same problem. (*See id.* ¶¶ 153-161). Again the Bureau fails to allege that these statements are false—something the Court has already required the Bureau to show. (Dkt. 32 at 12, 13). And, significantly, here, too, these allegations rely on an incorrect interpretation of the FCRA's strictures. *See supra* Section II.A.

In other words, the Bureau pleads that PMH did not have a "reasonable basis" for making certain statements, without pleading why PMH allegedly had no basis for making the alleged statements. The Bureau has not adequately alleged that PMH misrepresented its ability to help customers increase their credit scores, and therefore fails to state a claim under Counts 2 or 5 on this basis. (FAC ¶¶ 171-172, 174-177, 180, 194-195, 198-200).

### C. The Bureau's Allegations Relating To Alleged Advertising About Removing Entries From Consumer Credit Reports Fail To State A Claim For Violation Of The TSR Or CFPA (Counts 2 And 5)

The Bureau alleges that PMH misrepresented that it can "remove negative items." (*Id.* ¶ 180). But this allegation meets neither Rule 9(b),'s pleading standards, nor states a claim for deception under the TSR or the CFPA.

#### 1. The Statements Are Not Deceptive

For example, the Bureau alleges that PMH states: there is "nothing we can't dispute on your credit history." (*Id.* ¶ 68). Yet, nowhere does the Bureau allege

how or why this statement, and the others like it, are false. As discussed above, PMH, can dispute any item on a consumer's credit history. The Bureau also fails to plead what the purported actual average credit report item deletion rate was for PMH, or how or why that average was not 73%, as allegedly claimed, on or about November 2, 2015. (*Id.* ¶ 72).

The Bureau points to two alleged incidents[10] with consumers (*id.* ¶¶ 87-91) where items were allegedly not removed. The Bureau does not, however, allege that either consumer did what they were supposed to do to get the items removed or to help increase their credit score. The Bureau also does not even allege that either consumer was deceived by anything said or done by PMH, but rather vaguely alleges that they were apparently unsatisfied with the service.

The Bureau also, pleads that PMH allegedly advertised: "We have successfully deleted every type of negative item throughout our years of service." (*Id.* ¶ 74). Here, too, the Bureau does not aver, as it must, what "every type of negative item" is or that PMH has not actually caused the deletion of those negative items. (*Id.*) And, once again, this allegation (and those like it) also rely on an incorrect interpretation of the FCRA. As explained *supra*, nothing in the FCRA prohibits PMH from challenging any information and nothing prohibits a credit bureau from removing a negative line.

2. The Bureau's "Reasonable Basis" Allegations Do Not Save The FAC

Again, the Bureau fails to plead its "reasonable basis" allegations with the particularity required under Rule 9(b) and they do not survive Rule 12(b)(6).

This time, the Bureau claims that PMH lacked a reasonable basis for the

[10] The Bureau does not allege the particulars of these incidents pursuant to Rule 9(b).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

following:

- allegedly representing it could remove negative items when PMH had no information indicating the items were inaccurate or obsolete per the FCRA (*id.* ¶¶ 178, 201); and
- allegedly representing it could remove negative items without "appropriate qualification" because only inaccurate, incomplete, or unverifiable information must be removed from a consumers' credit report per the FCRA. (*Id.* ¶¶ 179, 202).

But, as discussed above, the Bureau's reliance on the FCRA is a red herring. *See supra* Section II.A. Just because the FCRA does not require a CRA to remove an item from a consumer report does not mean that a CRA cannot remove that item. And as noted above, the FAC pleads that PMH has a reasonable basis—given its possession of historical data—upon which to make a representation about the negative credit report items it has historically removed from consumer reports. (*Id.* ¶¶ 6-7, 23).

The Bureau has not alleged that PMH misrepresented its ability to remove items from consumer credit reports, and therefore fails to state a claim under Counts 2 or 5 on this basis. (*Id.* ¶¶ 178-180, 196, 201-203).

**D. The Bureau's Allegations Relating To PMH's Guarantee Fail To State A Claim For Violation Of The TSR (Count 3)**

PMH's money back guarantee is not deceptive. The Bureau alleges that PMH "has represented that it offers a money-back guarantee" (FAC ¶ 184), which is true. The specific terms of the guarantee are prominent on PMH's website (*id.*) and, as the Bureau alleges, also restated in PMH's contracts. (*Id.* ¶ 121). The Bureau alleges that PMH has not conspicuously disclosed that its guarantee "only applies after the consumer has paid for six months of services." (*Id.* ¶ 123). But that allegation is contradicted by other allegations in the FAC that quote PMH representatives providing the very information the Bureau alleges is not disclosed.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

(*See, e.g.*, *id.* ¶ 131). It is also negated by the actual service agreements (which the Court may take judicial notice of) that customers have executed before proceeding to work with PMH. *See* RJN Exs. 1 and 2 at Paragraph 9.

In addition, the FAC also alleges that a script submitted to the California Department of Justice that states "[w]e are the only credit repair company that offers a full money back guarantee." (*Id.* ¶ 128). The Bureau does not allege that this statement is false nor does the Bureau identify any other credit repair company that offers a money back guarantee. It also does not allege that the script was anything more than a draft or that its contents were ever communicated to consumers.

Here, too, the Bureau has not alleged that the PMH misrepresented the fact of its guarantee or how it operates. The Bureau therefore fails to state a claim under Count 3.

**E. The Bureau's Allegations Relating To Alleged Advertising About PMH's Costs Of Service In Sales Calls And Scripts Fail To State A Claim For Violation Of The TSR Or CFPA (Counts 4 And 5)**

PMH does not misrepresent or make material omissions regarding the costs of its services. First, as mentioned above, while the Bureau claims that "some" telemarketing scripts failed to inform customers of monthly fees for its services, the only example of this "failure" is in a script provided to a state agency. (FAC ¶¶ 144-145). The FAC, however, never alleges that PMH actually used this script, as opposed to it being a draft script, for example. It follows that there can be no inference that a consumer, let alone a reasonable consumer, could be misled by alleged representations or omissions made in such a script, as there is no allegation that PMH ever used this script, even once.

Second, the Bureau identified two consumers who were allegedly misled as

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

to the costs of PMH's services on sales calls. (*Id.* ¶¶ 139-143).[11] The Bureau, however, fails to plead that these consumers were reasonable consumers within the meaning of established deception doctrine. In other words, the fact of two consumers complained does not—as a matter of law—meet the elements of deception. At the very minimum, there must be an accompanying allegation that these consumers are reasonable consumers who were or were likely to be misled about the costs of PMH's services. Moreover, the FAC also pleads that all PMH customers enter into a service contract with the PMH. (*See, e.g.*, *Id.* ¶¶ 14, 57, 61). Those contracts lay out in detail PMH's billing process. *See* RJN Exs. 1 and 2 at Exhibit A. Thus, all of PMH's customers are (and were) provided, in writing, with a detailed explanation of how PMH charges its customers for its services. These customer service agreements coupled with the Bureau's failure to plead that the two consumer complaints reflect the understanding of a reasonable consumer means that here, too, the elements of deception have not been pled.

The Bureau has not adequately alleged that PMH misrepresented the costs of its service, and therefore fails to state a claim under Counts 4 and 5. (FAC ¶¶ 190-191, 204-205).

In sum, the Bureau consistently fails to plead how or why PMH's alleged representations to its customers were false or that PMH lacked a reasonable basis for them. The FAC thus fails to meet Rule 9(b)'s pleading standards. (*See* Dkt. 32 at 7, 12-13). It also means that Counts 2 through 5, under Rule 12(b)(6), fail to state a claim upon which relief can be granted.

---

[11] These allegations also do not meet the standards of Rule 9(b) because, for example, the Bureau has not alleged what advertising either consumer saw, what their respective contracts said, which PMH employee the customers each allegedly spoke to, who the consumers allegedly complained to, whether the consumers received a refund, what PMH said in response (if even the consumer complained to PMH), etc.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## III. THE BUREAU FAILS TO TIE ITS ALLEGATIONS TO ANY WRONGFUL CONDUCT

The depth of the Bureau's pleading deficiencies are even more apparent in instances where, after stating that PMH made alleged statements, the Bureau fails to connect those statements to any misrepresentation or deceptive conduct.

For example, the Bureau points to one testimonial, apparently because the Bureau alleges that it was false, as PMH "did not indicate any of the items on [the customer's] credit report were inaccurate or obsolete." (FAC ¶ 82; *see also id.* ¶ 85). But the Bureau fails to allege that the items on this customer's credit report were, in fact, inaccurate or obsolete. (*See id.* ¶¶ 79-82). Likewise, the Bureau's reliance on the FCRA provides it no help because the FCRA does not prohibit PMH from challenging certain information, and nothing prohibits a CRA from removing a trade line in circumstances beyond those where the FCRA requires removal.

In another example, in paragraphs 90 and 91 of the FAC, the Bureau avers that a customer was told that PMH could get rid of medical collections on her credit report. (*Id.* ¶ 91). The customer then allegedly complained that her credit score decreased (*id.* ¶ 92) after she worked with PMH, but there is no allegation that PMH told that customer that its services would cause her credit score to increase. (*See id.* ¶ 91). The FAC pleads no facts about what PMH told the customer about what results she might expect. The FAC likewise fails to plead that the consumer did not have additional negative items added to her credit report to cause her score to go down. Moreover, the Bureau never alleges that PMH did not get the medical collection item removed from her consumer report as it allegedly said it would. Indeed, in many instances, the FAC does little more than recite PMH's statements without ever connecting those statements or the fact of those statements to the elements of a deception claim.

For this reason, as well, the Bureau is unable to adequately plead Counts 2

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

through 5; the facts that might support these Counts do not exist.

For all of these reasons, and those discussed *supra* in Section II A-E, the Bureau has failed to connect any alleged deception to consumer activity. Because Plaintiff is still unable to meet the heightened pleading standard of Rule 9(b) as to Counts 2 through 5 and because what it has pled fails to state a claim under Rule 12(b)(6), the Court should grant this Motion to Dismiss with prejudice and without the opportunity to re-plead (again). *Prime Partners*, 2012 WL 1669726, at *12; *Siqueiros*, 2015 WL 8570782, at *5.

## IV. THE BUREAU LACKS STANDING TO PURSUE COUNTS 2 THROUGH 5

"Article III, of course, limits Congress' grant of judicial power to 'cases' or 'controversies.'" *Federal Election Commission v. Akins*, 524 U.S. 11, 20 (1998). The Bureau must demonstrate standing for each claim and for each form of relief sought. *Davis v. Federal Election Commission*, 554 U.S. 724, 734 (2008); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). To establish standing, Plaintiff must demonstrate (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Even with the new allegations, the Bureau's Counts 2-5 are not redressable.

"It is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible." *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006); *see also* *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1285 (N.D. Cal. Aug. 20, 2012) (dismissing claim for injunctive relief that was too broad); *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 353 (E.D. Pa. May 3, 2011) (noting that courts "routinely decline to grant" "obey the law" injunctions, summarizing cases, and on that basis finding plaintiff lacked standing); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. Oct. 16, 2007) (noting that "'blanket injunctions to obey the law are disfavored'").

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

"Irreparable harm cannot be established solely on the fact of past infringement." *Metro-Goldwyn-Mayer Studios*, 518 F. Supp. 2d at 1214; *see also F.T.C. v. Merchant Services Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394, at *1 (E.D. Wash. Aug. 13, 2013) ("a court must independently assess whether violations are imminent"). In the Ninth Circuit, in cases "involving statutes which give the courts the discretion to issue injunctions on the basis of past violations, the federal courts have consistently held that the party moving for the injunction must show that there is a 'likelihood' of future violations." *Federal Election Commission v. Furgatch*, 869 F.2d 1256, 1261 (9th Cir. 1989); *F.T.C. v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) ("As a general rule, '[p]ast wrongs are not enough for the grant of an injunction[.]'").

Here, the Bureau fails to even meet the "likelihood" standard as it does not allege a present and continuing course of conduct for Counts 2 through 5 that are redressable by injunctive relief. Rather, the Bureau only alleges acts in the past tense as to these claims. (*See*, *e.g.*, FAC ¶¶ 20, 23-27, 29-32, 34-35, 38-41, 47-55, 57-60, 62-66, 72-108, 111, 114-119, 124-132, 138-165, 171-172, 174, 176-180, 184-186, 190, 194-204). The Bureau also points to iterations of PMH's websites to provide "examples" of problematic marketing. (*See id.* at ¶¶ 146-161). But these websites are primarily from October 2015, more than a year ago, or even earlier. (*See id.* ¶¶ 73, 77, 147). There is no allegation that any of the alleged misrepresentations are likely to occur in the future, or that the alleged misrepresentations are contained in current versions of PMH's websites or marketing materials. *See Furgatch*, 869 F.2d at 1261. Despite, this shortcoming, Plaintiff requests that the Court grant "injunctive relief" as the Court deems just and proper. (FAC at 39:6-7). Because Plaintiff does not allege that the allegedly unlawful conduct continues to occur or likely will recur, Plaintiff has also failed to establish that any challenged conduct is redressable by injunctive relief. *See Evans*, 775 F.2d at 1087.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Moreover, the Bureau's prayer for relief is inadequate because it amounts to no more than an impermissible "obey the law" injunction. *See* *Elend*, 471 F.3d at 1209; *Sixth Angel Shepherd Rescue Inc.*, 790 F. Supp. 2d at 353 ("obey the law" injunctions are inappropriate). Plaintiff asks the Court to "[p]ermanently enjoin Defendant from committing further violations of the CFPA and the TSR and other provisions of federal consumer financial law as defined by 12 U.S.C. § 5481(14)." (FAC at 39:3-5). The problem with this request, as discussed more fully *supra*, is that the Bureau's FAC fails to state what is unlawful and fails to allege that the unspecified conduct is continuing. Rather, the Bureau espouses unparticular allegations of past conduct. Without allegations that any specific conduct will occur in the future that could be redressed by the proposed vague injunction, Plaintiff lacks standing to pursue injunctive relief on these claims.[12] *Elend*, 471 F.3d at 1210 ("At a bare minimum, standing requires that a plaintiff provide a concrete frame of reference for evaluating an alleged future harm."); *id*. at 1211-12 ("When a case involving prospective relief provides a court with no factual assurance that future injury is likely and no clues about its contours should such an injury arise, . . . [s]uch a claim is not fit for adjudication by this Court.").

The Court should therefore find that injunctive relief is not available to the Bureau on Counts 2 through 5.

## V. THE BUREAU'S TELEMARKETING SALES RULE ADVANCE FEE CLAIM (COUNT 1) FAILS AS A MATTER OF LAW

In its November 15 Order, the Court found that the Bureau had adequately pled its Advance Fee Provision claim pursuant to 16 C.F.R. § 310.4(a)(2). (Dkt. 32 at 12, 20). However, in that Order, the Court conflated "results" with

[12] Moreover, "requests that a court grant any 'relief it deems just' are not sufficient to show redressability." *Sixth Angel*, 790 F. Supp. 2d at 353. Plaintiff's catchall provision to this effect (FAC at 39:6-7) does not cure the lack of standing.

"promises" and did not require the Bureau to plead a necessary element of the claim: that PMH made "promised results." Accordingly, on November 23, 2016, PMH filed a Motion for Reconsideration on this issue. (*See* Dkt. 34). PMH hereby incorporates its arguments regarding the Advance Fee Provision put forth in its Motion for Reconsideration, and corresponding relevant arguments from its opening Motion to Dismiss. (*See* Dkts. 14, 29, 34).

In its FAC, the Bureau still does not plead that PMH promised results. Therefore, should the Court grant PMH's Motion for Reconsideration, the Court should also dismiss Count 1 of the Bureau's FAC.

## CONCLUSION

As stated in its original Motion to Dismiss, the Bureau's lawsuit is, in no uncertain terms, designed to put a lawful company, and by extension a lawful industry, out of business. Even after this Court permitted Plaintiff to re-plead its allegations, and despite investigating PMH for over two years, the Bureau has still failed to satisfy the Rule 9(b) particularity standard or to adequately plead deception. As a result of the Bureau's overreaching, PMH has had to furlough the majority of its employees during the holiday season, which may unfortunately lead to permanent layoffs. The Bureau should not be given a third attempt to perfect its claims and further prejudice PMH. The Court should dismiss all of Plaintiff's claims with prejudice.

Dated: December 9, 2016

**VENABLE LLP**

By: /s/ Kimberly Culp Cloyd
Kimberly Culp Cloyd
Allyson B. Baker (*Pro Hac Vice*)
Katie M. Wright (*Pro Hac Vice*)
Witt Chang

*Attorneys for Defendant Prime Marketing Holdings, LLC*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900