SARAH PREIS, (PHV)
(Email: sarah.preis@cfpb.gov)
(Phone: 202-435-9318)
PATRICK GUSHUE, (PHV)
(Email: patrick.gushue@cfpb.gov)
(Phone: 202-435-9671)
BENJAMIN CLARK, (PHV)
(Email: benjamin.clark@cfpb.gov)
(Phone: 202-435-7871)
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7329

KENT KAWAKAMI, CA Bar # 149803 – Local Counsel
(Email: Kent.Kawakami@usdoj.gov)
(Phone: 213-894-4858)
United States Attorney's Office
Central District of California - Civil Division
300 North Los Angeles Street, Room 7516
Los Angeles, CA 90012
Fax: (213) 894-2380

Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Prime Marketing Holdings, L.L.C.,<br><br>Defendant. | Case No. 2:16-cv-07111-BRO (JEM)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION** |

The Consumer Financial Protection Bureau ("Bureau") brought this action against the Defendant, Prime Marketing Holdings, L.L.C. ("PMH"), on September 22, 2016, alleging violations of law in connection with PMH's offer and sale of credit repair services. On November 15, 2016, the Court granted in part and denied in part PMH's motion to dismiss the Bureau's Complaint. Ord. Re PMH Mot. Dismiss ("Ord."), ECF No. 32. The Court denied PMH's motion with respect to the Bureau's claim that PMH charges unlawful advance fees (Count One). *Id*. at 11-12, 15-20.

The Court ordered the Bureau to file an amended complaint by November 28, 2016. However, on November 23, PMH filed the instant motion for reconsideration challenging the Court's correct decision on the Bureau's claim brought pursuant to the TSR's advance fee ban. ECF No. 34 ("Mot."). On November 28, the Bureau filed its amended complaint. ECF No. 35 ("FAC").

PMH's Motion for Reconsideration should be denied because it became moot when the Bureau filed its Amended Complaint, and in any case, the motion is without merit, because the Court considered the material facts in rejecting PMH's arguments and correctly decided that Count One was adequately pleaded.

## ARGUMENT

### I. The Bureau's Amended Complaint Rendered PMH's Motion for Reconsideration Moot.

Because PMH's motion for reconsideration pertains to the Bureau's original complaint rather than the operative amended complaint, it is moot. *See Wagner v. Choice Home Lending*, 266 F.R.D. 354, 360 (D. Ariz. 2009) (denying as moot motion for reconsideration of order pertaining to original complaint where plaintiff had since filed an amended complaint). The Bureau's Amended Complaint is the operative complaint and therefore the only complaint that is currently relevant to this matter. When filed, it replaced and superseded the original complaint, which "no longer performs any function" and must be "treated . . . as non-existent." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (acknowledging the "well-established doctrine that an amended pleading supersedes the original pleading") (citations omitted). Because PMH's motion for reconsideration challenges the Court's analysis with respect to the first count of the original, non-operative complaint (Mot. 1, 3), it is therefore moot. *See Wagner*, 266 F.R.D. at 360.

### II. Reconsideration is Not Warranted Pursuant to Local Rule 7-18.

Local Rule 7-18 provides that a motion for reconsideration may be made *only* where there is "(c) a manifest showing of a failure to consider material facts presented to the Court before such decision." C.D. Cal. L.R. 7-18. Although PMH

claims that its motion is made pursuant to L.R. 7-18(c),[1] it does not identify any facts that the Court purportedly failed to consider.

Rather, PMH argues that "the Court's decision that the Advance Fee Provision does not require a plaintiff to plead a 'promised result' is 'clearly erroneous.'" Mot. 1. "Clear error" is not a basis for reconsidering an order pursuant to Local Rule 7-18. *See In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031, 1040 (C.D. Cal. 2015) (explaining that clear error is not a ground for reconsideration under Local Rule 7-18); *Ketab Corp. v. Mesriani Law Grp.*, No. 2:14-cv-7241-RSWL (MRW), 2015 WL 2084469, *2 (C.D. Cal. May 5, 2015) (same).[2]

Furthermore, the Local Rules expressly provide, "No motion for reconsideration shall in any manner repeat any oral or written argument made in

---

[1] PMH does not claim that either L.R. 7-18(a) or (b) applies.

[2] PMH cites to *Chase v. Valenzuela*, No. CV 15-9558 BRO (FFM), 2016 WL 1714878 (C.D. Cal. Mar. 11, 2015) to suggest that legal error is a basis for reconsideration under Local Rule 7-18. This is incorrect. The court in *Chase* considered a motion brought pursuant to Federal Rules of Civil Procedure 59 and 60 following entry of judgment dismissing a case. It did not consider a motion for reconsideration of an interlocutory order as contemplated under Local Rule 7-18. *Id.* at *1; *see also Dairy Employees Union Local No. 17 v. Ferreira Dairy*, No. 5:14-cv-01295-RSWL-MAN, 2015 WL 1952308, at *1 (C.D. Cal. April 28, 2015) (explaining that while Rules 59 and 60 permit reconsideration of final judgments, Local Rule 7-18 allows reconsideration "of the decision on any motion" on three specific grounds); *Tipton v. Zimmer*, Case No. CV 15-04171-BRO (JCX), 2016 WL 4154144, *2 (C.D. Cal. July 26, 2016) (recognizing that Local Rule 7-18 limits the grounds for reconsideration).

support of or in opposition to the original motion." C.D. Cal. L.R. 7-18. However, PMH does exactly that, attempting to recycle legal arguments it already made unsuccessfully. *Compare* Mot. 2-3 (arguing the advance fee provision does not apply because PMH does not promise results) *with* Mot. to Dismiss 18 (same) (ECF No. 14), and Reply to Mot. to Dismiss 2, 11 (same) (ECF No. 29). The Court explicitly considered and rejected PMH's legal arguments. Ord. 20. Therefore, for this reason alone, PMH's motion should be denied.

## III. Count One of the Complaint is Adequately Pleaded.

In denying PMH's motion to dismiss Count One, the Court correctly concluded that the Bureau stated a violation of 16 C.F.R. § 310.4(a)(2), the TSR's advance fee ban. Ord. 11-12, 15-20. PMH again argues it does not actually *promise* its services will work, and that it is therefore exempt from the TSR. Mot. 3. PMH's argument is both legally incorrect and ignores the Bureau's actual allegations, which reflect that PMH made numerous express and implied representations regarding the results of its services.[3]

[3] The original complaint similarly alleged that PMH made express representations (Compl. ¶¶ 43, 47) (ECF No. 1) and implied representations (*id.* ¶¶ 20, 25, 28, 42, 46, 53) regarding the results of its services. The Court therefore appropriately concluded that Count One of the original complaint stated a claim upon which relief can be granted. *See* Ord. 11-12, 15-20.

### A. The Advance Fee Ban Applies to All Telemarketers Who Offer Credit Repair Services.

PMH's argument that credit repair companies that do not expressly promise that their services will work are exempt from the TSR, Mot. 3, is contrary to the text and purpose of the Rule. The TSR prohibits, *inter alia*, "[r]equesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until . . . [t]he seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved." 16 C.F.R. § 310.4(a)(2). The "promised results" in § 310.4(a)(2)(ii) are the "representations" described in § 310.4(a)(2). In other words, by making a representation that it can remove derogatory information or improve a credit score, a company has promised results within the meaning of § 310.4(a)(2). Therefore, if a company represents—either expressly or implicitly—that it will remove negative items or improve credit scores, it cannot request or receive fees until it has demonstrated with a credit report that it has removed the items or improved the score. *Id*.

This structure reflects the FTC's concern about telemarketers representing that they will improve a consumer's credit record by removing negative information from that record, charging advance fees, and then failing to actually

repair the consumer's credit. *See* Telemarketing Sales Rule, Statement of Basis and Purpose, 60 Fed. Reg. 43842-01, 43853-54 (Aug. 23, 1995). The TSR therefore ensures that telemarketers who provide services represented to remove negative information or improve consumer's credit history, record or rating, actually provide those results before charging money for such services.

A company—like PMH—that represents itself as providing credit repair services is, based on the plain meaning of the term "repair," therefore representing that it will remove negative items from credit reports or improve credit scores. As such, it is covered by § 310.4(a)(2),[4] and violates the TSR if it requests or receives payment for services before providing a credit report[5] that demonstrates that it has, in fact, repaired the credit.

The Amended Complaint alleges that PMH engages in telemarketing and markets itself as a credit repair service. *See, e.g.*, FAC ¶¶ 128, 130. The Amended Complaint also alleges that PMH requested or received payment for its services before it provided the required credit reports. *See, e.g.*, *id*. ¶¶ 48-53, 59-63. As this Court recognized, nothing more is required to state a claim under Rule 8(a). Ord. 20.

---

[4] Assuming *arguendo* the other requirements of the TSR are met.

[5] The credit report also must comply with the TSR's other requirements.

### B. PMH Promises Results by Providing Services Represented to Improve Consumers' Credit.

Furthermore, PMH's unsupported statement that it does not promise results, Mot. 3, is contradicted by the detailed allegations in the Amended Complaint regarding its explicit and implicit representations to consumers. The Amended Complaint alleges that PMH's contracts typically guarantee the removal of "a minimum of one (1) Disputed item within one hundred and eighty days (180) of the execution of this agreement." FAC ¶ 121. The Amended Complaint also alleges that PMH has stated, "If we don't raise your credit score, you don't pay. Period." *Id*. ¶ 130. Similarly, the Bureau has alleged that PMH promised specific results to individual consumers, including that it would increase their credit scores and remove negative items from their credit reports. *See, e.g.* FAC ¶¶ 88 (promised to remove bankruptcy), 90 (promised to remove medical debt), 114 (promised to increase credit score to 640), 116 (promised to increase credit score to over 600 points). Each of these is a representation to improve a consumer's credit within the meaning of § 310.4(a)(2).

Moreover, as alleged by the Bureau, PMH also implicitly represented to consumers that it would remove derogatory information or improve their credit. *See, e.g.*, FAC ¶¶ 146-61. For example, PMH made unqualified representations about its ability to remove negative items (*see, e.g.*, *id*. ¶¶ 67-68, 71-74);

represented that it has improved credit scores by more than 100 points on average (*see, e.g.*, FAC. ¶¶ 96-99, 100-105, 108-110); and included testimonials and descriptions of individual results (*see, e.g.*, *id*. ¶¶ 77-81, 84, 108, 110). Such general, unqualified statements about PMH's ability, and alleged past successes, at removing derogatory information or improving credit scores are implicit representations that PMH's services will improve the consumers' own credit scores.[6] And they are representations within the meaning of § 310.4(a)(2).

PMH's claim that only express representations of specific results for a given customer are covered by § 310.4(a)(2) is unavailing.[7] Courts have long recognized in analogous contexts that companies may not make implicit representations and then hide behind claims that they did not expressly promise to do anything. For example, in *FTC v. Johnson*, the court considered whether various websites offering information about government grants for personal expenses were deceptive. 96 F. Supp. 3d 1110, 1116 (D. Nev. 2015). The court rejected the defendants' argument that their sites did not create the impression that consumers were likely to receive grant money because they emphasized that consumers "may"

[6] The Amended Complaint also alleges that these statements are deceptive. *E.g.*, FAC ¶¶ 82-83, 85-86, 92, 111-112, 118. However regardless of whether they are deceptive, they are representations that PMH will remove derogatory information or improve credit.

[7] Even if that were true, the guarantee in PMH's contracts (FAC ¶ 121) and the specific representations to individual consumers (*e.g.*, *id*. ¶¶ 88, 90, 114, 116) are precisely the sort of "promised results" that PMH insists are required elements of an advance fee claim.

qualify. *Id*. at 1135. The court explained that "the occasional presence of words like 'may' does nothing to dull the impact of these claims because the sites present little to no barriers between the consumer and government grant money. The impression is clear; if the consumer purchases the product, they will receive this money." *Johnson*, 96 F. Supp. 3d at 1135; *see also* *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 604 (9th Cir. 1993) (rejecting attempt to distinguish implied claims from express claims, reasoning that there was no support for "protect[ing] those from liability who merely imply their deceptive claim; there is no such loophole."); *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989) (rejecting defendant's argument that it never claimed its machine would produce permanent hair removal for all people all of the time and reasoning, "[I]t is irrelevant that petitioners never claimed 100% efficacy; the common-sense reading of the ads is that the machine will permanently remove hair for most people most of the time."); *FTC v. Am. Tax Relief LLC*, 751 F. Supp. 2d 972, 980 (N.D. Ill. 2010) (explaining that "even if [defendant] never explicitly guaranteed that it could obtain [tax relief] for its clients . . . that was certainly the impression created by the sales team").

The TSR requires companies to demonstrate to consumers that they have produced results that match their representations regarding the removal of derogatory information or the improvement of a credit score before they request or receive payment for their services. 16 C.F.R. § 310.4(a)(2). As alleged in the

Amended Complaint, PMH has represented its services as removing derogatory information or improving credit scores, but has requested and received payment before providing credit reports demonstrating the results as required by the TSR. Therefore, the Amended Complaint (as well as the original Complaint) sufficiently pleads that PMH violated the TSR. PMH's claims that it does not promise results or that it can escape liability because it does not promise that its services will work are without merit.

## CONCLUSION

For the reasons set forth above, the Bureau respectfully requests that the Court deny the Defendant's Motion for Reconsideration.

Respectfully submitted,

Anthony Alexis
Enforcement Director

Deborah Morris
Deputy Enforcement Director

Craig Cowie
Assistant Litigation Deputy

/s/Sarah Preis

Sarah Preis
(Email: sarah.preis@cfpb.gov)
(Phone: 202-435-9318)
Benjamin Clark
(Email: benjamin.clark@cfpb.gov)
(Phone: 202-435-7871)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722
Attorney for Plaintiff
Consumer Financial Protection
Bureau