**VENABLE LLP**
Allyson B. Baker (*Pro Hac Vice*)
Katherine M. Wright (*Pro Hac Vice*)
575 7th Street, NW
Washington, DC 20004
Email: ABBaker@Venable.com
KMWright@Venable.com
Telephone: 202.344.4000
Facsimile: 202.344.8300

Kimberly Culp Cloyd (SBN 238839)
Email: kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone: 415.653.3750
Facsimile: 415.653.3755

Witt Chang (SBN 281721)
Email: wchang@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

Attorneys for Defendant Prime Marketing Holdings, LLC

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Prime Marketing Holdings, LLC, (d.b.a. Park View Credit, National Credit Advisors, and Credit Experts)<br><br>Defendant. | CASE NO.: 2:16-CV-07111-BRO (JEMx)<br><br>**PRIME MARKETING HOLDINGS, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**<br><br>**Date:** **January 23, 2017**<br>**Time:** **1:30 p.m.**<br>**Location:** **Courtroom 7C**<br>**Officer:** **Hon. Beverly Reid O'Connell**<br><br>Action Filed: September 22, 2016<br>Trial Date: N/A |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....1

ARGUMENT ....1

I. THE BUREAU ACCEPTS THAT IT MUST PLEAD UNDER RULE 9(B), BUT FAILS TO MEET THE STANDARD ....1

II. THE BUREAU DOES NOT ADEQUATELY PLEAD THE ABSENCE OF A REASONABLE BASIS FOR COUNTS TWO THROUGH FIVE ....3

III. THE BUREAU NEVER ALLEGED ANY NET IMPRESSION ....5

IV. THE BUREAU STILL DOES NOT TIE ANY SPECIFIC ALLEGATION TO ANY WRONGFUL CONDUCT ....6

V. THE BUREAU LACKS STANDING ....6

VI. THE BUREAU STILL HAS NOT ADEQUATELY PLED ITS ADVANCE FEE PROVISION CLAIM (COUNT 1) ....7

A. The Bureau's New Interpretation Of The Advance Fee Provision Will Harm An Entire Lawful Industry And Is Still Not Well Pled ....7

B. The Bureau's Interpretation Of "Promised Result" Is Rendered In A Vacuum, And Not Within The Context In Which It Exists ....9

C. The Bureau Conflates The Advance Fee Provision And Deception Doctrine ....10

CONCLUSION ....10

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Consol. Edison Co. of N.Y. v. Pataki*,
292 F.3d 338 (2d Cir. 2002) .......... 9

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) .......... 2

*Cummings v. Missouri*,
71 U.S. (4 Wall.) 277 (1866) .......... 9

*F.T.C. v. Cyberspace.com LLC*,
453 F.3d 1196 (9th Cir. 2006) .......... 6

F.T.C. v. Figgie Int'l., Inc.
994 F.2d 595, 604 (9th Cir. 1993) .......... 10

*F.T.C. v. John Beck Amazing Profits, LLC*,
865 F. Supp. 2d 1052 (C.D. Cal. 2012) .......... 6

*F.T.C. v. RCA Credit Services LLC*,
727 F. Supp. 2d 1320 (M.D. Fla. 2010) .......... 4

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
245 F.3d 1048 (9th Cir. 2001) .......... 2

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) .......... 2

*Shame on you Productions, Inc. v. Banks*,
120 F. Supp. 3d 1123, 1140-41 (C.D. Cal. 2015) .......... 7

*S.E.C. v. McCarthy*,
322 F.3d 650 (9th Cir. 2003) .......... 7

**Statutes**

Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* .......... 9

**Other Authorities**

16 C.F.R. pt. 310 .......... 9

16 C.F.R. § 310.4(a)(2) .......... 7, 8

60 Fed. Reg. 43842-01, 43853 .......... 9

Fed. R. Civ. P. 9(B) .......... 1, 2, 3, 10

Fed. R. Evid. 408 .......... 3

Fed. R. Evid. 801 .......... 3

Fed. R. Evid. 802 .......... 3

Fed. R. Evid. 1002 .......... 3

Local Rule 11-6 .......... 7

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

The Bureau relies on a few isolated incidents of alleged deception, but does not plead a practice or net impression from PMH's advertising. The few purported examples that the Bureau offers from its First Amended Complaint (FAC) are neither pled with specificity nor tied to any alleged wrongful conduct. The FAC does not lay out what it is that creates a net impression, or to whom, or when that impression was created. Instead, it alleges a panoply of disparate, unconnected allegations. The Bureau's Opposition does not bring those pieces together, leaving PMH still in the dark as to what, specifically, it is defending against. In sum, Counts two through five cannot survive PMH's motion to dismiss.

Count One (the Advance Fee Provision) also fails to survive the Motion to Dismiss because the Bureau has not pled PMH has made a promised result. The Bureau's new argument concedes that it must plead a promised result, but confusingly equates a "representation" with a "promised result." But they are not synonymous, which is why the FTC used different words in the regulation. While the Bureau purports to plead representations, it does not plead any promised result.

Indeed, the Opposition reveals the Bureau's apparent purpose in bringing this case: to put PMH out of business, only because PMH is a credit repair business. But, credit repair is not *per se* unlawful, and the Bureau has failed to plead any specific conduct that shows or could show that PMH has violated any law. The Bureau has had two chances to plead a case, it should not get a third.

## ARGUMENT

### I. THE BUREAU ACCEPTS THAT IT MUST PLEAD UNDER RULE 9(B), BUT FAILS TO MEET THE STANDARD

The Bureau faithfully recites the Rule 9(b) standard, including that it "must also allege *why the statements are false or misleading*." Opp. at 1 (emphasis added). The Bureau does not, however, follow that standard.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

First, it tries to avoid its burden of pleading under Rule 9(b) by relying on a series of distinguishable cases and arguing that it does not need to plead "'each and every instance'" of deception. Opp. at 1. However, in each case the Bureau cites where the plaintiff satisfied Rule 9(b) the plaintiff pled with specificity the statements at issue in a way distinguishable from the Bureau's FAC. *See, e.g.*, *Cooper v. Pickett*, 137 F.3d 616, 620-21, 627 (9th Cir. 1997) (plaintiff satisfied Rule 9(b) by specifically alleging how defendant improperly inflated revenues in financial statements for specified quarters); *Odom v. Microsoft Corp.*, 486 F.3d 541, 543-545, 553-555 (9th Cir. 2007) (plaintiffs alleged the same fraudulent retail transactions occurred in the same way as part of a conspiracy specifically alleging two transactions). Indeed, the very case that the Bureau relies on for the quote that it need not plead "each and every instance" of deception affirmed that the plaintiff failed to meet Rule 9(b) because his "broad claim had no factual support." *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001).

The Bureau has not pled a policy or common practice that makes any of its "examples" "representative" of any specifically alleged advertising. To the contrary, the Bureau alleges a variety of non-uniform examples that purport to show different ways in which the Bureau thinks PMH's advertising was deceptive. The Bureau does not connect these threads in its Opposition. Moreover, the Bureau has qualified many of its allegations to "some customers" without alleging which customers, what those customers were told or saw, or when. FAC ¶¶ 49-50. Likewise, the Bureau alleges that "at times" or "typically" or "in numerous instances" PMH made certain statements, without alleging at what times and under what circumstances. FAC ¶¶ 53, 55, 64, 66, 95, 129. Importantly, the Bureau does not allege that any of its examples are indicative of a larger policy or practice.

The Bureau also, surprisingly, argues that it does not need to allege that PMH "has actually used the quoted telemarketing scripts" which the Bureau has alleged show that PMH made false or misleading statements. Opp. at 17 n.6. This

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

makes no sense. PMH cannot be liable for a marketing statement it never made.

Similarly, the Bureau still does not explain which of PMH's two operating businesses, which have two different websites, contracts, and policies, allegedly engaged in which acts and at which times. This pleading failure is another example of how the Bureau's vague pleading continues to prejudice PMH.[1]

Finally, the Bureau boldly argues, without authority, that "the Bureau does not need to allege where or when PMH made the assertion about the source of the data." Opp. at 5-6.[2] The Court already found that the Bureau alleges conduct that gives rise to a fraudulent scheme and must, therefore, plead with particularity. *See* Dkt. 32 at 10-11. The Court ordered that the second through fifth counts, not some subset of ill-defined facts or elements, must be pled pursuant to Rule 9(b). *Id.* at 11. Without authority for doing so, the Bureau does not satisfy Rule 9(b).

## II. THE BUREAU DOES NOT ADEQUATELY PLEAD THE ABSENCE OF A REASONABLE BASIS FOR COUNTS TWO THROUGH FIVE

The Bureau appears to argue that, in sum, PMH lacked a "reasonable basis" for a variety of alleged statements relating to the efficacy of PMH's services. To the extent the FAC ever alleges why or how PMH lacked "a reasonable basis," the Bureau does so by arguing that PMH has relied on the historical data of the business it acquired. But, even if this allegation is assumed to be true, the Bureau does not articulate why relying on such data is impermissible. Moreover, the Bureau ignores PMH's own operating data (*e.g.* Opp. at 5, 12) and arguments about the FCRA.[3] *See e.g. id.* at 14. Other than generally alleging that PMH lacked

---

[1] PMH seeks judicial notice of two, different, agreements. The Bureau does not argue that the agreements are not authentic – just that they are not "properly authenticated" – and does not explain which guarantees or which advertising about guarantees it challenges. Opp. at 15 n.5. The Bureau appears to argue the FAC refers to something else, but refuses to specify to what.

[2] PMH objects to the Bureau's counsel's declaration cited in that same paragraph. The Bureau improperly attempts to use a settlement communication as evidence, the purported evidence is hearsay, and counsel attempts to paraphrase a document which itself is the best evidence of any alleged statement. Fed. R. Evid. 408, 801-802, 1002. The Bureau was also required to include any relevant factual allegations in the FAC, not briefs or as evidence.

[3] The Bureau does not (and cannot) disagree with PMH about how the FCRA operates. (*See*
(continued…)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

a "reasonable basis," the Bureau does not allege with specificity how or why. The Bureau also fails to allege the rest of its claim with specificity.

Moreover, the Bureau misconstrues its own allegations to try to shoehorn its case into other distinguishable cases. For example, the Bureau cites *F.T.C. v. RCA Credit Services LLC*, 727 F. Supp. 2d 1320 (M.D. Fla. 2010). Opp. at 11. The advertising there is noticeably distinguishable, which included such express promises as: "Boost Your Credit Score Into the 700's in as little as 30 days," 727 F. Supp. 2d at 1326; "COMPLETELY REMOVE EVERY NEGITIVE [sic] FROM YOUR [CREDIT] FILE IN 7 Days and Raise your FICO Score Instantly," *id.* at 1327; and "Remove ANY and ALL Negative Accounts From Your Credit Report" *id.* at 1330. The Bureau does not allege similar advertising by PMH.

Nowhere does it allege that PMH advertised it "could remove all types of negative information regardless of the circumstances" in the FAC. Opp. at 9-10; *see e.g.*, FAC ¶ 66 (alleging PMH advertised it could remove negative items (not "all")); *id.* ¶ 67 (alleging a customer representative stated that PMH could "help" "fix" the customer's credit (but not "remove all" negative items)); *id.* ¶ 68 ("there's really nothing that we can't dispute" but not making any promise about removing anything); *id.* ¶ 71. Rather, the only actual advertising the Bureau relies on – from a 2014 website – states "Remove Multiple Charge Off's from Your Credit Report!" Opp. at 9 (citing FAC ¶ 77). Even if it had, the Bureau does not allege that PMH has not actually removed every type of negative item.

The Bureau also alleges facts that disprove its arguments. The Bureau alleges that PMH told a customer that there is "nothing that we can't *dispute*." FAC ¶ 68 (emphasis added); *see also id.* ¶ 155 (from a 2015 website: "[we can] identify which items we think are disputable"); *id.* ¶¶ 156-157; *id.* ¶ 158 (2015

---

(continued)
Mot. at 9-11). Rather, the Bureau argues that although it is "theoretically possible" that a CRA would remove certain data, that possibility is not "tantamount to a reasonable basis." Opp. at 10. The Bureau's admission that it is "theoretically possible" is dispositive.

website stating that "there are lots of things we can get removed" but not stating that PMH can remove all types of negative information regardless of the circumstances). In addition, contrary to its arguments, the Bureau alleged that PMH advertised that it would review a specific customer's credit report and "identify which items we think are disputable." FAC ¶ 155. PMH did not advertise, (nor has the Bureau alleged that it did) that "regardless of the circumstances" PMH could and would "remove all types of negative information." Opp. at 10. This is but one example of how the Bureau misconstrues its own allegations to oppose the motion to dismiss. *See also, e.g.*, Opp. at 12, 13 (the Bureau argues but does not allege that PMH's advertising generally promised "specific score" increases).

## III. THE BUREAU NEVER ALLEGED ANY NET IMPRESSION

The Bureau only now argues, but has never alleged, as it must, that PMH's advertising is deceptive under a "net impression" theory – that is the component parts of the alleged statements when taken together give rise to an alleged misrepresentation that was likely to confuse a consumer acting reasonably. To argue a net impression theory now, the FAC must first allege this theory. It does not. Indeed, the FAC does not even allege what statements or conduct might have created a "net impression," let alone with specificity.

The Bureau's post-hoc net impression theory has other gaps too. For example, it contends that PMH's advertising created a "net impression" that PMH "provides a generous 'money back guarantee.'" Opp. at 15. But the Bureau does not explain what it means by "generous" and what constitutes the purported "generous" guarantee. The Bureau also does not allege in the FAC – with specificity, if at all – how PMH's advertising described PMH's guarantee (other than by vaguely alleging snippets of quotes from various websites or calls). *Id.* (citing FAC ¶¶ 120, 122-133). This pleading failure prevents the Bureau from relying on a post-hoc argument in its brief that PMH's statements alleged in the FAC created a "net impression" that gives rise to deception. And the Bureau's

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

reliance on certain cases only underscores the gap in its FAC and in its Opposition. For example, unlike here, in *F.T.C. v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1070 (C.D. Cal. 2012), the FTC specifically alleged that certain infomercials created a "net impression" that gave rise to deception. Likewise, in *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1200-1201 (9th Cir. 2006), the FTC alleged a specific mailing and practice created a specific net impression. The Bureau has not pled, let alone with specificity, that PHM created a "net impression" that gives rise to a deception claim.

## IV. THE BUREAU STILL DOES NOT TIE ANY SPECIFIC ALLEGATION TO ANY WRONGFUL CONDUCT

The Bureau alleges certain "examples" of what it contends are actionable misrepresentations. As discussed in PMH's Motion, the Bureau never ties those examples to any wrongful conduct. The Bureau does not dispute this. Just because PMH makes representations does not *ipso facto* mean it makes misrepresentations. The Bureau does not show – even on a notice pleading standard – how the FAC's "examples" of alleged statements are false or misleading.

## V. THE BUREAU LACKS STANDING

The Bureau's allegation that PMH is an "ongoing, unlawful business" is insufficient to establish standing for claims 2-5. The Bureau has offered no authority that credit repair, as a business, is unlawful. It has also not alleged any ongoing allegedly unlawful acts. The Bureau's allegations are many months, and in most cases years, in the past. Pleading that PMH is an ongoing business is not synonymous with pleading ongoing deceptive acts that could give rise to consumer injury. Because the Bureau fails to allege facts that could show allegedly ongoing, unlawful conduct, it lacks standing to pursue injunctive relief. The Bureau cannot ask the Court to enjoin PMH from engaging in conduct that PMH does not currently engage in, even construing every alleged fact in the Bureau's favor.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## VI. THE BUREAU STILL HAS NOT ADEQUATELY PLED ITS ADVANCE FEE PROVISION CLAIM (COUNT 1)

As PMH articulated in the Motion for Reconsideration, an essential element of any Advance Fee Provision claim under 16 C.F.R. § 310.4(a)(2) is that a credit repair telemarketer makes a "promised result."[4] The Bureau concedes now this point, but still fails to plead that PMH promised results.

### A. The Bureau's New Interpretation Of The Advance Fee Provision Will Harm An Entire Lawful Industry And Is Still Not Well Pled

For the first time, the Bureau has explained its apparent interpretation of the phrase "promised result." But the Bureau's subsequent brief cannot compensate for the glaring deficits in its FAC; the Bureau never pleads that PMH has made "promised results." The Court should dismiss Count 1 for this reason alone, but also because the Bureau's arguments are unavailing.

First, in drafting the Advance Fee Provision, the FTC used "represented" twice in sections 310.4(a)(2) and 310.4(a)(2)(i) and later used "promised results" in 310.4(a)(2)(ii). It is well-established "that the use of different words or terms within" a statute or regulation demonstrates the promulgating body's intention "to convey a different meaning for those words." *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003). If the FTC meant "promised results" when it said "represented" it would have said so, and vice versa. It cannot be that "representations" are the same thing as "promised results" under the TSR.

Second, the Bureau's interpretation is untenable, as not all "representations" (and sometimes not any) related to the items identified in section 310.4(a)(2) will give rise to results that could even be demonstrated on a consumer's individual

[4] PMH rightfully incorporated by reference the arguments in its Motion for Reconsideration on this point. Where factual allegations do not substantively change from one complaint to the next, motions regarding an earlier complaint may be applied to the later complaint. *See, e.g.*, *Shame on you Productions, Inc. v. Banks*, 120 F. Supp. 3d 1123, 1140-41 (C.D. Cal. 2015). To the extent the Bureau complains that incorporation violates the Court's local rule on page limits (*see* L.R. 11-6), PMH's argument in the Motion for Reconsideration was just over a page long – less than the remaining available space in the Motion to Dismiss the FAC.

credit report, as the Advance Fee Provision expressly contemplates. For example, the Bureau argues that PMH has violated the Advance Fee Provision by "represent[ing] that it has improved credit scores by more than 100 points on average," and that this "representation" constitutes a "promised result" within the meaning of the TSR. Opp. at 23. An average credit score increase across PMH's customer population could never be represented on an individual credit report. Similarly, testimonials and "descriptions of individual results" are not concrete or specific promises the results of which are shown on all consumers' credit reports. *Id.* The Bureau cannot compensate for its failure to plead that PMH has made "promised results" by re-purposing its allegations that PMH made certain "representations" in connection with the Bureau's deception case.

Additionally, according to the Bureau, any company that engages in telemarketing and merely represents that it provides credit repair services or calls itself a "credit repair company" is necessarily promising results and thus subject to the Advance Fee Provision. Opp. at 21. The absurdity of this position is facially apparent. Just because a company offers credit repair services does not mean—*per se* – that it is promising to improve a person's credit score with specific results that will appear on a credit report. Analogously, a beautician is not making a *per se* promise to make his or her customers beautiful, just because the word "beauty" is used to classify that particular type of business.

The Bureau's interpretation of the Advance Fee Provision also means that no credit repair company can obtain any income for six months after providing services; realistically closer to 8-12 months after services begin with a consumer. Practically, this makes it entirely unlikely that fees will ever be collected as it requires PMH to track down consumers six months after services have been completed and attempt to recoup payment. At that time, customers could refuse to consent to having their credit report pulled, which would mean, under the Bureau's interpretation, that PMH would get paid nothing for any of its work. At the very

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

least, it requires credit repair companies to float all fees (and go without any income) for close to a year. Quite clearly, no company could remain in business. In attempting to enforce the Advance Fee Provision, the Bureau exposes its true intentions: to put PMH, and by extension all credit repair companies, out of business. The Bureau's reading of the Advance Fee Provision results in what is essentially an unconstitutional bill of attainder, and the Bureau cannot seek to punish a specific individual or group (here, a lawful business line, expressly regulated and contemplated by the Credit Repair Organizations Act (CROA), 15 U.S.C. § 1679 *et seq*., and California law) merely because that lawful business exists. *Cf*. *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 322, 332 (1866); *Consol. Edison Co. of N.Y. v. Pataki*, 292 F.3d 338, 345-55 (2d Cir. 2002).

### B. The Bureau's Interpretation Of "Promised Result" Is Rendered In A Vacuum, And Not Within The Context In Which It Exists

The Advance Fee Provision allows a consumer to withhold payment until six months after a promise has been fulfilled.[5] The Bureau attempts to compensate for its failure to plead "promised result" by mislabeling PMH's previously-offered money-back guarantee as an example of a "promised result." Under its money-back guarantee, a PMH consumer got money back if the desired outcome was not achieved. Applying the Bureau's logic would mean that there would be no money-back component of the guarantee because PMH could not collect any fees before completion of the services. But the guarantee without the money-back component would not be a money-back guarantee, which is the only thing that PMH ever offered. The money-back guarantee is the inverse of a "promised result" as contemplated by the Advance Fee Provision which allows for the collection of fees only after a promised result is achieved. PMH's guarantee returned money if an outcome was not achieved. Moreover, the Bureau has never pled that PMH made a

[5] This furthered the purpose of the Advance Fee Provision of limiting the operations of fraudulent scammers who only secured temporary, but not permanent, removal of negative information. 60 Fed. Reg. 43842-01, 43853 (Aug. 23, 2995) (codified at 16 C.F.R. pt. 310).



VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

"promised result," by virtue of its previously-offered money-back guarantee.

**C. The Bureau Conflates The Advance Fee Provision And Deception Doctrine**

The Bureau accounts for its pleading failure by identifying – in post-hoc fashion – its allegations about PMH's implicit and explicit claims, which do not even result in the Bureau adequately pleading deception, let alone violations of the Advance Fee Provision. To this end, the Bureau cites a number of inapposite cases. For example, in *F.T.C. v. Figgie Int'l., Inc.*, the Court rejected defendant's argument that it could not be held liable for implied representations; this, of course, has nothing to do with what constitutes a "promised result." 994 F.2d 595, 604 (9th Cir. 1993). The rest of the Bureau's cases rely on a "net impression" theory which, as explained above, also concerns deception doctrine and, at that, the Bureau did not plead this theory in its FAC and, thus, cannot rely on it here. *See supra* Section III. Furthermore, if the Bureau wants to import deception doctrine into its pleading of Count I, then that Count also must be pled under Rule 9(b), and it is clearly not.

At its core, the Bureau's Advance Fee Provision claim, and its eleventh-hour interpretation of the phrase "promised result," is really an effort to put a lawful industry out of business. The Bureau's transparent attempt to do so through flimsy allegations aimed at a small business in the credit repair space is unavailing. The Bureau has failed to identify the "promised results" that PMH allegedly made and fails to state a claim under Count 1.

**CONCLUSION**

For the foregoing reasons, PMH respectfully requests that the Court grant PMH's Motion to Dismiss, with prejudice.

Dated: January 9, 2017

**VENABLE LLP**

By: /s/ Kimberly Culp Cloyd
Kimberly Culp Cloyd
Allyson B. Baker (*Pro Hac Vice*)
Katie M. Wright (*Pro Hac Vice*)
Witt Chang
*Attorneys for Defendant Prime Marketing Holdings, LLC*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900