UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-07111-BRO (JEMx) | Date | January 19, 2017 |
|---|---|---|---|
| Title | CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC | | |

Present: The Honorable **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS)

**ORDER RE DEFENDANT'S MOTION FOR RECONSIDERATION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [34, 39]**

## I. INTRODUCTION

Pending before the Court is Defendant Prime Marketing Holdings, LLC's ("Defendant" or "PMH") Motion for Reconsideration of the Court's prior Order denying Defendant's Motion to Dismiss Plaintiff's first cause of action, (*see* Dkt. No. 34 (hereinafter, "Reconsideration Mot.")), and Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, (*see* Dkt. No. 39 (hereinafter, "MTD Mot.").) After considering the papers filed in support of and in opposition the instant Motion, the Court finds this matter appropriate for resolution without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court reconsiders its Order Denying Defendant's Motion to Dismiss Plaintiff's First Count in its Original Complaint, but, nonetheless, **DENIES** Defendant's Motion. In addition, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

## II. BACKGROUND

### A. Factual Background

Plaintiff, the Consumer Financial Protection Bureau ("Plaintiff" or "the Bureau"), brings this action against Defendant, alleging that Defendant engages in an ongoing, unlawful credit repair business that charges unlawful advance fees and misrepresents the costs and benefits of its services. (Dkt. No. 35 (hereinafter, "FAC") ¶ 2.) The Bureau is

an independent agency of the United States charged with enforcing federal consumer financial laws. (FAC ¶ 5 (citing 12 U.S.C. §§ 5491, 5563, 5564).) It has independent litigating authority, including the authority to enforce the Telemarketing Sales Rule ("TSR"). (*Id.* (citing 12 U.S.C. §§ 5564(a), (b); 15 U.S.C. § 6105(d).) Defendant is a Delaware company organized in 2014 that has a place of business in Van Nuys, California. (FAC ¶ 6.)

According to Plaintiff, Defendant began offering credit repair services to consumers in October 2014. (FAC ¶ 8.) Defendant has continued to provide credit repair services using several different names. (FAC ¶ 9.) Plaintiff avers that Defendant entered into an agreement with a company registered as a credit services organization ("CSO") with the California Department of Justice. (FAC ¶¶ 10–11, 13.) Under the agreement, which allowed Defendant to offer credit repair services using the CSO's name, Defendant handled marketing and performed credit repair services for consumers who contracted with the CSO. (FAC ¶¶ 14–15.)

In late 2015, Defendant began doing business as Park View Credit, National Credit Advisors, and Credit Experts. (FAC ¶¶ 17–19.) With these new companies, Defendant offered credit repair to consumers. (FAC ¶ 20.) Defendant's customers include individuals who were attempting to obtain mortgages, loans, refinancing, or other credit lines. (FAC ¶ 28.) Plaintiff claims that Defendant would either contact a consumer after the consumer inquired about a loan through Defendant's website, or the consumer would reach out to Plaintiff after seeing information online about the credit repair services that Defendant offered. (FAC ¶¶ 25–27)

Plaintiff alleges that Defendant would make "deceptive representations" to possible customers about the efficacy of its services and its money-back "guarantee." (FAC ¶ 29.) Plaintiff avers Defendant has "rushed consumers through the process of signing its online contract," and these contracts have materially differed from Defendant's representations to consumers during sales calls and its online marketing. (FAC ¶¶ 38–39.)

### 1. Alleged Violations of the Advanced Fee Provision

Plaintiff places Defendant's allegedly fraudulent conduct into several categories. First, Plaintiff contends that Defendant has charged unlawful advance fees—i.e., collected fees from consumers before providing consumers with proof that its services

were effective. (FAC ¶¶ 48–63.) Plaintiff avers that during initial sales calls, Defendant has told consumers that a consultation is the first step in the credit repair process, but that they must pay a fee in order to proceed with a consultation. (FAC ¶¶ 49, 51.) Defendant has represented that this fee was for a credit report. (FAC ¶ 50.) Thus, Plaintiff claims that Defendant has marketed these consultations as "free," but has charged a fee for them. (FAC ¶¶ 52–53.) In addition, at times, Defendant has, apparently, not provided consumers with a copy of the contract for its services until they have paid this fee. (FAC ¶ 55.)

During the initial consultation, one of Defendant's analysts purports to review and discuss the consumer's credit report with the consumer to identify ways in which Defendant can assist in increasing the consumer's credit score. (FAC ¶ 56.) If the consumer agrees to continue services, then Defendant directs them to sign a contract. (FAC ¶ 57.) After the initial fee, Defendant has charged consumers a monthly fee of $89.99 until the consumer affirmatively cancels his contract. (FAC ¶¶ 59–61.) Alternatively, Defendant has charged a separate "set-up fee" of several hundred dollars for the first two months and then charged the monthly fee in later months. (FAC ¶ 62.) These fees have been collected before Defendant has provided the consumer with a consumer report from a consumer reporting agency demonstrating that any promised results have been achieved. (FAC ¶ 63.)

**2. Alleged Representations Regarding the Efficacy of Defendant's Services**

Plaintiff claims that the second category of allegedly fraudulent conduct includes Defendant's misrepresentations of its ability to remove negative items from credit reports. (FAC ¶¶ 65–92.) Specifically, Plaintiff alleges that Defendant has failed to adequately represent the limited circumstances in which negative items may be removed from consumers' credit reports. (FAC ¶ 65.) Plaintiff provides several examples of statements made by Defendant's employees during sales calls in January and February 2016 in which the representatives indicated that Defendant was capable of assisting consumers with their credit scores, but without informing them of the limitations placed by the Fair Credit Reporting Act ("FCRA") on removing items from credit reports. (FAC ¶¶ 67–68.) In addition, Plaintiff details an instance where a consumer filled out an online mortgage application and began receiving calls from a company representing itself as Park View Credit. (FAC ¶¶ 69–70.) According to Plaintiff, the company told the

consumer that it could "get rid of" things on the consumer's credit report so that the consumer could obtain a mortgage. (FAC ¶ 71.)

Further, Plaintiff claims that Defendant has misrepresented its services by indicating that any type of negative item can be deleted from a credit report and has used alleged testimonials or descriptions of individual results on its website. (FAC ¶¶ 72–76.) For example, on October 14, 2014, Defendant's website's homepage included a banner that stated "Remove Multiple Charge Off's [sic] from Your Credit Report!" and featured a testimonial describing how a consumer stopped paying most of his debts, which were sent to collection agencies as charge-offs, and that he ultimately filed for bankruptcy. (FAC ¶ 78–79.) The testimonial also explained that this customer received letters from credit bureaus indicating that negative items had been removed from his credit report and that his credit score had improved. (FAC ¶ 80.) This testimonial failed to indicate that the FCRA only allows consumer reporting agencies to remove charge-offs and bankruptcies from credit reports in certain situations. (FAC ¶ 83.)

As another example, on September 2, 2015, the "Results" page of Defendant's website www.parkviewcredit.com included a description of results obtained for an individual who had three judgments removed from his credit report within one month of working with Defendant. (FAC ¶ 84.) The description did not indicate that the judgments were inaccurate or obsolete and the website did not make clear that the FCRA requires consumer reporting agencies to remove judgments in certain circumstances. (FAC ¶ 86.) In addition, Plaintiff contends that Defendant has misrepresented its services to other individuals, such as one consumer who complained after a four-year-old bankruptcy was not removed from her credit report despite Defendant's representations that it was removable, (FAC ¶¶ 87–89), and another individual whose credit score decreased after working with Defendant despite Defendant's representations that it could remove medical collections from her credit report, (FAC ¶¶ 90–92.)

Next, Plaintiff avers that Defendant has misrepresented its ability to increase consumer's credit scores by over 100 points. (FAC ¶¶ 93–118.) For example, during a sales call on January 19, 2016, Defendant made "numerous references" to credit score increases of 100 or more points. (FAC ¶ 96.) During this call, Defendant's representative explained that this was because it purchased "lender reports" instead of standard credit reports and as Defendant removes items from a consumer's report, it increases a FICO score by an average of 100 points. (FAC ¶¶ 97–99.) During a different

call on February 22, 2016, Defendant apparently represented that the average increase for a client is 100 to 120 points "no matter what it is that we're disputing." (FAC ¶ 102.) In addition, Defendant uses language about average credit score increases in its telemarketing scripts. (FAC ¶ 103.) For instance, on July 13, 2016, Defendant submitted a telemarketing script to the California Department of Justice that stated: "Our clients see an average increase of 80 to 104 Pts increase on their FICO scores!" (FAC ¶ 105.)

Defendant's website also includes alleged testimonials or customer descriptions of significant increases in customers' credit scores and has implied that these results were typical. (FAC ¶¶ 106–07.) For example, Defendant's website included a statement about an alleged customer that stated Defendant was able to increase her credit score from 514 to 819. (FAC ¶ 108.) On September 20, 2016, Defendant's website included several testimonials about Defendant assisting alleged customers significantly increase their credit scores. (FAC ¶ 110.) According to Plaintiff, Defendant has stated that its basis for these representations is information obtained from one of the credit repair companies whose assets Defendant purchased on October 1, 2014. (FAC ¶¶ 111–12.)

Plaintiff contends that numerous customers have stated that Defendant told them it would increase their credit scores by significant amounts. (FAC ¶ 113.) One consumer was assured on May 24, 2015, that Defendant could raise her credit score to a point where she could obtain a home loan, but despite paying $800, her score had decreased. (FAC ¶¶ 114–15.) Another consumer complained that, despite assurances her score would increase to over 600 within three months, it had not changed. (FAC ¶¶ 116–17.)

**3. Defendant's Alleged Failure to Disclose the Terms of Its Guarantee**

Next, Plaintiff alleges that Defendant has misrepresented the terms of its "guarantee." (FAC ¶¶ 119–37.) Defendant represents that it offers a money-back guarantee such that, if a consumer is not satisfied with Defendant's services, he can obtain a refund. (FAC ¶¶ 119–20.) But Defendant's sales contracts typically restrict this guarantee to the removal of at least "one (1) Disputed item within one hundred and eighty days (180) of the execution of this Agreement." (FAC ¶ 121.) Defendant has failed to disclose that there are significant limitations to this guarantee. (FAC ¶ 122.) For example, on April 25, 2015, Defendant's website included the heading "Money Back Guarantee" and stated that "[i]f we don't get the job done, you get your money back." (FAC ¶ 124.) On September 2, 2015, the website also stated that Defendant had a "Risk

Free Money Back Guaranteed [sic].” (FAC ¶ 125.) Defendant's telemarketing scripts state that “We are the only credit repair company that offers a fully money back guarantee.” (FAC ¶ 128.)

According to Plaintiff, Defendant has represented in multiple instances that it was guaranteeing an increase in credit scores or the removal of specific negative items. (FAC ¶ 129.) For example, on October 10, 2014, and April 25, 2015, Defendant's website stated that “We're so confident in our services we GUARANTEE our services. If we don't raise your credit score, you don't pay.” (FAC ¶ 130.) During a sales call on February 22, 2016, Defendant's representative confirmed this guarantee saying that “the guarantee is that if you don't see any results within six months, we give you your money back.” (FAC ¶ 131.) Around July 14, 2015, one consumer was told that if none of the items on her credit report were deleted in six months, she would get all of her money back. (FAC ¶ 133.) When she called on or about July 8, 2015, to request a refund, Defendant told her she would receive a refund, but it later informed her that her contract did not guarantee the removal of negative items. (FAC ¶¶ 134–35.) According to Plaintiff, consumers “often encountered difficulty in obtaining refunds.” (FAC ¶ 137.)

#### 4. Defendant's Alleged Misrepresentations About the Cost of Its Services

Plaintiff also alleges that Defendant misrepresents the costs of its services. (FAC ¶¶ 138–45.) Defendant has failed to disclose that consumers will be charged a monthly fee. (FAC ¶ 138.) For example, around August 14, 2015, one consumer complained because Defendant represented that the total cost of its services was approximately $600, but after the consumer paid that sum, Defendant informed the consumer that there was an additional charge of $89.99 per month. (FAC ¶¶ 139–40.) Another consumer complained that Defendant represented that she would only have to pay $600 for its services, but that she was then charged a monthly fee of $89.99. (FAC ¶¶ 141–43.) Further, some of Defendant's telemarketing scripts fail to inform consumers of its monthly fee. (FAC ¶ 144–45.)

### B. Procedural History

Plaintiff initiated this action in this Court on September 22, 2016, bringing five causes of action against Defendant. (*See* Dkt. No. 1.) On October 7, 2016, Defendant filed a Motion to Dismiss Plaintiff's Complaint. (Dkt. No. 14.) On November 15, 2016,

the Court granted in part and denied in part Defendant's Motion. (Dkt. No. 32 (hereinafter, "Order").) Specifically, the Court denied Defendant's Motion to Dismiss Plaintiff's first cause of action, but granted the Motion as to Plaintiff's second through fifth claims, explaining that, because these claims sounded in fraud, Plaintiff was required to plead them in conformance with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. (*Id.*) On November 23, 2016, Defendant filed the instant Motion for Reconsideration, requesting the Court to reconsider its decision to deny Defendant's Motion as to Plaintiff's first cause of action. (*See* Reconsideration Mot.) On December 30, 2016, Plaintiff timely opposed Defendant's Motion, (Dkt. No. 48 (hereinafter, "Reconsideration Opp'n")), and Defendant replied on January 9, 2017, (Dkt. No. 51 (hereinafter, "Reconsideration Reply")).

On November 28, 2016, Plaintiff filed its First Amended Complaint ("FAC"). (*See* FAC.) Plaintiff's FAC alleges the same five causes of action as its Original Complaint for various conduct allegedly violating the TSR and the Consumer Financial Protection Act of 2010 ("CFPA"): (1) violation of the TSR, 16 C.F.R. § 310.4(a)(2), for collecting fees for credit repair prior to demonstrating the promised results have been achieved, (FAC ¶¶ 166–68); (2) violation of the TSR, 16 C.F.R. § 310.3(a)(2)(iii), for misrepresentations about material aspects of the efficacy of its services, (FAC ¶¶ 169–81); (3) violation of the TSR, 16 C.F.R. § 310.3(a)(1)(iii), for failure to disclose limitations on its money back guarantee, (FAC ¶¶ 182–87); (4) violation of the TSR, 16 C.F.R. § 310.3 (a)(2)(i), for misrepresenting the costs of its services, (FAC ¶¶ 188–92); and, (5) violations of the CFPA, 12 U.S.C. §§ 5531, 5536, for alleged deceptive acts or practices, (FAC ¶¶ 193–206). Plaintiff requests that the Court grant injunctive relief and award Plaintiff equitable monetary relief along with civil penalties. (*See* FAC ¶ 207; *see also* FAC at 39.)

On December 9, 2016, Defendant filed the instant Motion to Dismiss Plaintiff's FAC, (*See* MTD Mot.), along with a Request for Judicial Notice, (Dkt. No. 40 (hereinafter, "RJN")). Plaintiff timely filed its Opposition on December 30, 2016, along with an objection to Defendant's Request for Judicial Notice. (Dkt. No. 49 (hereinafter, "MTD Opp'n").) Defendant timely replied on January 9, 2017. (Dkt. No. 50 (hereinafter, "MTD Reply").)

//

//

## II. REQUEST FOR JUDICIAL NOTICE

As noted above, Defendant also filed a Request for Judicial Notice, in which it asks the Court to take judicial notice of the form service agreements for two of Defendant's companies, National Credit Advisors and Park View Credit. (*See* RJN.) When considering a motion to dismiss, a court typically does not look beyond the complaint in order to avoid converting a motion to dismiss into a motion for summary judgment. *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). Notwithstanding this precept, a court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and, (2) matters in the public record. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1137 (C.D. Cal. 2010) (holding that a court may "consider documents that are incorporated by reference but not physically attached to the complaint if they are central to the plaintiff's claim and no party questions their authenticity"). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).

Defendant argues that the two service agreements are incorporated by reference into Plaintiff's FAC because Plaintiff cites and quotes from them. (*See* RJN.) Plaintiff opposes Defendant's request, arguing that the documents are unauthenticated and that the FAC does not explicitly refer to the proffered templates. (MTD Opp'n at 15 n.5.) Further, Plaintiff claims that because the FAC does not reference the specific templates, the documents customers signed may vary. (*Id.*) "The incorporation by reference doctrine applies *only* when a document is central to plaintiff's claim and no party questions its authenticity." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1024 (C.D. Cal. 2015) (emphasis in original). Thus, where, as here, Plaintiff questions the authenticity of the proffered exhibits—that is, whether the service agreement templates Defendant proffers are the same referenced in the FAC—the incorporation by reference doctrine cannot apply. Plaintiff's FAC mentions only a "contract" generally. (*See, e.g.*, FAC ¶¶ 55, 57, 121, 135, 163, 185.) Plaintiff does not identify any particular service agreement (for instance, it is not clear whether Plaintiff is referencing Park View Credit or National Credit Advisor's customer agreements, or both), and Defendant has not authenticated whether the agreement it provides are those referenced in the FAC or

whether the proffered agreements were provided to every customer during the relevant time period. Accordingly, the Court finds that Plaintiff has questioned the authenticity of the documents. Therefore, the Court **DENIES** Defendant's Request for Judicial Notice and will not consider the proffered agreements when deciding Defendant's Motion to Dismiss Plaintiff's FAC.

## III. LEGAL STANDARD

### A. Motion for Reconsideration

A final order may be reconsidered "under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). If the motion is filed within twenty-eight days of entry of judgment, it is treated as a Rule 59(e) motion. *See Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001) (referring to a previous version of Rule 59(e) requiring the motion to be filed within ten days of judgment instead of twenty-eight); Fed. R. Civ. P. 59(e) (requiring a motion to alter or amend a judgment to be filed within twenty-eight days after entry of judgment); *see also* Fed. R. Civ. P. 59 advisory committee's notes to 2009 Amendments. Otherwise, the motion is treated as a Rule 60(b) motion. *Am. Ironworks & Erectors*, 248 F.3d at 899.

Rule 59(e) permits reconsideration where (1) the court "is presented with newly discovered evidence," (2) the court "committed clear error or the initial decision was manifestly unjust," or (3) "if there is an intervening change in controlling law." *Sch. Dist. No. 1J*, 5 F.3d at 1263. Other highly unusual circumstances may also warrant reconsideration under the rule. *Id.* Rule 60(b) sets forth the following grounds for relief from a final judgment, order, or proceeding: (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial"; (3) fraud; (4) a void judgment; (5) a satisfied, released, or discharged judgment; or, (6) "any other reason that justifies relief." Fed. R. Civ. P. 60(b); *see also Am. Ironworks & Erectors*, 248 F.3d at 899.

The Central District's Local Rules further limit the grounds for reconsideration. Under Local Rule 7-18, a party may seek reconsideration only upon a showing of one of the following: (1) "a material difference in fact or law" from that initially presented to the

Court, which the party could not have known by exercising reasonable diligence; (2) "the emergence of new material facts or a change of law" after the Court's order; or, (3) "a manifest showing of a failure to consider material facts presented to the Court." C.D. Cal. L.R. 7-18. Local rules have the force and effect of law so long as they are not inconsistent with a statute or the Federal Rules. *See Atchison, Topeka & Santa Fe R.R. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998). A court should not depart from the local rules unless the effect on the parties' rights would be "so slight and unimportant that the sensible treatment is to overlook it." *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994).

### B. Rule 8(a)

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: first, the court must discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, the court shall determine "whether they plausibly give rise to entitlement to relief." *See id.* at 679; *accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). A court should consider the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Lee*, 250 F.3d at 688 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").

### C. Rule 9(b)

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. *Odom*, 486 F.3d at 553. Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *Id.* at 765.

## IV. DISCUSSION

### A. Motion for Reconsideration

First, Defendant requests that the Court reconsider its prior Order in which it refused to dismiss Plaintiff's first cause of action for violating the advance fee provision of the TSR. (*See* Reconsideration Mot.) According to Defendant, reconsideration of the Court's decision is warranted because Plaintiff has not adequately pleaded any "promised results." (Reconsideration Mot. at 1.)

#### 1. Whether Defendant's Motion is Moot

Plaintiff argues that Defendant's Motion is moot because after Defendant filed its Motion, Plaintiff filed its FAC. (Reconsideration Opp'n at 2.) The Court disagrees. Though Plaintiff has filed a FAC, the substance of Plaintiff's claims has not changed in

its FAC. (*Compare* Compl. ¶¶ 60–62 *with* FAC ¶¶ 166–68.) Thus, if the Court found Defendant's Motion moot, the Court would still be required to address the same arguments in regards to Plaintiff's FAC. "It would waste both the court's and the parties' resources to deny the motion and require defendants to file an identical motion directed to the first amended complaint." *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1140 (C.D. Cal. 2015). In addition, Plaintiff does not identify any prejudice that it may suffer if the Court considers Defendant's Motion; rather, the Court would merely consider the same argument in the form of a Motion to Dismiss Plaintiff's FAC. *See McQuiston v. City of Los Angeles*, 564 F. App'x 303, 305–06 (9th Cir. 2014) (approving of the district court's decision to construe motion for judgment on the pleadings as applying to an after-filed amended complaint where the amended complaint included substantially the same substantive arguments and there was no prejudice to plaintiff). Therefore, the Court finds that Defendant's Motion for Reconsideration is not moot.

**2. Whether Defendant's Motion is Brought on Proper Grounds Under Local Rule 7-18**

As explained above, Local Rule 7-18 permits a Motion for Reconsideration on one of three grounds: (1) a material difference in fact or law than that presented to the court; (2) new facts or a change in law occurring after the court's decision; or, (3) a manifest showing of a failure to consider material facts presented to the court. C.D. Cal. L.R. 7-18. Defendant claims that it brings its Motion based on the third option—that the Court failed to consider facts that were presented to it when it denied Defendant's Motion to Dismiss Plaintiff's advance fee provision claim. (*See* Reconsideration Reply at 3.) But Defendant's primary argument is that the Court interpreted the advance fee provision incorrectly in allegedly conflating "promised results" with Defendant's performed services—a purely legal, not factual, argument. (*See* Reconsideration Mot. at 2–3.) Thus, it appears that Defendant's argument is not a proper argument under Local Rule 7-18 as it does not identify *facts* not addressed by the Court in its prior Order, but merely challenges the Court's legal interpretation of the advance fee provision.

**3. The Substance of Defendant's Motion**

Nonetheless, the Court will consider the merits of Defendant's Motion. Defendant argues that the Court erred in refusing to dismiss Plaintiff's advance fee provision claim for two reasons: (1) the Court's holding that "whether or not PMH made a promised result was 'immaterial'" was "clearly erroneous"; and, (2) the Court conflated "results"

with "services." (Reconsideration Mot. at 3.) Defendant's arguments fail. First, Defendant misreads the Court's Order; the Court did *not* hold that "whether or not" Defendant made a promised result was immaterial—the Court held that "the terms of the promises that Plaintiff made are immaterial to its advance fee provision claim." (*See* Order at 20.) Thus, the Court held that Plaintiff adequately pleaded facts indicating that Defendant made promises, but that Plaintiff need not plead the precise details of those promises at the pleading stage. Specifically, the Court explained that Plaintiff's allegations established that Defendant entered into contracts with consumers "with the intent to increase or improve the consumer's credit score," i.e., promising to increase or improve the consumer's credit score, and that it collected payment before providing the consumer with a report evidencing its achievement of that promised result. (*See id.*) What the precise promise was is not at issue, because Plaintiff has pleaded sufficient facts to indicate that Defendant has collected payment before it has provided consumers with proof of the performance of *any* promise it made.

Defendant's second argument fails for similar reasons. Even if the Court used the word "services" where "results" would have been more accurate when it was explaining the law, the same analysis applies, regardless. The Court's ultimate holding was that Plaintiff had sufficiently pleaded that Defendant promised to increase consumers' credit scores and charged the consumers before providing them with a report indicating Defendant had achieved those results. Accordingly, the Court nonetheless **DENIES** Defendant's Motion to Dismiss Plaintiff's advance fee provision claim.

### B. Defendant's Motion to Dismiss Plaintiff's FAC

As with its Original Complaint, Plaintiff alleges violations of several sections of the TSR as well as violation of the CFPA. (*See* FAC.) Specifically, Plaintiff alleges violations of the following sections of the TSR: (1) section 310.4(a)(2), which makes it unlawful for a telemarketer advertising that it can improve a person's credit history to receive payment until it has provided documentation of the effect of its services at least six months after the results have been achieved, *see* 16 C.F.R. § 310.4(a)(2); (2) section 310.3(a)(2)(iii), which makes it unlawful for a telemarketer to misrepresent any material aspect of its goods or services' performance or efficacy, *see* 16 C.F.R. § 310.3(a)(2)(iii); (3) section 310.3(a)(1)(iii), which requires a telemarketer to disclose all material terms and conditions of any policy regarding refunds before a customer pays for goods or services offered, *see* 16 C.F.R. § 310.3(a)(1)(iii); and, (4) section 310.3(a)(2)(i), which

makes it unlawful for a telemarketer to misrepresent the cost of its services, *see* 16 C.F.R. § 310.3(a)(2)(i). In addition, Plaintiff alleges that Defendant violated the CFPA, which makes it unlawful for any covered entity "to engage in any unfair, deceptive, or abusive act or practice." *See* 12 U.S.C. § 5536(a)(1)(B). "An act or practice is deceptive if: (1) there is a representation, omission, or practice that, (2) is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material." *Consumer Fin'l Protection Bur. v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016) (internal quotation marks omitted). Defendant argues that: (1) Plaintiff has failed to meet the Rule 9(b) standard for pleading claims sounding in fraud; (2) Plaintiff has failed to adequately plead the substance of its claims; and, (3) Plaintiff lacks standing.[1] (*See* MTD Mot.)

### 1. Whether Plaintiff Has Standing

First, the Court must determine whether Plaintiff has standing to bring this action. Defendant argues that Plaintiff does not have standing to bring its claims because (1) Plaintiff is requesting nothing more than an "obey the law" injunction; and, (2) Plaintiff has not established that any of Defendant's conduct is currently ongoing. (MTD Mot. at 21–22.)

As to Defendant's second argument that Plaintiff has not alleged ongoing conduct, the Court has addressed a nearly identical argument as to Plaintiff's advance fee provision when deciding Defendant's Motion to Dismiss Plaintiff's Original Complaint. (*See* Order at 14.) The Court finds that the same analysis applies here. As the Court noted, Defendant is correct that "[p]ast wrongs are not enough for the grant of an injunction." *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir. 1984). However, the Court does not interpret Plaintiff's FAC as alleging only past conduct regarding any of its causes of action. Plaintiff's FAC does not indicate that Defendant no longer performs credit repair services; in fact, its Complaint alleges that "Defendant engages in an ongoing" credit repair business. (FAC ¶ 2.) Thus, so long as Defendant is still in business, it appears that Defendant could again violate the TSR. *See SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) ("An inference arises from illegal past conduct that future violations may occur."). This indicates to the Court that Plaintiff is

[1] Defendant also argues that Plaintiff has not adequately pleaded its advance fee provision claim, based on the same arguments that the Court has already addressed in relation to Defendant's Motion for Reconsideration, as addressed above. (*See* MTD Mot. at 23–24.)

alleging ongoing conduct, rather than purely past conduct of which there is no risk of reoccurrence.

Second, the Court construes Plaintiff's FAC as not merely seeking assurances that Defendant will generally "obey the law" in the future, but requests injunctive relief to ensure that the allegedly fraudulent or deceptive conduct in which Defendant participates will not continue. Moreover, as Plaintiff notes, if the case were to proceed to that stage, the Court would be able to craft any specific relief as the record requires in order to avoid an overbroad or vague injunctive order. Accordingly, the Court finds that Plaintiff has standing to proceed with its request for injunctive relief.

**2. Whether Plaintiff Has Sufficiently Met Its Pleading Burden Under Rule 9(b)**

As the Court determined in its prior Order, Plaintiff is required to plead its second through fifth causes of action in accordance with the heightened pleading requirements of Rule 9(b). (*See* Order at 12–13.) First, Defendant contends that Plaintiff has failed to meet its heightened burden by failing to include the names of consumers who allegedly complained about Defendant's performance, the time and place of some of Defendant's alleged allegations, what "difficulty" consumers encountered when attempting to recover refunds, and a lack of allegations regarding whether scripts referenced in the FAC were ever used with consumers. (*See* MTD Mot at 6–7.) Defendant claims that without this information, "PMH is not able to adequately defend itself against the Bureau's claims." (MTD Mot. at 7.)

The Court disagrees with Defendant and finds that Plaintiff's FAC, generally, complies with Rule 9(b)'s pleading standards. "Rule 9(b) requires fraud claims to be pled with particularity but a pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Semegen v. Weidner*, 780 F.2d 727, 734–35 (9th Cir. 1985) (internal quotation marks omitted). But under Rule 9(b), a plaintiff "is not required to allege all facts supporting each and every instance" of allegedly fraudulent conduct. *See Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (internal quotation marks omitted). Plaintiff has provided several examples of allegedly fraudulent statements, including generally who made the statements (even if exact names of consumers were not identified), when they were made, and the content of those

statements. However, Defendant identifies five specific examples of what it argues are inadequately pleaded statements or representations.

First, Defendant contends that Plaintiff's allegation that "a consumer complained" is insufficient without any explanation of to whom the consumer complained. (MTD Mot. at 6.) The Court disagrees and finds that Plaintiff has pleaded sufficient facts surrounding Defendant's representations and the consumer complaints to place it on notice of the claims against it. Plaintiff has pleaded sufficient facts regarding who made the complaints, when they complained, and the substance of their complaints. (*See* FAC ¶¶ 88–89, 114–16, 139, 141–42.) To whom the complaint was made is not material as Plaintiff's allegations place Defendant on sufficient notice to defend itself.

Second, Defendant complains that Plaintiff has failed to indicate where or when Defendant made assertions or promises about raising consumers' credit scores by 104 points, (*see* MTD Mot. at 6 (citing FAC ¶ 111)), the Court finds this argument unavailing. Plaintiff has included additional allegations along with when and where Defendant made representations regarding raising credit scores by at least 100 points, (*see* FAC ¶¶ 96 (explaining that on January 19, 2016, Defendant's representative made "numerous references to credit score increases of 100 plus points" during a sales call), 99, 101, 102, 104 (alleging that on November 2, 2015, Defendant submitted scripts to the California Department of Justice in which it stated that "we typically average 80 to 104 points when we work on credit"), 105). Thus, even if one paragraph of the FAC does not identify where or when an alleged misrepresentation was made, the FAC does provide sufficient information about these representations for Defendant to adequately mount a defense.

But to the extent Defendant is arguing instead that Plaintiff has not identified the who, what, when, and where of the details surrounding Defendant's representations about the *basis* for its belief that it can raise credit scores by approximately 104 points, the Court agrees with Defendant. Plaintiff pleads only in a conclusory manner that "PMH has stated that the basis for its assertion that *its* credit repair services have resulted in customers improving their credit scores by an average of 104 points is information purportedly obtained by a different company." (FAC ¶ 111 (emphasis in original).) Plaintiff provides no details of when Defendant made this statement. Plaintiff argues that this statement or representation is not patently fraudulent or deceptive, however, but that "PMH's representation is deceptive because PMH does not have a reasonable basis for

making the representation." (MTD Opp'n at 5.) But it appears that Plaintiff is conceding that this representation was deceptive—thus, it clearly must comply with the Rule 9(b) pleading standard. Plaintiff has not adequately pleaded facts describing Defendant's representations about the basis of its belief in its ability to raise credit scores to allow Defendant to mount a defense.[2] Nonetheless, one inadequately pleaded representation does not, on its own, cause the entirety of Plaintiff's claims to fail. Accordingly, the Court will proceed to examine Plaintiff's claims.

Third, Defendant argues that Plaintiff's allegations in paragraph 112 of the FAC in which Plaintiff alleges that "[a]ccording to PMH" a predecessor company measured the results of its credit repair services in a specific manner is not pleaded in sufficient detail. (MTD Mot. at 6 (citing FAC ¶ 112).) The Court agrees. As with the allegations described above, Plaintiff does not include details as to the who, what, when, where or how of Defendant's alleged representations. Therefore, the Court finds this allegation is insufficiently pleaded.

Fourth, Defendant argues that Plaintiff's allegations as to consumers encountering difficulty in obtaining refunds from Defendant are insufficient. (MTD Mot. at 7 (citing FAC ¶ 137).) The Court disagrees. Plaintiff has provided other specific examples of instances during which consumers have had difficulty obtaining refunds or recovering under Defendant's guarantees. (FAC ¶¶ 133–36.) Even if one of Plaintiff's allegations is too vague under Rule 9(b), this allegation does not invalidate Plaintiff's additional sufficiently specific allegations contained elsewhere in the FAC.

And finally, Defendant contends that Plaintiff's allegations as to scripts Defendant submitted to the California Department of Justice are insufficient because Plaintiff does not plead facts indicating that the script was used or was anything more than a draft. (MTD Mot. at 7 (citing FAC ¶¶ 144–45).) The Court disagrees. First, Plaintiff provides a specific example of a script submitted to the California Department of Justice on November 2, 2015, which Plaintiff alleges failed to inform consumers of Defendants' fees. (*See* FAC ¶ 145.) Therefore, allegations as to this script meet the Rule 9(b) standard as it provides the when, why, and to whom this script was presented. Second, at

[2] Plaintiff proffers a Declaration and attached Exhibit evidencing this representation. (*See* Declaration of Sarah Preis ¶ 8, Ex. A.) Plaintiff does not request that the Court take judicial notice of this document, however; thus, the Court refuses to consider this extrinsic evidence when deciding Defendant's Motion to Dismiss. *Mack*, 798 F.2d at 1282.

the motion to dismiss stage, "the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Thus, to the extent Defendant argues that Plaintiff's FAC fails to allege specific instances where the script was used or allegations that the script was not a mere "draft," the Court finds that as Defendant apparently submitted this script to the California Department of Justice, it is reasonable to draw an inference in favor of Plaintiff that Defendant used the script.

Therefore, in sum, though certain of Plaintiff's allegations failed to meet the Rule 9(b) standard, those allegations do not, on their own, cause Plaintiff's FAC to fail. Accordingly, the Court will address the merits of each of Plaintiff's claims.

**3. Counts Two and Five of Plaintiff's FAC**

Next, Defendant argues that Plaintiff's allegations fail to establish that Defendant's conduct was deceptive and, therefore, Plaintiff's second and fifth causes of action fail as a matter of law. (MTD Mot. at 7–9.) 16 C.F.R. § 310.3(a)(2)(iii) makes it unlawful to misrepresent, "directly or by implication, in the sale of goods or services any . . . material aspect of the performance, efficacy, nature, or central characteristics of goods and services that are the subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(iii). Under the CFPA, it is unlawful "to engage in any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B). The Ninth Circuit recently adopted the Federal Trade Commission Act's ("FTCA") definition of deceptive when analyzing the CFPA due to the similarity in the language of the statutes. *Consumer Fin'l Protection Bur. v. Gordon*, 819 F.3d 1179, 1193 n.7 (9th Cir. 2016). Thus, to adequately plead deceptive conduct under the CFPA, Plaintiff must establish that: (1) there was a representation; (2) that representation was likely to mislead consumers acting reasonably under the circumstances; and, (3) the representation was material. *Id.* Under the FTCA, conduct may be deceptive "by virtue of the net impression it creates" even if the conduct "also contains truthful disclosures."[3] *F.T.C. v. Cyberspace.Com, LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006). Further, a representation may make express and implied claims, and

[3] Defendant argues that "[t]o argue a net impression theory now, the FAC must first allege this theory. It does not." (MTD Reply at 5.) Defendant cites no authority for this proposition. "Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001). Thus, so long as Plaintiff's FAC pleads sufficient facts to support a net impression theory, it may proceed on this basis.

there is no legal distinction between the two. *See F.T.C. v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1066 (C.D. Cal. 2012). In determining whether a representation was likely to mislead consumers, Plaintiff must establish that (1) the representation was false, or, (2) Defendant lacked a reasonable basis for its claims.[4] *Id.* at 1067.

Plaintiff claims that Defendant misrepresented the efficacy of its services because it lacked a reasonable basis for its representations that (1) it could remove negative items from consumers' credit reports, (2) it could increase consumers' credit reports by more than 100 points, and, (3) testimonials or advertisements on its website indicated typical results. (FAC ¶¶ 169–81.)

**a. Removing Negative Items from Consumers' Credit Reports**

First, as to removing negative items from consumers' credit reports, Defendant argues that Plaintiff's FAC allegations fail as a matter of law because, though the FCRA places explicit limitations on what *must* be removed from a consumer's credit report, there are no similar limitations on what *may* be removed. (MTD Mot. at 9–11.) Thus, according to Defendant, its representations that, for instance, "we do the job that you need. I mean, if you have damage to your credit no matter what you may have done in the past or what was done to you, we can help you fix it. It's very simple" are not false, as Defendant can, in fact, assist consumers with fixing their credit. (MTD Mot. at 8–9.) Plaintiff argues, however, it does not have to show that these representations were *false*, just that there was no *reasonable basis* for them to make these representations. (MTD Opp'n at 9.)

The Court agrees with Plaintiff. As Plaintiff explains, under the FCRA, "if the completeness or accuracy of any item of information contained in a consumer's file at a

[4] The Ninth Circuit has held that where there is a violation of the FTC Act, i.e., there has been a deceptive representation, there is also a violation of the TSR. *See F.T.C. v. Stefanchik*, 559 F.3d 924, 930 (9th Cir. 2009) ("As we concluded above, the representations made about the Stefanchik Program were materially misleading insofar as they misrepresented consumers' earning potential and the availability of coaches, and those misrepresentations made via telemarketing were thus subject to enforcement as violations of both the TSR and the FTC Act."). As the Court has already noted, the Ninth Circuit construes the definition of "deceptive act" similarly under the FTC Act and the CFPA. *Gordon*, 819 F.3d at 1193 n.7. Thus, it follows that a violation of the CFPA would also constitute a violation of the TSR.

consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, the agency shall . . . conduct a reasonable investigation to determine whether the disputed information is inaccurate . . . ." 15 U.S.C. § 1681i(a)(1)(A). Plaintiff provides multiple examples of representations that Defendant has made to consumers indicating that "there's really nothing that we can't dispute on your credit history," (FAC ¶ 68), "[w]e have successfully deleted every type of negative item throughout our years of service," (FAC ¶ 74), and an instance where Defendant "assured" a consumer that it could remove a four-year-old bankruptcy on her credit report, but that it failed to do so, (FAC ¶¶ 88–89). The net impression of these representations is that there is no negative item on a consumer's credit report that cannot be removed. According to Plaintiff's FAC, Defendant fails to inform consumers of the limitations the FCRA places on removing negative items from consumers' credit reports. In other words, Defendant fails to explain that an item may not be removed simply because an organization like Defendant disputes it; rather, as the FCRA explains, the information must be inaccurate, incomplete, or "obsolete" (i.e., outdated). *See* 15 U.S.C. § 1681i(a)(1)(A); *see also* 15 U.S.C. § 1681c(a) (explaining that under the FCRA consumer credit reports may not contain information regarding bankruptcies that are older than ten years or other negative credit items that are older than seven years).

Thus, while Defendant's individual representations may not be false—i.e., there is nothing that cannot be *disputed* on a credit report and it has removed every type of negative item from consumers' credit reports—the net impression of Defendant's representations that it can remove any or all negative items from a credit report lacks a reasonable basis. *See F.T.C. v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1330 (M.D. Fla. 2010) (holding that the FTC had presented "uncontroverted evidence that no credit repair can company can legitimately remove or enable consumers to remove all negative entries from a consumer's credit report").[5] In addition, at least as to the four-year-old bankruptcy consumer, Plaintiff adequately alleges that Defendant made a false representation controverted by the FCRA, as only bankruptcies that are at least ten-years-

[5] Defendant attempts to distinguish *RCA Credit Services* by noting that there the representations at issue stated that the defendant could "Remove ANY and ALL Negative Accounts From Your Credit Report." *See RCA Credit Servs.*, 727 F. Supp. 2d at 1330. But the Court finds this fact is not distinguishable because, as explained above, the net impression of Defendant's representations in this case had the same result—that Defendant could assist in removing any negative item from a consumer's credit report regardless of the FCRA's limitations.

old may be removed from a credit report. *See* 15 U.S.C. § 1681c(a)(1). Thus, Plaintiff's claim could proceed on this ground, regardless.

**b. Increasing Consumers' Credit Scores by More than 100 Points**

Next, as to Plaintiff's claims regarding Defendant's ability to increase consumers' scores by more than 100 points, Defendant claims these statements are non-actionable "puffery." (MTD Mot. at 11–12.) "Puffery is 'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely.'" *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1233 (N.D. Cal. 2012) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)); *see also Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) ("Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable."). The general rule is that "[a]dvertising which merely states in general terms that one product is superior is not actionable." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 895 (C.D. Cal. 2013). However, misdescriptions of specific or absolute characteristics of a product are actionable." *Id.*

Here, Defendant's representations that it could increase consumers' scores by more than 100 points are not mere puffery because they are specific and objective claims, not representations "that are vague or highly subjective." *Southland Sod Farms*, 108 F.3d at 1145. "A specific and measurable advertisement claim" based on product testing is not puffery. *See id.* (holding that defendant's claim that product resulted in "50% Less Mowing" was not puffery). Plaintiff argues that Defendant had no reasonable basis for these claims because this representation was based on the experience of a predecessor company based on "a subset of consumers, business owners seeking financing to lease commercial equipment, who used its credit repair services during the first 18 months of its business, which began in 2009." (*See* FAC ¶¶ 111–12.) As the Court determined above, however, these allegations do not meet the Rule 9(b) standard as they do not plead when, where, or to whom these representations were made.

But even if the Court did consider these statements, Plaintiff has not adequately pleaded facts indicating why there is no reasonable basis for Defendant's claims. For instance, Plaintiff has not established that there are such material differences between the "subset of consumers" it references and on which, apparently, Defendant bases its data, and Defendant's broader consumer body as to prevent Defendant's reliance on this data.

In other words, though Plaintiff alleges that Defendant relies on information from a predecessor company who primarily assisted commercial customers, without information about the difference in Defendant's current customers or factual allegations that Defendant had *not* averaged an increased credit score of approximately 100 points as to its customers, Plaintiff has not established that Defendant lacked a reasonable basis for its representations that it could increase consumers' credit scores by approximately 100 points.[6]

However, as also was determined above, Plaintiff has adequately pleaded at least one instance of a consumer who was allegedly assured that her scores would increase to 640 so that she could obtain a home loan, but whose scores had decreased while using Defendant's services. (FAC ¶¶ 114–15.) Plaintiff also pleads facts about another instance in which a consumer was told in March 2015 that her credit score would increase to over 600 within three months, but that three months later her score had not changed. (FAC ¶¶ 116–17.) Therefore, the Court finds that Plaintiff has pleaded sufficient facts to establish that it has made false representations as to its ability to increase consumer credit scores, though it has not pleaded sufficient facts establishing that Defendant lacked a reasonable basis for its representations.

#### c. Advertisements and Testimonials on Defendant's Website

Finally, Defendant contends that its testimonials and advertisements on its website were not false and did not lack a reasonable basis. (MTD Mot. at 15–17.) Defendant's argument fails for the same reason its arguments about removing negative items from a consumer's credit report fails. Even if each individual testimonial, advertisement, and sales representation on Defendant's website did not contain a patently false statement, the

[6] Plaintiff alleges that Defendant did not have a reasonable basis for making these claims because it could not access the "proprietary information about how credit scores are calculated when it made claims about increasing consumers' credit scores by a specific amount." (FAC ¶ 118.) But Defendant's representations were that its average consumer increased their score by approximately 100 points—not that Defendant was capable of manipulating the credit scoring system to increase credit scores. (*See* FAC ¶ 111–12.) In other words, Defendant's representations addressed the results of their work—not its specific influence over or knowledge of the decisions of independent credit agencies. Defendant is entitled to reasonably represent results it has achieved, whether or not it knows the precise details or inner workings of how it has achieved those results. Thus, even considering Plaintiff's vague allegations in paragraphs 111 and 112, Plaintiff has not adequately alleged that Defendant did not have *some* reasonable basis for its representations.

"net impression" of these representations creates the impression that Defendant can remove any negative item from a consumer's credit report. (*See* discussion *supra* Section IV.B.3.a.) Further, testimonials may mislead consumers where they give the impression that such results are typical when there is no basis for this representation. *See F.T.C. v. Johnson*, 96 F. Supp. 3d 1110, 1138 (D. Nev. 2015) (holding that websites containing testimonials were "likely to mislead consumers acting reasonably under the circumstances into believing, incorrectly, that they are likely to receive money like the people in the testimonials"). Plaintiff alleges that Defendant's website contained representations or testimonials indicating that, for instance, a consumer could remove multiple charges from his credit report, (*see* FAC ¶¶ 78–81), and that a different consumer had three judgments removed within one month of working with Defendant, (FAC ¶ 84). These representations give the impression that such results are typical, but, as discussed above, the representations lack a reasonable basis, as they do not indicate that the FCRA permits the removal of negative items in only certain circumstances. *See* 15 U.S.C. §§ 1681c(a), 1681i(a)(1)(A).

Therefore, in sum, the Court finds that Plaintiff has adequately pleaded a claim under the CFPA, and therefore, section 310.3(a)(2)(iii), as to (1) its representations as to removing negative items from consumer credit reports, (2) false representations—but not representations lacking a reasonable basis—that Defendant can raise credit scores by more than 100 points, and, (3) advertisements and testimonials on Defendant's website misleading consumers. Therefore, Defendant's Motion is Defendant's Motion is **DENIED** as to Counts Two and Five of Plaintiff's FAC.

### 4. Count Three of Plaintiff's FAC

Count Three of Plaintiff's FAC alleges that Defendant failed to disclose material terms and conditions of its refund policy prior to accepting payment for its services. (FAC ¶¶ 182–87.) 16 C.F.R. § 310.3(a)(1)(iii) requires a covered entity that "makes a representation about a refund, cancellation, exchange, or repurchase policy," to provide "a statement of all material terms and conditions of such policy" before accepting payment for services. 16 C.F.R. § 310.3(a)(1)(iii); *see also also F.T.C. v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 318 (S.D.N.Y. 2008) ("The TSR prohibits a seller or telemarketer from failing to tell the customer before payment that the seller has a policy of not providing refunds."). Defendant argues that Plaintiff's own allegations betray its argument because the terms of Defendant's "money-back guarantee" are prominently

displayed on its website, restated in its contracts, and provided by its representatives during sales calls. (*See* MTD Mot. at 17–18 (citing FAC ¶¶ 121, 128, 184).) Plaintiff's FAC avers that Defendant's money-back guarantee is limited to a narrow situation—namely, that Defendant must have failed to removed one disputed item within 180 days of entering a contract with a consumer before it will issue a refund—that is does not adequately convey to consumers. (FAC ¶ 121.)

Defendant's contentions that Plaintiff's FAC indicates that the terms of the guarantee are displayed on Defendant's website and provided by its representatives are not supported by Plaintiff's allegations. Plaintiff alleges that Defendant's website stated on April 25, 2015, "If we don't get the job done, you get your money back." (FAC ¶ 124.) Another representation on the website stated that "If we don't raise your credit score, you don't pay. Period." (FAC ¶ 130.) Plaintiff also claims that on February 22, 2016, one of Defendant's representatives stated during a sales call that "the guarantee is that if you don't see any results within six months, we give you your money back." (FAC ¶ 131.) None of these representations constitute "a statement of all material terms and conditions" of Defendant's refund policy, *see* 16 C.F.R. § 310.3(a)(1)(iii), as none indicate the terms of the guarantee—i.e., that the guarantee *only* applies if Defendant does not remove at least one negative item from the consumer's credit report within six months. Defendant's representations constitute only broad generalizations and fail to disclose the terms of the guarantee "truthfully, in a clear and conspicuous manner." *See* 16 C.F.R. § 310.3(a)(1)(i).

However, Plaintiff's FAC indicates that Defendant's contract included the terms of the guarantee. (*See* FAC ¶ 121.) Though Defendant alleges that, at times, Defendant would not provide a copy of the contract to consumers until it had received payment, (FAC ¶ 55), or that Defendant rushed consumers through the signing of the contracts, (FAC ¶¶ 38, 57–58), Plaintiff provides no examples or details of these allegations; therefore, Plaintiff fails to meet the pleading standard of Rule 9(b). Thus, Plaintiff pleads facts indicating that consumers were provided the terms of the agreement, and does not sufficiently plead facts indicating that consumers were not able to review those terms. Thus, so long as a consumer was provided a contract at some point before Defendant accepted payment (and there are no sufficiently pleaded allegations currently before the Court suggesting otherwise), it appears that the consumer was provided with the material terms of the contract.

The TSR makes it unlawful for Defendant to "fail[] to disclose truthfully, in a clear and conspicuous manner," the terms of its guarantee. Therefore, even if Defendant's representations on its website or in its sales calls were insufficient under the TSR, so long as Defendant did, at some point prior to payment, truthfully disclose the terms of its guarantee in a clear and conspicuous manner, Defendant has not violated the TSR. Plaintiff has failed to plead facts with sufficient particularity under Rule 9(b) indicating that Defendant ever accepted payment before providing consumers with the terms of its money-back guarantee. Accordingly, the Court **GRANTS** Defendant's Motion as to Count Three of Plaintiff's FAC.

### 5. Count Four of Plaintiff's FAC

Count Four of Plaintiff's FAC alleges that Defendant misrepresented the costs of its services in violation of 16 C.F.R. § 310.3(a)(2)(i). (FAC ¶¶ 188–92.) Section 310.3(a)(2)(i) makes it unlawful to accept payment before disclosing, in a clear and conspicuous manner, the cost of its services. *See* 16 C.F.R. § 310.3(a)(2)(i). Defendant argues that its contracts that are provided to consumers adequately disclose the cost of its services. (MTD Mot. at 19.) However, as determined above, the Court may not consider these contracts at this stage. Plaintiff has pleaded specific instances of consumers who were told by Defendant's representatives that Defendant's services cost a total of $600, but were thereafter also charged a monthly fee of $89.99. (FAC ¶¶ 139–43.) In addition, Plaintiff has provided a specific example of a script submitted to the California Department of Justice in which Defendant did not disclose the total costs of its services. (FAC ¶¶ 144–45.)

Defendant contends that Plaintiff's allegations fail to meet the Rule 9(b) pleading standard and that Plaintiff has failed to establish that these two consumers were reasonable consumers. (MTD Mot. at 19 & n.11.) The Court disagrees. First, Plaintiff has met its Rule 9(b) burden as it has provided the details of the alleged misrepresentations about the cost of Defendant's services. (FAC ¶¶ 139–43.) Rule 9(b) requires Plaintiff to provide "statements of the time, place and nature of the alleged fraudulent activities," *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989), which Plaintiff has provided here, (*see, e.g.*, FAC ¶ 139 ("For example, a consumer complained on or about August 14, 2015, that PMH had represented the total cost of service was $600.")).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-07111-BRO (JEMx)** | Date | January 19, 2017 |
|---|---|---|---|
| Title | **CONSUMER FINANCIAL PROTECTION BUREAU V. PRIME MARKETING HOLDINGS, LLC** | | |

Further, though Plaintiff has not included the specific allegation that these consumers are "reasonable consumers," as noted above, at this stage all inferences are to be drawn in Plaintiff, the nonmoving party's, favor. *See Usher*, 828 F.2d at 561 ("On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."). The Court finds it appropriate to draw the inference that the proffered consumers constitute reasonable consumers. This is particularly true when considered in combination with Plaintiff's proffered allegations as to Defendant's submitted script, which did not include details about the cost of Defendant's services. (*See* FAC ¶¶ 144–45.) Drawing the inference that Defendant used this script, it appears that the reasonable consumer would have received no information regarding the cost of Defendant's services. Accordingly, the Court finds that Plaintiff has provided sufficient allegations that Defendant did not fully disclose the costs of its services before accepting payment and has adequately pleaded Count Four of its FAC. Defendant's Motion is **DENIED** as to Count Four.[7]

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Defendant's Motion is **DENIED** as to Plaintiff's second, fourth, and fifth causes of action. Plaintiff's third cause of action is **DISMISSED without prejudice**. Plaintiff is **ORDERED** to file a Second Amended Complaint, if any, no later than Friday, February 10, 2017. The Court VACATES the hearing set for Monday, January 23, 2017.

**IT IS SO ORDERED.**

:

Initials of Preparer rf

[7] As explained above, Count Five of Plaintiff's FAC alleges violations of the CFPA, 12 U.S.C. § 5536(a)(1)(B). (*See* FAC ¶¶ 193–206.) This cause of action realleges Plaintiff's second and fourth causes of action. (*See id.*) Thus, as the Court determines that Plaintiff has sufficiently pleaded its second and fourth causes of action, the Court finds that Plaintiff has sufficiently pleaded its fifth cause of action, as well.